No. _____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**DIVERSYFUND, INC., DF GROWTH REIT, LLC, DF GROWTH REIT II, LLC, DF MANAGER, LLC, CRAIG CECILIO, AND ALAN LEWIS,**

*Petitioners,*

*v.*

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**

*Respondent.*

On Appeal from the United States of America
Before the Securities and Exchange Commission
File No. LA-5266

## PETITIONERS' EMERGENCY MOTION FOR STAY PURSUANT TO CIRCUIT RULE 27-3; RELIEF REQUESTED BY FEBRUARY 28, 2022

Sanjay Bhandari
Buchalter, APC
655 West Broadway
Suite 1600
San Diego, CA 92101
(619) 219-5335
sbhandari@buchalter.com

Mary-Christine Sungaila
Robert M. Dato
Paul A. Alarcon
Buchalter, APC
18400 Von Karman Avenue
Suite 800
Irvine, CA 92612
(949) 760-1121
msungaila@buchalter.com

*Attorneys for Petitioners DiversyFund, Inc., DF Growth REIT, LLC, DF Growth REIT II, LLC, DF Manager, LLC, Craig Cecilio, and Alan Lewis*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 16. Circuit Rule 27-3 Certificate for Emergency Motion

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form16instructions.pdf*

**9th Cir. Case Number(s)** 

**Case Name** | Diversyfund, Inc. et al. v. U.S. Securities & Exchange Commission

I certify the following:

The relief I request in the emergency motion that accompanies this certificate is:

> An order forbidding the SEC from depriving Petitioners of property (their duly approved Regulation A exemption) without prior notice and opportunity to be heard; thus staying the SEC's orders of January 13 and 26, 2022 only insofar as they would disqualify Petitioners' exemption without notice or hearing before a neutral decisionmaker.

Relief is needed no later than *(date)*: | February 28, 2022

The following will happen if relief is not granted within the requested time:

> Absent prompt relief, the SEC's challenged actions will put Petitioners out of business, irreparably injuring their nearly 30,000 investors and 250 shareholders. Petitioners operate a capital-intensive real estate investment business that requires continued capital inflow for investments and operations. If relief is not obtained by February 28, 2022, Petitioners and their investors would lose a $1 million deposit on a project in Texas because of inability to close the transaction. In addition, though a date certain is difficult to specify, within a few weeks Petitioners will likely be forced to initiate drastic action, including discharging employees and winding down operations, to attempt to limit investor losses.

I could not have filed this motion earlier because:

> Petitioners were notified of the SEC's January 2022 orders late on January 26, 2022. Petitioners immediately began work on judicial relief, and on February 7 notified the SEC of intent to file for emergency relief. The SEC asked to meet and confer, and for additional time, but then on Friday February 11 refused to offer any compromise.

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

I requested this relief in the district court or other lower court:  ○ Yes  ◉ No

> If not, why not:

> Petitions for relief from SEC orders must be filed in this court under 15 U.S.C. §§ 77i(a) and 78y(a)(1).

I notified 9th Circuit court staff via voicemail or email about the filing of this motion: ◉ Yes  ○ No

> If not, why not:

I have notified all counsel and any unrepresented party of the filing of this motion:

On *(date)*: February 7 and 14, 2022

By *(method)*: Email (and telephonic meet and confers)

Position of other parties: The SEC opposes the motion.

Name and best contact information for each counsel/party notified:

> Jeffrey Berger, Victoria A. Levin
> SEC Reg. Ofc., 444 S. Flower St., Suite 900 Los Angeles, CA  90071
> (323) 965-3872
> bergerje@sec.gov, levinv@sec.gov

I declare under penalty of perjury that the foregoing is true.

| **Signature** | /s/ Sanjay Bhandari | **Date** | Feb. 15, 2022 |

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 16**                                        iii                                  *Rev. 11/21/2019*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, none of the entity Petitioners—that is, DiversyFund, Inc., DF Growth REIT, LLC, DF Growth REIT II, LLC, DF Manager, LLC—have any parent corporation and no publicly held corporation owns 10% or more of the stock of any of these Petitioners.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: February 15, 2022 | BUCHALTER<br>A PROFESSIONAL CORPORATION |
|  | By: */s/ Sanjay Bhandari*<br>SANJAY BHANDARI<br>*Attorneys for Petitioners*<br>*DiversyFund, Inc., DF Growth REIT, LLC,*<br>*DF Growth REIT II, LLC, DF Manager,*<br>*LLC, Craig Cecilio, and Alan Lewis* |

iv

# TABLE OF CONTENTS

**Page**

FORM 16. CIRCUIT RULE 27-3
CERTIFICATE FOR EMERGENCY MOTION ..................................... ii

CORPORATE DISCLOSURE STATEMENT ........................................iv

TABLE OF CONTENTS ...........................................................................v

TABLE OF AUTHORITIES .............................................................. vii

INTRODUCTION ...................................................................................1

JURISDICTION AND VENUE .............................................................2

STATEMENT OF FACTS........................................................................3

      1.    Petitioners' Business ...........................................................3

      2.    The SEC Investigation .......................................................4

ARGUMENT ...........................................................................................7

I.    Standard Governing Preliminary Relief .......................................7

II.    Petitioners' Appeal Will Likely Succeed on the Merits .................7

   A.    This Court Has Jurisdiction................................................7

   B.    The SEC Violated Procedural Due Process.........................9

     1. Petitioners Had a Protected Property Interest ...............9

     2. The SEC's Orders Deprived Petitioners of Property
       Without Any Process........................................................12

# TABLE OF CONTENTS (CONT'D)

**Page**

C.    The SEC Acted Arbitrarily and Capriciously ......................15

III.   Petitioners Will Be Irreparably Harmed Absent a Stay..............16

IV.   Issuance of a Stay Will Not Harm the SEC .................................17

V.   Issuance of a Stay Is in the Public Interest .................................17

VI.   Appropriate Relief..........................................................................18

CONCLUSION.........................................................................................19

CERTIFICATE OF COMPLIANCE ......................................................20

STATEMENT OF RELATED CASES....................................................21

APPENDIX ..............................................................................................22

CERTIFICATE OF SERVICE .............................................................. ??

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ala. Ass'n of Realtors v. HHS*,
  141 S. Ct. 2485 (2021) ........................................................ 17

*Alaska Airlines, Inc. v. Civilian Aeronautics Bd.*,
  545 F.2d 194 (D.C. Cir. 1976) ............................................. 9

*Barry v. Barchi*,
  443 U.S. 55 (1979) ........................................................ 1, 14

*Bd. of Regents v. Roth*,
  408 U.S. 564 (1972) ............................................................ 9

*Cleveland Board of Education v. Loudermill*,
  470 U.S. 532 (1985) ..................................................... 11, 12

*DHS v. Regents of Univ. of Cal.*,
  140 S. Ct. 1891 (2020) ...................................................... 15

*FDIC v. Mallen*,
  486 U.S. 230 (1988) ............................................. 12, 13, 14

*Fuentes v. Shevin*,
  407 U.S. 67 (1972) ............................................................ 12, 13

*Geneva Towers Tenants Org. v. FMIC*,
  504 F.2d 483 (9th Cir. 1974) ............................................. 10

*Gerhart v. Lake Cty., Mont.*,
  637 F.3d 1013 (9th Cir. 2011) .......................................... 10

*Hall v. Cal. Dep't of Corr.*,
  835 F. Supp. 522 (N.D. Cal. 1993) ................................... 10

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  938 F.3d 985 (9th Cir. 2019) ............................................. 16

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

## Cases

*Horne Bros., Inc. v. Laird,*
463 F.2d 1268 (D.C. Cir. 1972).......................................................... 14

*Leiva-Perez v. Holder,*
640 F.3d 962 (9th Cir. 2011) ............................................................... 7

*Logan v. Zimmerman Brush Co.,*
455 U.S. 422 (1982) ........................................................................... 9

*Michell v. W.T. Grant Co.,*
416 U.S. 600 (1974) ......................................................................... 14

*Myers & Myers, Inc. v. U. S. Postal Serv.,*
527 F.2d 1252 (2d Cir. 1975)............................................................ 14

*Rebirth Christian Acad. Daycare, Inc. v. Brizzi,*
835 F.3d 742 (7th Cir. 2016) ........................................................ 9, 10

*Sackett v. EPA,*
566 U.S. 120 (2012) ........................................................................... 8

*Sackett v. EPA,*
8 F.4th 1075 (9th Cir. 2021), *certiorari granted in part on
other grounds,* No. 21-454 (Jan. 24, 2022) .................................. 6, 19

*Spinelli v. City of New York,*
579 F.3d 160 (2d Cir. 2009).............................................................. 16

*Sprecher v. Von Stein,*
772 F.2d 16 (2d Cir. 1985)................................................................ 16

*Trump v. Int'l Refugee Assistance Project,*
137 S. Ct. 2080 (2017) ..................................................................... 17

*U.S. Army Corp of Eng'rs v. Hawkes Co.,*
136 S. Ct. 1807 (2016) ....................................................................... 8

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

## Cases

*United States v. James Daniel Good Prop.*,
510 U.S. 43 (1993) ......................................................... 1, 12

*Yagman v. Garcetti*,
852 F.3d 859 (9th Cir. 2017) ........................................ 13

## Statutes

5 U.S.C. § 703 ................................................................ 3

5 U.S.C. § 705 ................................................................ 2

15 U.S.C. § 77(b)(5) ...................................................... 10

15 U.S.C. § 77(c)(b)(5) .................................................. 4

15 U.S.C. §§ 77a et seq ................................................. 3

15 U.S.C. § 77c(b) .......................................................... 10

15 U.S.C. § 77c(b)(2) ..................................................... 10

15 U.S.C. § 77e(a) .......................................................... 8

15 U.S.C. § 77h-1 ........................................................... 5

15 U.S.C. § 77h-1(c)-(d) ................................................ 17

15 U.S.C. § 77i(a) ......................................................... 2, 3, 7

15 U.S.C. § 77x ............................................................... 8

15 U.S.C. § 78y(a)(1) .................................................... 2, 3, 7

Pub. L. No. 112-106, § 401,126 Stat. 306, 323 (2012) ............................. 4

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

**Statutes**

Securities Act of 1933 .................................................................. 10

Securities Act Section 3(b) ........................................................... 10

**Other Authorities**

17 C.F.R. § 201.431(e) .................................................................. 5

17 C.F.R. § 230.251 ...................................................................... 10

17 C.F.R. §§ 230.251-230.263 ...................................................... 3

17 C.F.R. § 230.262(a)(7) ......................................................4, 6, 18

17 C.F.R. § 230.262(a) ................................................................. 11

17 C.F.R. § 230.506(a) ................................................................. 11

Fed. R. App. P. 8 .......................................................................... 2

Rule 258 ...................................................................................5, 6, 19

Rule 262 ...................................................................................10, 11

Rule 262(a)(7).........................................................................4, 6, 7, 22

## **INTRODUCTION**

May a federal agency terminate a company's right to raise capital in a qualified exempt securities offering, putting it out of business and harming tens of thousands of investors, without notice or opportunity to be heard? The settled answer is no. Due process' "general rule requiring predeprivation notice and hearing" is excused "only in extraordinary situations," *United States v. James Daniel Good Prop.*, 510 U.S. 43, 53 (1993), and even then, it requires prompt, meaningful post-deprivation process. *Barry v. Barchi*, 443 U.S. 55, 64 (1979).

The U.S. Securities and Exchange Commission ("SEC") issued orders that violate this settled law. Based on a mere investigation, the SEC deprived Petitioners of the right to continue their duly approved securities offering with no notice or opportunity to be heard. Petitioners asked the SEC to investigate freely but just not shut them down and injure their investors without providing due process. The SEC refused, ignoring evidence of the lack of need for an immediate suspension and the severe harm imposed on Petitioners and their investors.

The SEC's orders put Petitioners in imminent jeopardy of either going out of business or facing severe penalties—all before any determination that they have done something wrong. Petitioners have no

1

choice but to seek relief from this Court. Petitioners ask this Court to stay the SEC's disqualification of Petitioners' Reg A offering until the SEC has provided Petitioners notice and an opportunity to be heard before a neutral adjudicator. Because the SEC's unconstitutional action will quickly force the closure of their business and losses to 30,000 investors, Petitioners respectfully request that the Court order expedited briefing and enter relief by February 28, 2022, to avoid a $1 million loss to investors and winding down of operations. Alternatively, the Court should enter a temporary stay to prevent irreparable harm to Petitioners while the Court considers this motion.

## JURISDICTION AND VENUE

Petitioners are aggrieved by two SEC orders: its January 13, 2022 Amended Formal Order Directing Private Investigation and Designating Officers to Take Testimony (the "January 13 Order"), and its January 26, 2022 Order Denying Petition for Review (the "January 26 Order"). This Court has jurisdiction under 15 U.S.C. §§ 77i(a) and 78y(a)(1), and has the power to grant this motion for stay pending appeal. 5 U.S.C. § 705; Fed. R. App. P. 8. Venue is proper because Petitioners reside or have their

principal place of business in the Ninth Circuit. 15 U.S.C. §§ 77i(a), 78y(a)(1); 5 U.S.C. § 703.

## STATEMENT OF FACTS

### 1.  Petitioners' Business

Petitioners DF Growth REIT, LLC ("REIT I"), DF Growth REIT II, LLC ("REIT II"), DF Manager, LLC, and DiversyFund, Inc. are affiliated entities (run by Petitioners Craig Cecilio and Alan Lewis) that work together to allow everyday investors to participate in investments such as Real Estate Investment Trusts ("REITs"). (*See* Ex. 1, First Lewis Decl., ¶¶ 7-8.) Investment terms are several years long to allow multiple stages of growth:  raising capital, acquiring assets, developing assets, allowing appreciation, and selling. (*Id.* ¶ 10.) Capital is continuously raised and deployed to meet ongoing obligations. (*Id.* ¶ 11-13.)

Petitioners obtain this capital from investors through the offer and sale of securities under Reg A, a Congressionally endorsed avenue for smaller issuers to offer securities after meeting less burdensome requirements. (*Id.* ¶ 12; 17 C.F.R. §§ 230.251-230.263; "Reg A.") Reg A is an exemption to the general requirement that securities offerings be formally registered. 15 U.S.C. §§ 77a *et seq*; 77(c)(b).  In 2012, Congress

directed the SEC to increase Reg A's ceiling from $5 million to $50 million, and to consider further increases every two years. Pub. L. No. 112-106, § 401,126 Stat. 306, 323 (2012); 15 U.S.C. § 77(c)(b)(5).

The SEC qualified DF Growth REIT II's Reg A offering on January 29, 2021, allowing its use for three years. (Ex 2, Petition to SEC at 3, 14.) Using this and DF Growth REIT's prior Reg A approval, Petitioners have invested over $40 million for about 30,000 individual investors and 250 shareholders. (Ex. 1, First Lewis Decl. ¶ 17.)

### 2. <u>The SEC Investigation</u>

The SEC's first substantive communication with Petitioners was on November 29, 2021. (Ex. 3, Waiver Request at 3-4.) SEC staff told Petitioners that although their investigation had just begun (no subpoenas had even been prepared), its existence required Petitioners' disqualification under Rule 262(a)(7) (17 C.F.R. § 230.262(a)(7)) from offering or selling securities under Reg A. (*Id.*) Petitioners promptly conveyed (including through the December 7, 2021 Waiver Request) the constitutional issues and irreparable harm discussed herein, asking the SEC to follow the normal practice of first investigating and only if merited imposing consequences. (Ex. 3, Waiver Request at 6-8.) The SEC

never formally responded to Petitioners' Waiver Request but its staff stated that they would recommend denial.

In December 2021, Petitioners brought an administrative petition, which stayed the SEC staff's orders. (Ex. 4, Notice of Intent to Petition at 1-2; Ex. 2, Petition to SEC at 1; 17 C.F.R. § 201.431(e).) The petition explained Petitioners' reliance on Reg A and the immediate harm that would be suffered by 30,000 investors. It argued that SEC staff acted contrary to their authority, contrary to due process, and arbitrarily in purporting to disqualify Petitioners before the SEC was prepared to accuse Petitioners of doing anything wrong and allow them a chance to respond. (Ex. 2, Petition to SEC at 12-19.) It noted that the SEC had just commenced its investigation, showed no urgency, and could at the appropriate time start suspension proceedings under SEC Rule 258 or temporary cease-and-desist proceedings under 15 U.S.C. § 77h-1. (*Id.*)

In response, the SEC issued two orders. On January 13, it issued an Amended Formal Order of Investigation which, unlike the prior Formal Order, expressly and intentionally disqualified Petitioners, using

language drawn from Rule 262(a)(7).[1] On January 26, it issued an Order Denying Petition for Review, declining to address the constitutional issues and relying on the January 13 Order to moot the petition. (Ex. 6, January 26 Order at 1-3.) The SEC appeared to admit that its action raised "important policy implications," *id.*, but refused to consider them.

Petitioners' February 7 courtesy notice to the SEC of intent to file this motion led to a week-long meet and confer. The SEC ended discussions on February 11 by issuing a "Wells Notice" of intent to invoke Rule 258, which would offer it a new way to disqualify Petitioners' Reg A rights without prior notice and hearing. Rule 258's threatened invocation appears to be a retaliatory tactic—an attempt to evade review or change what is being reviewed in response to Petitioners' exercise of their constitutional right to petition the courts. *Cf. Sackett v. EPA*, 8 F.4th 1075, 1084-85 (9th Cir. 2021), *certiorari granted in part on other grounds*, No. 21-454 (Jan. 24, 2022) (voluntary-cessation doctrine precluded

---

[1] *Compare* Ex. 5 *with* Ex. 8. The January 13 Order's phrase "to determine whether a suspension order should issue," mirrors disqualification language in Rule 262(a)(7). Ex. 5, January 13 Order at 3; *see also* 17 C.F.R. § 230.262(a)(7) (disqualification applies if an issuer "is, at the time of such filing or sale, the subject of an investigation or proceeding *to determine whether a stop order or suspension order should be issued*") (emphasis added).

agency from mooting appeal and leaving challengers "in the same regulatory quagmire"). As of now, Petitioners are disqualified only by the SEC's January 13 and January 26 Orders, under Rule 262(a)(7).

## ARGUMENT

## I.     Standard Governing Preliminary Relief.

Four factors determine whether a stay should issue: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other [interested parties]; and (4) where the public interest lies. *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (citation omitted). The first two factors "are the most critical." *Id.* The factors are balanced, allowing for a stay for a substantial case on the merits where the balance of interests is sharply in favor of a stay. *Id.* at 964-65.

## II.    Petitioners' Appeal Will Likely Succeed on the Merits.

### A.     This Court Has Jurisdiction.

15 U.S.C. § 77i(a) and 78y(a)(1) allow any "person aggrieved by an order of" the SEC to seek judicial review in the court of appeals for their home circuit. Petitioners presented their constitutional and statutory

arguments about the SEC staff's actions through their December 2021 Petition to SEC and Waiver Request. The SEC responded with two orders that even more clearly imposed disqualification on Petitioners, in action by the Commission itself. The SEC's January 13 Order imposes on Petitioners the obligation to stop offering securities under Reg A or face potential civil and criminal penalties for sale of unregistered securities. 15 U.S.C. §§ 77e(a), 77x. The January 26 Order refused to correct the SEC staff's November 2021 unconstitutional order or to consider evidence and argument on why disqualification was unwarranted and unlawful. No agency appeal is available from these SEC actions: they are final, and they compel action on pain of severe penalties. Judicial review is ripe. *U.S. Army Corp of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1810 (2016) ("parties need not await enforcement proceedings before challenging final agency action where such proceedings carry the risk of serious criminal and civil penalties") (cleaned up); *Sackett v. EPA*, 566 U.S. 120, 127 (2012) (agency orders that impose obligation on pain of legal consequences are final and subject to judicial review). Further, Petitioners will be put out of business absent immediate relief.

## B. The SEC Violated Procedural Due Process.

Procedural due process requires a "two part-inquiry": "whether [claimant] was deprived of a protected interest, and if so, what process was his due." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).

### 1. Petitioners Had a Protected Property Interest.

Petitioner DF Growth REIT II's three-year Reg A exemption was a protected property interest, of which the SEC's orders deprive it.

The due process clause protects "those claims upon which people rely in their daily lives" for which they have a "legitimate claim of entitlement." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). These include both business licenses and exemptions. *See, e.g.*, *Alaska Airlines, Inc. v. Civilian Aeronautics Bd.*, 545 F.2d 194, 199-200 (D.C. Cir. 1976) (airline had a protected interest in exemption for charter flights, on which it relied "in framing the scope and nature of its operations"); *Rebirth Christian Acad. Daycare, Inc. v. Brizzi*, 835 F.3d 742, 747-48 (7th Cir. 2016) (child care ministry had protected interest in continued license exemption). Whether the right to operate is called a license or an exemption is "semantics": the existence of a protected interest turns on the reasonableness of reliance on the right to operate, given the

mandatory or discretionary terms of governing law. *Rebirth*, 835 F.3d at 747-48; *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1019 (9th Cir. 2011).

Here, Congress directed that the SEC "shall" create an exemption from full registration for small issuers like Petitioners, and directed the SEC to continuously analyze expansion of that exemption. 15 U.S.C. § 77c(b)(2), 77(b)(5); *cf. Geneva Towers Tenants Org. v. FMIC*, 504 F.2d 483, 489-90 (9th Cir. 1974) (legislative intent to endow benefit supports existence of constitutionally protected interest). 15 U.S.C. § 77c(b) contains no language suggesting entitlement to the exemption is discretionary.[2] Reg A implements Congress's directives using mandatory language: an issuer selling securities "pursuant to Regulation A shall be exempt under section 3(b) from the registration requirements of the Securities Act of 1933 . . . [if the issuer] is not disqualified under Rule 262." 17 C.F.R. § 230.251. This mandatory language guarantees an exemption for all but the "bad actors" disqualified in Rule 262.

---

[2] In any event, "the discretion to deny a benefit to those who do not meet the statutory terms of eligibility does not undermine the benefit's status as a protected property interest in the first instance." *Hall v. Cal. Dep't of Corr.*, 835 F. Supp. 522, 526 (N.D. Cal. 1993) (citing *Bd. of Regents*, 408 U.S. at 577).

Unlike all other "bad actor" disqualifications, which follow felony conviction or similar robust processes to determine wrongdoing,[3] the SEC's orders disqualified Petitioners without any process or explanation.[4] This is particularly problematic in this case, where the SEC recently investigated Petitioners, received full cooperation, and ended that inquiry with no adverse finding. (Ex. 2, Petition to SEC at 19.)

Of course, the mere fact that the disqualification provisions in Rule 262 exist within Reg A does not mean that the SEC's attempt to invoke them here is constitutional: the Supreme Court has expressly rejected such "bitter with the sweet" arguments. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985). Once a statute creates reasonable reliance, an agency cannot strip a benefit away without due process. *Id.* Here, the undisputed evidence shows that Petitioners have long

---

[3] "'Bad actor' disqualification requirements ... disqualify securities offerings from reliance on exemptions if the issuer or other relevant persons ... have been convicted of, or are subject to court or administrative sanctions for, securities fraud or other violations of specified laws." Disqualification of Felons and Other "Bad Actors" From Rule 506 Offerings, 78 Fed. Reg. 44730-01, 44731 (July 24, 2013).

[4] This is true for both REIT II and its affiliates and officers (the other Petitioners), who are tainted by REIT II's disqualification. 17 C.F.R. §§ 230.262(a), 230.506(a).

structured their capital-intensive business in reliance on continued access to capital through their duly approved Reg A offerings. (*See generally* Ex 1, First Lewis Decl.) Petitioners' use of Reg A was no "mere hope" or "unilateral expectation." Rather, Petitioners have a protected right to continue their Reg A offering.

### 2. The SEC's Orders Deprived Petitioners of Property Without Any Process.

"An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Loudermill*, 470 U.S. at 542. The requirement of pre-deprivation process is excused only in "extraordinary situations where some valid government interest is at stake." *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972); *James Daniel Good Real Prop.*, 510 U.S. at 53. Even then, however, the "important government interest" must be "accompanied by a substantial assurance that the deprivation is not baseless or unwarranted," and the government must provide a *prompt* post-deprivation hearing. *FDIC v. Mallen*, 486 U.S. 230, 240-41, 244 (1988) (relying in part on "independent body" of the grand jury having found probable cause of a felony); *cf. Fuentes*, 407 U.S. at 80-81

(procedural due process "is not only to ensure abstract fair play" but to "minimize substantively unfair or mistaken deprivations of property").

Here, the SEC's mere decision to investigate Petitioners, applying unknown standards to unknown allegations in a secret, one-sided proceeding, provides no such assurance. *Fuentes*, 407 U.S. at 81 ("fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights"); *Mallen*, 486 U.S. at 244 (relying "perhaps most significantly" on low chance of erroneous deprivation because the grand jury, "an independent body," found probable cause of a felony). In fact, beyond boilerplate references to the securities laws, the SEC has never given meaningful notice of the allegations against Petitioners. The Court will search in vain in the orders under review for any explanation for why the SEC believes disqualification is necessary. Considering the corporate-life-or-death seriousness of Petitioners' protected interest, the unbounded deprivation, the high risk of an erroneous deprivation arising from secret proceedings on untested allegations, and the SEC's exhibited lack of urgency, the balance of interests does not excuse pre-deprivation process. *Yagman v. Garcetti*, 852 F.3d 859, 864-65 (9th Cir. 2017) (courts

balance private interest, risk of erroneous deprivation, and government interest to determine timing and type of process that is due).

Even if pre-deprivation process were excused, the SEC has not provided the *prompt* post-deprivation process that would then be due. *Mallen*, 486 U.S. at 242; *Barchi*, 443 U.S. at 64; *Horne Bros., Inc. v. Laird*, 463 F.2d 1268, 1270 (D.C. Cir. 1972) ("While we may accept a temporary suspension for a short period, not to exceed one month, without any provision for according [due process] to the contractor, that cannot be sustained for a protracted suspension."). The SEC's January 2022 orders initiate an open-ended investigation likely to last for years (Ex. 7, Second Lewis Decl., ¶ 3), disqualifying Petitioners in the meantime. No citizen can simply be "left in limbo to await a hearing that might or might not 'eventually' occur." *Michell v. W.T. Grant Co.*, 416 U.S. 600, 618 (1974); *see also Myers & Myers, Inc. v. U. S. Postal Serv.*, 527 F.2d 1252, 1259 (2d Cir. 1975); *Horne Bros.*, 463 F.2d at 1270-71. And even if due process could tolerate such limbo in other cases, the corporate life-or-death consequences in this case require that the SEC justify deprivation before it imposes it.

In sum, by depriving Petitioners of their protected right to continue their duly approved Reg A offering without providing either pre-deprivation process or prompt post-deprivation process, the SEC has violated Petitioners' due process rights.

## C.     The SEC Acted Arbitrarily and Capriciously.

Before acting, an agency must consider if its decision impacts "reliance interests, determine whether they [are] significant, and weigh any such interests against competing policy concerns." *DHS v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020). The record before the SEC proved that Petitioners relied on Reg A for years and would be swiftly put out of business if suddenly disqualified, causing about 30,000 investors to suffer irreparable injury. (Ex. 2, Petition to SEC at 3-4, 17-19).

The SEC's January 13 and January 26 Orders give no consideration whatsoever to these issues, and cite no persuasive evidence or reason to cause this widespread injury.  The SEC's January 2022 Orders, which avoided the issues presented by the SEC staff's actions by purporting to moot them, are an intentional refusal to consider the consequences of agency action. That refusal "alone renders [the SEC's] decision arbitrary and capricious." *Cf. Regents of Univ. of Cal.*, 140 S. Ct. at 1913.

### III. Petitioners Will Be Irreparably Harmed Absent a Stay.

The second factor—irreparable harm to the moving party—also weighs in favor of a stay. *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 992 (9th Cir. 2019) ("the threat of being driven out of business is sufficient to establish irreparable harm") (citation and quotations omitted); *Spinelli v. City of New York*, 579 F.3d 160, 171 (2d Cir. 2009). Inability to obtain and deploy capital will quickly cause irreparable injury to Petitioners and their 30,000 investors, including forfeiture of a $1 million deposit on a Texas project and the loss of $18 million in construction financing for a San Diego project. (Ex. 7, Second Lewis Decl., ¶¶ 3-5; Ex. 1, First Lewis Decl., ¶¶ 15-16.) If relief from the SEC's action is not secured by February 28, 2022, Petitioners will lose the $1 million deposit in Texas and will be forced to initiate drastic action, including discharging employees and winding down operations, to attempt to limit investor losses. (Ex. 7, Second Lewis Decl., ¶¶ 3-5.)

Due to sovereign immunity, Petitioners will be unable to obtain financial recourse for these injuries from the SEC. *Sprecher v. Von Stein*, 772 F.2d 16, 18 (2d Cir. 1985). In sum, any cognizable injury suffered by Petitioners will be irreparable.

## IV.   Issuance of a Stay Will Not Harm the SEC.

The SEC loses nothing if this matter is stayed. Petitioners do not ask that the SEC stop its investigation, but only that they not be disqualified as "bad actors" without being proven to be bad actors. If the SEC thinks it should immediately disqualify Petitioners, then it can seek temporary and preliminary relief in many ways, including under 15 U.S.C. § 77h-1(c)-(d), after proving that immediate relief is necessary to prevent "significant dissipation or conversion of assets, significant harm to investors, or substantial harm to the public interest." There is no reason to bypass these basic due process prerequisites here.

Nor would a stay of Petitioners' disqualification interfere with the SEC's investigation, in which Petitioners have already participated voluntarily. This Court has broad discretion to "mold its decree to meet the exigencies of the particular case." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (cleaned up). The Court's stay order can specify that it applies only to disqualification without due process.

## V.   Issuance of a Stay Is in the Public Interest.

Unlawful agency action is per se contrary to the public interest, regardless of the purported justification. *Ala. Ass'n of Realtors v. HHS*,

141 S. Ct. 2485, 2490 (2021) ("[O]ur system does not permit agencies to act unlawfully even in pursuit of desirable ends."). There is no evidence that allowing the SEC to proceed precipitously is in the public interest. To the contrary, the record shows that 30,000 individual investors will be immediately and irreparably harmed. To the extent the SEC relies on a purported risk of harm to *future* investors as a basis for the purported disqualification under Section 230.262(a)(7), the argument is purely speculative, contrary to the record (Petitioners were previously investigated and cleared), and cannot outweigh the *actual* harm that *current* investors will suffer. The SEC has multiple tools to prevent future harm without depriving issuers and their investors of basic procedural protections.

## VI. Appropriate Relief.

Petitioners have already suffered lengthy disqualification without any process. Moreover, the SEC has repeatedly responded to Petitioners' concerns (about the legality and investor impact of summary disqualification) by replacing one illegal directive with another intended to have the same effect. On February 11, as part of a meet and confer about Petitioners' intent to exercise their constitutional right to petition,

the SEC signaled that it will do this again by starting a Rule 258 proceeding. Such tactics reflect poorly on the SEC, but do not affect this Court's powers. *Sackett*, 8 F.4th at 1084-85 (rejecting agency's attempt to moot appeal by withdrawing challenged order where the challenger's "central legal challenge remains unresolved"). The Court should stay the SEC's order disqualifying Petitioners from relying on Reg A until they have had a full and fair hearing before a neutral decision maker.

## <u>CONCLUSION</u>

This Court should grant this motion to stay Petitioners' disqualification pending this appeal. In the alternative, the Court should enter a temporary stay while it allows briefing on this motion.

<div style="margin-left: 40%">

Respectfully submitted,

</div>

Dated: February 15, 2022

<div style="margin-left: 40%">

BUCHALTER
A PROFESSIONAL CORPORATION

By: */s/ Sanjay Bhandari*
SANJAY BHANDARI
*Attorneys for Petitioners
DiversyFund, Inc., DF Growth REIT, LLC, DF Growth REIT II, LLC, DF Manager, LLC, Craig Cecilio, and Alan Lewis*

</div>

# CERTIFICATE OF COMPLIANCE

## (FRAP 32(a)(7)(C), Cir. Rule 32-1)

The undersigned, counsel for Petitioners, certifies that the text of this motion is double-spaced and printed using proportionately-spaced 14-point Century Schoolbook font type. The motion contains 3,747 words as determined by Microsoft Word 2016 word processing software.

Respectfully submitted,

Dated: February 15, 2022

BUCHALTER
A PROFESSIONAL CORPORATION

By: */s/ Sanjay Bhandari*
SANJAY BHANDARI
*Attorneys for Petitioners*
*DiversyFund, Inc., DF Growth REIT, LLC,*
*DF Growth REIT II, LLC, DF Manager,*
*LLC, Craig Cecilio, and Alan Lewis*

## STATEMENT OF RELATED CASES

## (Cir. Rule 28-2.6)

The undersigned, counsel for Petitioners, certifies that there are no known related cases under Circuit Rule 28-2.6.

Respectfully submitted,

Dated: February 15, 2022

BUCHALTER
A PROFESSIONAL CORPORATION

By: */s/ Sanjay Bhandari*_____
SANJAY BHANDARI
*Attorneys for Petitioners*
*DiversyFund, Inc., DF Growth REIT, LLC,*
*DF Growth REIT II, LLC, DF Manager,*
*LLC, Craig Cecilio, and Alan Lewis*

21

# APPENDIX

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 1 | December 13, 2021 Declaration of Alan Lewis |
| 2 | Petition For Review of Order Commanding DiversyFund to Stop Offering or Selling Securities Previously Offered Pursuant to Regulation A Exemption |
| 3 | Request for Expedited Waiver of Any Disqualification Under Rule 262(a)(7) of Regulation A |
| 4 | Notice of Intent to Petition |
| 5 | January 13 Order – Filed Under Seal |
| 6 | January 26 Order – Filed Under Seal |
| 7 | Declaration of Alan Lewis In Support of Petitioners Motion for Stay |
| 8 | November 8 Order – Filed Under Seal |

# EXHIBIT 1

**UNITED STATES OF AMERICA**
**BEFORE THE**
**SECURITIES AND EXCHANGE COMMISSION**

| | |
|---|---|
| In the Matter of the Petition of:<br>DiversyFund, Inc., DF Growth REIT, LLC,<br>DF Growth REIT II, LLC, DF Manager,<br>LLC, Craig Cecilio and Alan Lewis | **File No. LA-5266** |

**DECLARATION OF ALAN LEWIS IN SUPPORT OF DIVERSYFUND'S MOTION**
**FOR THE SUBMISSION OF ADDITIONAL EVIDENCE PURSUANT TO 17 C.F.R. §**
**201.452 (RULE 452)**

I, Alan Lewis declare:

1.     I am the co-founder, Chief Investment Officer, of DF Growth REIT, LLC ("REIT I"); ("REIT II"); DF Manager, LLC ("DF Manager"); and DiversyFund, Inc. (collectively "DiversyFund"). I have personal knowledge of all the facts stated herein, and I could and would competently testify thereto, if called upon to do so.

2.     This declaration is submitted in support of DiversyFund's Motion for the Submission Additional Evidence pursuant to 17 C.F.R. § 201.452, which is being filed concurrently with DiversyFund's Petition for Review of the November 8, 2021 Order of Investigation (LA-5266) from the Securities and Exchange Commission ("Commission") and the Division of Enforcement's November 29, 2021 order commanding DiversyFund to stop offering or selling securities previously offered pursuant to Regulation A exemptions.

## Background on DiversyFund and Investors

3.     REIT I includes approximately 25,828 individual investors, while REIT II includes approximately 3,712 individual investors.

4.     For the period ending December 13, 2021, REIT II had raised $8,032,282.00, and invested $ 5,230,404.00 in one multifamily property.

5.     DF Manager, LLC ("DF Manager") is a Delaware limited liability company that serves as the manager of REIT I and REIT II.

6.     DiversyFund, Inc. is a Delaware corporation that serves as the sponsor of REIT I and REIT II, and owns 100% of DF Manager. DiversyFund, Inc. has sponsored or managed approximately eight issuers ("Reg D Issuers") raising capital under 17 CFR §230.506. It has approximately 250 shareholders who contributed Series A funding.

7.     REIT I, REIT II, DF Manager, and DiversyFund, Inc. are all affiliated to operate under the same business model.

## DiversyFund's Business Model Relies on Regulation A

8.     DiversyFund, Inc. started in 2016 with the purpose of bringing the wealth-building investment tools traditionally used by the wealthy ("the 1%") to the everyday investor through

1

participation in alternative investments, such as Real Estate Investment Trusts.

9.     REIT I first qualified under Regulation A in November 2018 which allowed it to open up investment opportunities to all investors, not just institutional investors. Since then, DiversyFund has relied on Regulation A offerings to build its business model and long term growth strategy.

10.    DiversyFund's real estate investments are categorized as "growth" investments, as opposed to "income" investments. Its business model is based on a five-stage growth cycle that includes: (1) raising capital, (2) acquiring assets, (3) performing value-add renovations to the properties which allows for increased rents and greater appreciation, (4) time for natural market appreciation, and (5) sale of the property based on market conditions. This means the investment term is typically several years long.

11.    This model requires consistent and significant capital over time, not only for the initial acquisition of a property, but also for the ongoing improvements to the property.

12.    Similar to other startup companies, DiversyFund, Inc. obtained initial capital through Series A funding for fintech platform operations and marketing to potential REIT customers and the REITs now obtain capital financing from investors through the offer and sale of securities under Regulation A for purchasing properties for REIT customers.

13.    Obtaining ongoing capital is critical to DiversyFund's growth model as it: (i) provides the REITs with the funds necessary to meet current and future obligations, and deploy capital effectively to produce profits for REIT customers and (ii) generates fee revenue for DiversyFund, Inc. upon each property acquisition that DiversyFund, Inc. can use to market to additional REIT customers and operate the fintech platform that supports the REITs.

14.    The real estate industry is capital-intensive and DiversyFund's inability to access funding through capital markets could limit its growth and negatively affect operations, prospects, and properties already in the portfolio.

15.    If the Commission blocks DiversyFund from raising capital under Regulation A, which was the only means of raising capital identified in REIT II's disclosures, then the

2

Commission has predictably and inevitably assured that DiversyFund, Inc. will experience significant financial loss to its 250 shareholders and the nearly 30,000 REIT investors will experience a significant reduction in expected profits. Such harm is severe and possibly permanent.

16.     Importantly, REIT II investors are, and will be, co-investors with REIT I investors in many projects that continue to require capital investment. Thus, the sudden stop of REIT II capital will cause harm to investors in both REITs. For example, a joint investment by both REITs in two Texas multifamily properties requires REIT II to be able to raise several million dollars before the end of January 2022 in order to close the real estate transaction—a timeline that is well before the Commission's investigation will be complete. Without the benefit of Regulation A upon which DiversyFund is relying to raise the necessary capital for REIT II, the deals will fall through and investors in REIT I will suffer a loss of nearly $1 million of deposits that have already been put toward the deals.

17.     Thus, the Division's invocation of Rule 262(a)(7) on the basis of preliminary suspicion for the duration of a complex financial investigation will very likely cause significant and irreparable harm to DiversyFund and their approximately 30,000 individual investors. Simply put, a lack of capital for the investments required for a capital-intensive business will cause significant and irreparable financial harm to the business and the nearly 30,000 REIT investors.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct.

Executed on December 13, 2021 at San Diego, California.

_____
Alan Lewis

3

27

## CERTIFICATE OF SERVICE

I, Chandra Roam, counsel for DiversyFund, Inc., DF Growth REIT, LLC, DF Growth

REIT II, LLC, DF Manager, LLC, Craig Cecilio and Alan Lewis (collectively "DiversyFund"),

hereby certify that, on December 13, 2021, I electronically filed a copy of:

**DECLARATION OF ALAN LEWIS IN SUPPORT OF DIVERSYFUND'S MOTION FOR THE SUBMISSION OF ADDITIONAL EVIDENCE PURSUANT TO 17 C.F.R. § 201.452 (RULE 452)**

via the SEC's eFAP system.

Additionally, I hereby certify that, on December 13, 2021, I served a copy of the above-

listed document via email at the email addresses indicated below:

Will Rosenthal
*Counsel, Division of Enforcement*
Securities and Exchange Commission, Los Angeles Regional Office
444 South Flower Street, Suite 900, Los Angeles, CA 90071
Phone: (323) 965-4518
Email: rosenthalw@sec.gov

Victoria Levin
*Assistant Regional Director, Division of Enforcement*
Securities and Exchange Commission, Los Angeles Regional Office
444 South Flower Street, Suite 900, Los Angeles, CA 90071
Phone: (323) 965-3872
Email: levinv@sec.gov

DATED: December 13, 2021

_____
Chandra Roam

D6659.0002 BN 48636518v2

28

12/13/21, 7:52 PM                                                    Filing Confirmation



**U.S. Securities and
Exchange Commission**

**Filing Confirmation**

Your Filing ID is 3328.

Use this ID when making any inquires about this filing.

**Filing Details**

| | | | | |
|---|---|---|---|---|
| AP File No. | N/A | Filer | Bhandari, Sanjay | ID  3328 |
| Case Name | N/A | On Behalf of | DiversyFund, Inc., DF Growth REIT, LLC, DF Growth REIT II, LLC, DF Manager, LLC, Craig Cecilio and Alan Lewis | |
| Date Submitted | 12/13/2021 | | | |
| Description | Petition for Review and Certificate of Service, Motion for the Submission of Additional Evidence and Certificate of Service, and Declaration of Alan Lewis in Support of DiversyFund's Motion for the Submission of Additional Evidence and Certificate of Service. | | | |

**Successfully Uploaded Files**

| AP File No. | Date Submitted | File Name | Title/Description | Document Type | Under Seal |
|---|---|---|---|---|---|
| N/A | 12/13/2021 | 2021-12-13_DiversyFund_Declaration of Alan Lewis in Support of Motion for the Submission of Additional Evidence.pdf | Other - Declaration of Alan Lewis in Support of DiversyFund's Motion for the Submission of Additional Evidence and Certificate of Service | Filing | No |
| N/A | 12/13/2021 | 2021-12-13_DiversyFund_Motion for the Submission of Additional Evidence.pdf | Other - Motion for the Submission of Additional Evidence and Certificate of Service | Filing | No |
| N/A | 12/13/2021 | 2021-12-13_DiversyFund_Petition for Review of Orders.pdf | Other - Petition for Review and Certificate of Service | Filing | No |

NOTICE REGARDING SERVICE: The filing of a document through the eFAP system does not constitute service of this filing on any other party. You are responsible for serving this filing in accordance with Rule 150 of the Commission's Rules of Practice.

# EXHIBIT 2

UNITED STATES OF AMERICA
BEFORE THE
SECURITIES AND EXCHANGE COMMISSION

| | |
|---|---|
| In the Matter of the Petition of:<br>DiversyFund, Inc., DF Growth REIT, LLC,<br>DF Growth REIT II, LLC, DF Manager,<br>LLC, Craig Cecilio and Alan Lewis | File No. LA-5266 |

**PETITION FOR REVIEW OF ORDER OF INVESTIGATION AND ORDER
COMMANDING DIVERSYFUND TO STOP OFFERING OR SELLING SECURITIES
PREVIOUSLY OFFERED PURSUANT TO REGULATION A EXEMPTIONS.**

Sanjay Bhandari
BUCHALTER APC
655 West Broadway, Suite 1600
San Diego, CA 92101-8494
(619) 219-5335
*Counsel for Petitioners*

Date: December 13, 2021

BN 48620863v6

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................... 1

II. RELEVANT BACKGROUND ................................................................ 3

    A.   DiversyFund's Corporate Structure ............................................ 3

    B.   DiversyFund's Business Model Relies on Regulation A ........... 4

    C.   Procedural Background ............................................................... 7

III. DIVERSYFUND IS ENTITLED TO COMMISSION REVIEW ................. 11

    A.   Mandatory Review ................................................................... 11

    B.   Discretionary Review .............................................................. 11

IV. ARGUMENT ......................................................................................... 12

    A.   The Division's Orders Deprive DiversyFund of Its Right to Use Regulation A, in Violation of the Fifth Amendment's Due Process Clause ........................... 12

    B.   The Division's Orders Are Arbitrary and Capricious Because it Did Not Consider DiversyFund's Reliance on Regulation A or the Harm to Investors ..... 17

    C.   The Division's Disqualification Order is Unlawful Under the Appointments Clause of the U.S. Constitution ............................ 20

V.  THE COMMISSION SHOULD LEAVE THE AUTOMATIC STAY IN PLACE WHILE IT CONSIDERS THIS PETITION FOR REVIEW .......................... 22

VI. CONCLUSION ..................................................................................... 23

BN 48620863v6

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Airlines, Inc. v. Civilian Aeronautics Board,*
    545 F.2d 194 (D.C. Cir. 1976) ...................................................................14

*Carver v. Lehman,*
    558 F.3d 869 (9th Cir. 2009) ...............................................................13, 14

*Cleveland Board of Education v. Loudermill,*
    470 U.S. 532 (1985) .................................................................................15

*DHS v. Regents of Univ. of Cal.,*
    140 S. Ct. 1891 (2020) .............................................................................17

*Lucia v. SEC,*
    138 S. Ct. 2044 (2018) ...........................................................................2, 20

*Spinelli v. City of New York,*
    579 F.3d 160 (2d Cir. 2009) ....................................................................14

**Statutes**

5 U.S.C. 551 ..................................................................................................11

5 U.S.C. § 551(7) ..........................................................................................11

15 U.S.C. § 77c(b)(2) ....................................................................................14

15 U.S.C. § 77h-1(c) ................................................................................15, 23

15 U.S.C. § 78d-1(b) .....................................................................................11

Securities Act of 1933 ...................................................................................14

Securities and Exchange Commission's Administrative Law ........................20

**Other Authorities**

17 C.F.R. § 201.411(b)(1)(iii) .......................................................................11

17 C.F.R. § 201.411(b)(2) .............................................................................12

17 C.F.R. § 201.431(b) ..................................................................................11

17 C.F.R. § 201.431(b)(1) ............................................................... 11

17 C.F.R. § 201.431(e) ............................................................. 10, 22

17 C.F.R. § 201.452 ................................................................. 4, 15

17 C.F.R. § 202.1(d) ....................................................................... 7

17 C.F.R. § 230.251 ...................................................................... 14

17 C.F.R. § 230.258 .................................................... 15, 16, 22, 23

17 C.F.R. § 230.258(a) ..................................................... 15, 16, 22

17 C.F.R. § 230.258(b) .................................................................. 16

17 C.F.R. Section 230.262 ........................................ 1, 14, 16, 19

17 C.F.R. § 230.262(a) ................................................................. 12

17 C.F.R § 230.262(a)(3) through (8) ................................... 16, 22

17 C.F.R. § 230.262(a)(7) ..................... 1, 2, 4, 6, 7, 9, 10, 12, 13, 18, 19, 20, 21, 22

17 C.F.R. § 230.506(d) ................................................................. 18

17 C.F.R. § 230.506(d)(1)(vii) ....................................................... 4

17 CFR 230.258 ........................................................................... 16

17 CFR § 230.506 .......................................................................... 4

86 Fed. Reg. 3496 at 3549 ........................................................... 16

26 U.S. Code Rule 451 .................................................................. 23

U.S. Const. art. II, § 2, cl. 2 ......................................................... 20

U.S. Constitution ...................................................................... 2, 10

## I.     **INTRODUCTION**

DiversyFund, Inc., DF Growth REIT, LLC, DF Growth REIT II, LLC, DF Manager, LLC, Craig Cecilio and Alan Lewis (collectively "DiversyFund") submits this Petition for Review of the November 8, 2021 Order of Investigation (LA-5266) from the Securities and Exchange Commission ("Commission") and the Division of Enforcement's November 29, 2021 order commanding DiversyFund to stop offering or selling securities previously offered pursuant to Regulation A exemptions.

The Commission should grant review, vacate or modify the Division of Enforcement's orders, and make clear that the Division's investigation does not disqualify DiversyFund's offerings from Regulation A, because disqualification under these circumstances is arbitrary, capricious, and unconstitutional as it deprives DiversyFund of its fundamental right to due process, including notice and opportunity to be heard.

The Division of Enforcement issued its directive based on an erroneous interpretation of the Regulation A's disqualification provisions (17 C.F.R. § 230.262(a)(7)), taking the position that Section 230.262 *automatically* disqualifies DiversyFund, indefinitely, and *without any finding of wrongdoing or opportunity to be heard*, simply because the Division of Enforcement has initiated an investigation and is supposedly *considering* whether to initiate temporary suspension proceedings. The Division issued its orders without any notice, opportunity to be heard by a neutral decision maker, or other procedural protections to which DiversyFund is entitled. To the extent the Division's interpretation of Section 230.262(a)(7) is correct, the regulation itself is unlawful to the extent it purports to disqualify covered persons without adequate notice or the opportunity to be heard.

Furthermore, the Division of Enforcement's orders are arbitrary and capricious because the Division failed to consider the significant impact of its decision on the reliance interests of DiversyFund and its investors. DiversyFund operates a capital-intensive business and its model of providing everyday people the opportunity to invest in real property assets depends on the availability of Regulation A. DiversyFund has been relying on, and using, the Regulation A exemption for years. If DiversyFund is disqualified from Regulation A, it will be unable to access capital markets to raise the funds necessary to meet current and future obligations, and deploy capital effective to produce profits. This will result in immediate and irreparable harm to its investors and cause them to lose millions of dollars. Furthermore, DiversyFund will suffer irreparable harm to its reputation by prematurely, and baselessly, being labeled a "bad actor" before any such findings are made. The stigma of being labeled a "bad actor" will permeate long into the future, well after the pending investigation reveals no wrongdoing.

Ms. Levin's apparent decision to expand the investigation to include considering a temporary suspension proceeding, and to disqualify DiversyFund on that basis alone, also violates the Appointments Clause. Combined with her broad investigatory powers, Ms. Levin's purported authority to make decisions that disqualify covered parties from Regulation A, makes her authority equivalent to that exercised by the administrative-law judges that the Supreme Court held are "inferior officers" in *Lucia v. SEC*, 138 S. Ct. 2044 (2018).

To be clear, DiversyFund is *not* asking the Commission to stop the Division's investigation, with which DiversyFund is eager to comply, but simply to reverse Enforcement staff's position that the investigation automatically imposes a disqualification of Regulation A under 17 C.F.R. § 230.262(a)(7). Because of the arbitrary and capricious nature of the purported disqualification, and its incongruity with the minimum process required by the U.S. Constitution and basic

principles of administrative law, the Commission should grant this Petition for Review. If the Commission denies this Petition for Review, DiversyFund respectfully requests that the Commission stay the effectiveness of the Division's orders for 30 days to allow for judicial review.

## II.   RELEVANT BACKGROUND

### A.   DiversyFund's Corporate Structure

DF Growth REIT, LLC ("REIT I") is a Delaware limited liability company that offered and sold securities through November 13, 2021 under Regulation A in an offering qualified by the Commission on November 18, 2018.[1]

DF Growth REIT II, LLC ("REIT II") is a Delaware limited liability company that is offering and selling securities under Regulation A in an offering qualified by the Commission on January 29, 2021.[2]

The purpose of REIT I and REIT II is to invest in real estate projects and assets across the United States, focusing primarily on multifamily value-add properties.[3] As of REIT I's last Form 1-SA filing, for the period ended June 30, 2021, REIT I had raised $54,670,218, and invested $35,172,294 in ten projects, seven of which are multifamily properties.[4] REIT I includes

---

[1] *See* DF Growth REIT, LLC, Offering Circular at 1 (Oct. 19, 2018) (https://www.sec.gov/Archives/edgar/data/1750695/999999999418000268/9999999994-18-000268-index.htm) ("REIT I Circular"); SEC Notice of Qualification (Nov. 13, 2018) (https://www.sec.gov/Archives/edgar/data/1750695/999999999418000268/9999999994-18-000268-index.htm).

[2] *See* DF Growth REIT II, LLC, Offering Circular (Amendment No. 1) at 1 (Jan. 19, 2021) ("REIT II Circular"). (https://www.sec.gov/Archives/edgar/data/1824154/000121390021003411/ea133531-1aa1_dfgrowthreit2.htm); SEC Notice of Qualification (Jan. 29, 2021) (https://www.sec.gov/Archives/edgar/data/1824154/999999999421000032/xslQUALIFX01/primary_doc.xml).

[3] REIT I Circular at 1; REIT II Circular at 1.

[4] *See* DF Growth REIT, LLC, Semi-Annual Report Pursuant to Regulation A, at 1-2 (Sept. 28, 2021) (https://www.sec.gov/Archives/edgar/data/1750695/000121390021050257/ea148054-1sa_dfgrowth.htm).

3

approximately 25,828 individual investors, while REIT II includes approximately 3,712 individual investors.[5] For the period ending December 13, 2021, REIT II had raised $8,032,282.00, and invested $ 5,230,404.00 in one multifamily property.[6]

DF Manager, LLC ("DF Manager") is a Delaware limited liability company that serves as the manager of REIT I and REIT II.[7]

DiversyFund, Inc. is a Delaware corporation that serves as the sponsor of REIT I and REIT II, and owns 100% of DF Manager. DiversyFund, Inc. has sponsored or managed approximately eight issuers ("Reg D Issuers") raising capital under 17 CFR § 230.506. It has approximately 250 shareholders who contributed Series A funding.[8]

REIT I, REIT II, DF Manager, and DiversyFund, Inc. are all affiliated to operate under the same business model.[9] Under 17 C.F.R. § 230.506(d)(1)(vii), a disqualification under 17 C.F.R. § 230.262(a)(7) automatically results in disqualification under 17 C.F.R. § 230.506. Consequently, the current disqualification affects REIT I, REIT II, DF Manager, DiversyFund, Inc., all the Reg D Issuers, and any other affiliated issuer.

Therefore, for the purposes of this Petition for Review, REIT I, REIT II, DF Manager, and DiversyFund, Inc. are collectively referred to as "DiversyFund."

**B.    DiversyFund's Business Model Relies on Regulation A**

DiversyFund, Inc. started in 2016 with the purpose of bringing the wealth-building investment tools traditionally used by the wealthy ("the 1%") to the everyday investor through

---

[5] See Declaration of Alan Lewis ("Lewis Decl."), ¶ 3, which is being filed concurrently herewith in support of DiversyFund's Motion for the Submission of Additional Evidence pursuant to 17 C.F.R. § 201.452.
[6] *Id.* ¶ 4.
[7] *Id.* ¶ 5.
[8] *Id.* ¶ 6.
[9] *Id.* ¶ 7.

4

participation in alternative investments, such as Real Estate Investment Trusts.[10] REIT I first qualified under Regulation A in November 2018, which allowed it to open up investment opportunities to all investors, not just institutional investors. Since then, DiversyFund has relied on Regulation A offerings to build its business model and long term growth strategy.[11]

DiversyFund's real estate investments are categorized as "growth" investments, as opposed to "income" investments. Its business model is based on a five-stage growth cycle that includes: (1) raising capital, (2) acquiring assets, (3) performing value-add renovations to the properties which allows for increased rents and greater appreciation, (4) time for natural market appreciation, and (5) sale of the property based on market conditions. This means the investment term is typically several years long. This model requires consistent and significant capital over time, not only for the initial acquisition of a property, but also for the ongoing improvements to the property.[12]

Similar to other startup companies, DiversyFund, Inc. obtained initial capital through Series A funding for fintech platform operations and marketing to potential REIT customers and the REITs now obtain capital financing from investors through the offer and sale of securities under Regulation A for purchasing properties for REIT customers. Obtaining ongoing capital is critical to DiversyFund's growth model as it: (i) provides the REITs with the funds necessary to meet current and future obligations, and deploy capital effectively to produce profits for REIT customers and (ii) generates fee revenue for DiversyFund, Inc. upon each property acquisition that DiversyFund, Inc. can use to market to additional REIT customers and operate the fintech platform that supports the REITs. The real estate industry is capital-intensive and DiversyFund's inability

---

[10] *Id.* ¶ 8.
[11] *Id.* ¶ 9.
[12] *Id.* ¶ 10-11.

to access funding through capital markets could limit its growth and negatively affect operations, prospects, and properties already in the portfolio.[13]

Today, DiversyFund has approximately 30,000 individual investors in its real estate portfolio. If the Commission blocks DiversyFund from raising capital under Regulation A, which was the only means of raising capital identified in REIT II's disclosures, then the Commission has predictably and inevitably assured that DiversyFund, Inc. will experience significant financial loss to its 250 shareholders and the nearly 30,000 REIT investors will experience a significant reduction in expected profits. Such harm is severe and possibly permanent.[14]

Importantly, REIT II investors are, and will be, co-investors with REIT I investors in many projects that continue to require capital investment. Thus, the sudden stop of REIT II capital will cause harm to investors in both REITs. For example, a joint investment by both REITs in two Texas multifamily properties requires REIT II to be able to raise several million dollars before the end of January 2022 in order to close the real estate transaction—a timeline that is well before the Commission's investigation will be complete. Without the benefit of Regulation A upon which DiversyFund is relying to raise the necessary capital for REIT II, the deals will fall through and investors in REIT I will suffer a loss of nearly $1 million of deposits that have already been put toward the deals.[15]

Thus, the Division's invocation of Rule 262(a)(7) on the basis of preliminary suspicion for the duration of a complex financial investigation will very likely cause significant and irreparable harm to DiversyFund and its approximately 30,000 individual investors. Simply put, a lack of

---

[13] *Id.* ¶ 12-14.
[14] *Id.* ¶ 15.
[15] *Id.* ¶ 16.

6

capital for the investments required for a capital-intensive business will cause significant and irreparable financial harm to the business and the nearly 30,000 REIT investors.[16]

## C.    **Procedural Background**

The first contact from the Commission to DiversyFund occurred on November 18, 2021, when Victoria A. Levin (Assistant Regional Director, Enforcement, Los Angeles Regional Office) contacted counsel by email to determine the status of representation. Just hours later, counsel confirmed DiversyFund was represented and offered to speak with Ms. Levin the next day. When Ms. Levin informed counsel that she would be out of the office through November 28, 2021, the parties agreed to set a call for November 29, 2021.[17]

During the November 29, 2021 phone call, Ms. Levin informed counsel she did not yet have a subpoena for DiversyFund, but nonetheless, that under Rule 262(a)(7), REIT I and REIT II must stop offering or selling securities because she and/or others had decided to investigate whether to seek a stop or suspension order. Upon counsel's request, Ms. Levin sent a follow up email memorializing the Commission staff's position, stating:

> Thank you for speaking with us this afternoon.  Per our call, this email confirms that in our DiversyFund (LA-5266) matter, we are investigating, among other things, to determine whether to seek a Regulation A suspension order with respect to DF Growth REIT and DF Growth REIT II. This means that, under the disqualification provisions of Rule 262 of Regulation A (17 C.F.R. Section 230.262) the two issuers, and related entities and persons as set forth in the rule, are considered bad actors pending our investigation. See Rule 262(a)(7). *As a result, Regulation A is not available to DF Growth REIT and DF Growth REIT II and offers and sales by both issuers must stop.* (emphasis added).

Pursuant to the Commission's rules, Ms. Levin speaks for the Division of Enforcement. 17 C.F.R.

---

[16] *Id.* ¶ 17.

[17] The facts discussed herein, and exhibits evidencing those facts, were put before the Commission through undersigned counsel's December 7, 2021 letter to Sebastian Gomez Abero, Chief, Office of Small Business Policy, Division of Corporation Finance, requesting a waiver of any disqualification under Rule 262(a)(7) of Regulation A.

7

§ 202.1(d) ("[A]ny statement by the … assistant director … of a division can be relied upon as representing the views of that division.").

Neither Ms. Levin, nor anyone else at the Commission provided DiversyFund with any explanation as to the grounds for the investigation or the grounds for considering whether to seek a suspension order. DiversyFund was provided no evidence supporting any suspicion against it, and was provided no opportunity to confront or rebut such evidence.

On November 30, 2021, counsel asked to speak with Ms. Levin regarding the Commission's position that DiversyFund is considered a "bad actor" pending the investigation— for which the Commission had not yet provided a formal Order of Investigation or Subpoena— explaining to Ms. Levin that shutting down DiversyFund suddenly and indefinitely carries significant risk of harming tens of thousands of people. Ms. Levin responded that the Commission was not "shutting down" DiversyFund, but reiterated that Regulation A was no longer available for DiversyFund's offers and sales of securities pending the investigation. However, Ms. Levin's "clarification" is a distinction without a difference. The fact remains that DiversyFund's business model relies on its ability to access capital markets by offering securities under Regulation A, and without it, the company's 30,000 individual investors will suffer irreparable harm.

The Commission did not provide the Formal Order of Investigation (LA-5266) until December 1, 2021 (despite the fact that the Order is dated November 8, 2021) and did not issue a subpoena to DiversyFund until after close of business on December 2, 2021. Nowhere in the Formal Order of Investigation (LA-5266) is there any mention of the Commission having formally authorized the Commission staff to investigate whether to seek a Regulation A suspension order, or to disqualify DiversyFund during the course of such an investigation. Rather, the assertion that the mere initiation of an investigation triggers disqualification of DiversyFund's reliance on

Regulation A under Rule 262(a)(7) appears to be based on nothing more than the Division of Enforcement staff's interpretation of the Rule.

The Division of Enforcement's lackadaisical timeline, above, indicates that the Division has no credible reason to think that there is an imminent threat of harm to investors that could somehow require a sudden and immediate halt of DiversyFund's offerings under Regulation A. For example, the Formal Order of Investigation is dated November 8, 2021, yet Ms. Levin did not contact DiversyFund's counsel until ten days later, on November 18, 2021. By November 29, 2021—three weeks after the Formal Order of Investigation—the Division of Enforcement had not yet prepared a document subpoena for DiversyFund, nor had the Formal Order been provided to counsel. When the Division of Enforcement finally sent a subpoena to DiversyFund, it requested documents be produced by December 16, 2021—nearly six weeks *after* the "qualifying event" (i.e., the November 8, 2021 Formal Order of Investigation) upon which the Division of Enforcement purports to rely in temporarily suspending DiversyFund's Regulation A exemption. As of the filing of this Petition, the Division of Enforcement has not issued any subpoenas for testimony by the principals of DiversyFund—nor has it provided a list of topics to address—and such testimony is not expected to take place until January 2022 or later. Clearly, the mere initiation of an investigation, with nothing more, does not create exigent circumstances sufficient to justify an immediate termination of DiversyFund's offerings under its duly issued Regulation A exemption without even the possibility of a hearing before an administrative-law judge or other neutral decision maker.

On December 6, 2021, DiversyFund notified the Commission of its intent to file a petition for review of the Formal Order of Investigation and Ms. Levin's order to halt the offer of sale of

BN 48620863v6

securities under Rule 262(a)(7). This Notice automatically stayed both orders (and the purported disqualification) pending further action by the Commission. 17 C.F.R. § 201.431(e).

Additionally, given the magnitude of harm that will result from the Commission's directive that DiversyFund immediately cease offering or selling securities under Regulation A, DiversyFund sent an expedited Waiver Request to the Division of Corporation Finance on December 7, 2021. As of the filing of this Petition for Review, the Division of Corporation Finance has not responded to the Waiver Request.

On December 8, 2021, Ms. Levin, responded to DiversyFund's Notice of Intent to file a petition, stating:

> [M]y November 29, 2021 email "was not an order issued by the Division of Enforcement or the Commission. Rather, my correspondence was designed to notify you that the SEC is conducting an investigation that includes seeking to determine whether a Regulation A suspension order should issue suspending the ability of [DiversyFund] to rely on the Regulation A exemption. We want to make sure that in evaluating this information both you and your client are aware of Rule 262(a)(7), which states, in relevant part, the exemption from registration under Regulation A is not available for a sale of securities, if the issuer is 'at the time of . . . sale[] the subject of an investigation . . . to determine whether a . . . suspension order should be issued.'"

Ms. Levin therefore acknowledges the Division of Enforcement has issued no formal order suspending Regulation A, but nonetheless takes the position that its investigation into whether DiversyFund is a "bad actor" imposes an immediate disqualification preventing DiversyFund from relying on Regulation A to issue offers or sales. This extremely tenuous position blatantly strips DiversyFund of all procedural protections and due process rights. While it is appropriate for the Commission to conduct an investigation, it is not appropriate for the Commission staff to arbitrarily and capriciously terminate a duly issued exemption before affording DiversyFund the minimum process required by the U.S. Constitution and basic principles of administrative law.

BN 48620863v6

### III.   DIVERSYFUND IS ENTITLED TO COMMISSION REVIEW

17 C.F.R. § 201.431(b) sets forth the standards for mandatory or discretionary review of actions made pursuant to delegated authority. Here, the Commission's review is mandatory, and in any event, would be warranted under the standard for discretionary review.

#### A.    Mandatory Review

17 C.F.R. § 201.431(b)(1) provides that "the Commission shall review any action that it would be required to review pursuant to § 201.411(b)(1) if the action was made as the initial decision of a hearing officer." *See also* 15 U.S.C. § 78d-1(b). Section 201.411(b)(1)(iii) provides, in turn, that the Commission shall review any decision by a hearing officer "in a case of adjudication (as defined by 5 U.S.C. 551) not required to be determined on the record after notice and opportunity for hearing," subject to certain exemptions not relevant here. 5 U.S.C. § 551(7) defines an "adjudication" broadly to mean "agency process for the formulation of an order."

Here, the Division of Enforcement's orders are decisions made in an adjudication that did not require "determin[ations] on the record after notice and an opportunity for hearing." 17 C.F.R. § 201.411(b)(1)(iii). In fact, the absence of notice and an opportunity for a hearing was a key flaw in the orders to the extent they disqualified DiversyFund's offerings.

Accordingly, if the Division's orders had been entered as the initial decision of a hearing officer, then they would be subject to mandatory review under Section 201.411(b)(1). Thus, they are subject to mandatory review under the plain text of Section 201.431(b)(1).

#### B.    Discretionary Review

Even if this tribunal determines review is not mandatory, discretionary review is warranted. In determining whether to grant discretionary review, the Commission considers, among other things, whether a decision involves: (1) "a prejudicial error … in the conduct of the proceeding";

11

(2) an erroneous conclusion of law; or (3) "[a]n exercise of discretion or decision of law or policy that is important and that the Commission should review." 17 C.F.R. § 201.411(b)(2).

Here, the conduct of the Division of Enforcement's proceedings and orders below caused prejudicial error—namely, a *de facto* order disqualifying DiversyFund's offering from Regulation A without any notice or opportunity to be heard, with profound consequences for DiversyFund and its 30,000 individual investors.

As explained below, the Division of Enforcement's disqualification orders are also legally erroneous because the orders deprive DiversyFund of liberty and property interests without due process, rest on an unconstitutional interpretation of the Commission's disqualification rules, fail to consider reliance interests, and violate the Appointments Clause.

Review is otherwise warranted because the Division of Enforcement's application of the disqualification provisions in Regulation A (Rule 262(a)(7)) appears to be unprecedented and would present grave constitutional, statutory, and policy concerns, and would impose immediate and irreparable harm on DiversyFund and its investors. Furthermore, should the Division of Enforcement's interpretation of Rule 262(a)(7) be accepted, countless others would be equally deprived of their constitutional right to due process in the future.

## IV.    ARGUMENT

### A.    The Division's Orders Deprive DiversyFund of Its Right to Use Regulation A, in Violation of the Fifth Amendment's Due Process Clause

17 C.F.R. § 230.262(a) lists "Disqualification events," virtually all of which require a formal conviction or determination of wrongdoing by a court or regulatory agency after notice and an opportunity to be heard.

BN 48620863v6

As relevant here, Section 230.262(a)(7) provides for disqualification if an issuer (or other covered person) is "the subject of an investigation or proceeding to determine whether a stop order or suspension order should be issued." Enforcement Staff erroneously takes the position that 17 C.F.R. § 230.262(a)(7) *automatically* disqualifies DiversyFund, indefinitely, and *without any finding of wrongdoing or opportunity to be heard*, simply because the Division of Enforcement has initiated an investigation and is supposedly *considering* whether to initiate temporary suspension proceedings.

The Enforcement Staff rely on an amendment to Section 230.262(a)(7) that was described by the Commission in requests for public comment as merely harmonizing the reference times for bad actor provisions across different regulations. Nowhere in the public comment on the proposed amendments is there any mention of a new power to terminate previously granted Regulation A exemptions on mere suspicion, without due process. Nowhere does the statutory basis for bad actor provisions authorize deprivation of registration exemptions without notice and an opportunity to be heard.

DiversyFund is unaware of any entity or individual who has ever been similarly disqualified under Section 230.262(a)(7) and, to the extent the Commission adopts that interpretation of Section 230.262(a)(7), the regulation is unconstitutional and arbitrary and capricious because it permits disqualification without any finding of wrongdoing or any procedural safeguards for affected parties.

A procedural due process claim requires a party to show that: (1) government action infringes on a liberty or property interest; and (2) the "procedures attendant upon that deprivation" were insufficient. *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009). It is "well-established"

that "mandatory language" in statutes lead to "state-created liberty interests." *Carver v. Lehman*, 558 F.3d 869, 873 (9th Cir. 2009).

Similarly, a business has a property interest in a discretionary exemption upon which it relies "in framing the scope and nature of its operation." *Alaska Airlines, Inc. v. Civilian Aeronautics Board*, 545 F.2d 194, 199–200 (D.C. Cir. 1976). "The Supreme Court has repeatedly recognized the severity of depriving someone of his or her livelihood," and "the interim period between erroneous deprivation . . . and reinstatement can be financially devastating." *Spinelli v. City of New York*, 579 F.3d 160, 171 (2d Cir. 2009).

Here, Congress provided that the Commission "shall" create an exemption from registration requirements for small issuers like DiversyFund. 15 U.S.C. § 77c(b)(2). Regulation A implements that directive, and Regulation A itself uses mandatory language: An issuer selling securities "pursuant to Regulation A shall be exempt under section 3(b) from the registration requirements of the Securities Act of 1933 . . . [if the issuer] is not disqualified under Rule 262." 17 C.F.R. § 230.251. Put differently, this mandatory language guarantees an exemption unless 17 C.F.R. § 230.262 says otherwise.

Moreover, the Commission qualified REIT II for the Regulation A exemption in January 2021, giving DiversyFund the practical equivalent of a license to use Regulation A for up to three years. The Division's orders take away DiversyFund's right to use the Regulation A exemption without any procedural protections. The "interim period" in which the Commission's investigation proceeds could "take months or years" and will have a "financially devastating" impact on DiversyFund. *Spinelli, supra,* 579 F.3d at 171.

Where, as here, an agency infringes on a regulated party's protected liberty and property interests, "[a]n essential principle of due process is that a deprivation of life, liberty, or property

14

be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985). Yet the Division of Enforcement purported to disqualify DiversyFund with no prior notice and no meaningful opportunity for a hearing on the question.

Although the Commission's rules allow DiversyFund to seek a waiver, the waiver process is insufficient to satisfy the bare minimums of due process for at least three reasons. First, DiversyFund lacks sufficient information about the Division of Enforcement's reasons for the disqualification (beyond the bare fact of an investigation and rudimentary details about information the Division of Enforcement will seek). Second, the Commission's waiver procedures occur after the purported disqualification has already occurred. Third, the waiver provisions do not provide for a hearing before a neutral adjudicator with an opportunity to present evidence and challenge the Division of Enforcement's evidence (to the extent any exists).[18]

Nor does the Division of Enforcement lack options to seek temporary relief to protect investors while providing DiversyFund with procedural protections. The Division of Enforcement could have sought a temporary cease-and-desist order under 15 U.S.C. § 77h-1(c) or a suspension order under 17 C.F.R. § 230.258. Either procedural path would have provided DiversyFund at least with notice, a prompt post-deprivation hearing before a neutral decision maker, and an orderly process for Commission and judicial review based on a complete record.

17 C.F.R. § 230.258(a) authorizes the Commission to "enter an order temporarily suspending a Regulation A exemption if the Commission has reason to believe that . . . any

---

[18] Because DiversyFund was never given a hearing or opportunity to present evidence, it is filing a Motion for the Submission of Additional Evidence, pursuant to 17 C.F.R. § 201.452, concurrently herewith, to provide evidence demonstrating the severe harm that disqualification imposes on DiversyFund and its investors.

proceeding has been initiated for the purposes of Rule 262(a)(3)-(8) (§ 230.262(a)(3) through (8))." 17 C.F.R. § 230.258. However, "[u]pon the entry of an order under [Section 230.258(a)], the Commission will promptly give notice to the issuer, any underwriter, and any selling securityholder: (1) That such order has been entered, together with a brief statement of the reasons for the entry of the order; and (2) That the Commission, upon receipt of a written request within 30 calendar days after the entry of the order, will, within 20 calendar days after receiving the request, order a hearing at a place to be designated by the Commission." 17 C.F.R. § 230.258(b).

According to the Commission's own explanation in the Federal Register Volume 86, Issue 9, published January 14, 2021, "[u]nder Regulation A, if a covered person triggers one of the disqualifying events in Rule 262, *the Commission may suspend reliance on the Regulation A exemption through 17 CFR 230.258 ("Rule 258")*, which requires a notice and hearing opportunity for the issuer prior to the suspension becoming permanent." (Facilitating Capital Formation and Expanding Investment Opportunities by Improving Access to Capital in Private Markets, 86 Fed. Reg. 3496 at 3549.) (emphasis added).

The Division of Enforcement now seeks to circumvent its obligation to provide DiversyFund with notice and a statement of reasons for its purported decision to disqualify DiversyFund, and has not provided DiversyFund with the opportunity to be heard. In fact, the attempt to impose disqualification-by-investigation, without any representation that temporary cease-and-desist or suspension proceedings are imminent, is contrary to, and may encourage attempts to evade, the procedural protections in Section 77h-1(c)–(d) and 17 C.F.R. § 230.258.

16

**B.** **The Division's Orders Are Arbitrary and Capricious Because it Did Not Consider DiversyFund's Reliance on Regulation A or the Harm to Investors**

As a general matter, before an agency acts it must, among other things, consider whether its decision impacts "reliance interests, determine whether they [are] significant, and weigh any such interests against competing policy concerns." *DHS v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020).

Here, DiversyFund has operated for years in reliance on the Regulation A exemption and crafted a business model that depends on the availability of the exemption to access capital markets. The company's growth model in real estate markets requires considerable and consistent capital over time. Heavy value-add assets like those in the DiversyFund portfolio do not generate positive cash flow until after the construction improvements are completed. However, once improved, the properties benefit from greater market appreciation and increased gains upon disposition.

Thus, ongoing access to capital markets is critical as it provides DiversyFund with the funds necessary to meet current and future obligations, and deploy capital effective to produce profits. Indeed, this was one of the first risk factors identified in REIT II's Offering Circular. (See Form I-A, Regulation A Offering Statement, Part II-Offering Circular, Amendment No. 1, DF Growth REIT II, LLC (effective January 19, 2021).)

When making its determination to disqualify DiversyFund, the Division of Enforcement gave no consideration to DiversyFund's reliance on access to capital markets, nor did the Division of Enforcement consider the harm to 30,000 individual investors that will result from such an arbitrary and capricious order. Consider the following:

- DiversyFund will suffer irreparable damage to its reputation. Rule 262(a)(7) and Rule 506(d) are not referred to as the "bad actor rules" for nothing. Even if, as we strongly suspect, the Division of Enforcement's current investigation reveals no wrongdoing whatsoever, the public will hear that the Regulation A offering of REIT II was suspended because DiversyFund and its principals are "bad actors." They will never be able to remove that stench.

- There are over 30,000 investors in DiversyFund. If the disqualification is sustained, they will suffer irreparable economic damage, including a loss of millions of dollars, as a direct and unavoidable consequence of the damage to DiversyFund's reputation and ability to access capital markets.

- Once labeled "bad actors," DiversyFund will never again enjoy the same access to the capital markets they enjoy today. You cannot put that genie back in the bottle.

- As the dominoes continue to fall, if REIT II and the other issuers are denied access to the capital markets, it will increase their borrowing costs, which will have an immediate and irreversible impact on investors.

- Capital raised by REIT II and other issuers is used, in part, to pay for the physical renovations that are central to the company's "value add" investment strategy. If the reputation of the company is impaired by a "bad actor" suspension, investors might never obtain the benefits intended.

- The company engages approximately 30 people whose salaries are funded by the fees earned when the REITs acquire assets by deploying new capital. If the company's ability to raise capital is interrupted by disqualification pending a long investigation, many of

BN 48620863v6

those employees will lose their jobs. It will be of no benefit to them, the company, or investors when the investigation reveals no wrongdoing months later.

The Division of Enforcement did not consider or give any weight to any of these concerns when it purported to disqualify DiversyFund's offerings from Regulation A without any finding of wrongdoing. The "bad actor" provisions of Section 230.262 were designed to limit the harm that demonstrated bad actors, such as convicted felons, can cause to investors. In this case, there are no demonstrated bad actors. Rather, the Division of Enforcement has prematurely labeled DiversyFund as a "bad actor" based upon nothing more than mere suspicion and without any consideration of the impact of its decision on the reliance interests of DiversyFund or its investors.

To the extent the Division of Enforcement relies on a purported risk of harm to *future* investors as a basis for the purported disqualification under Section 230.262(a)(7), the argument is purely speculative and carries no weight when compared to the *actual* harm that *current* investors will suffer. And, as explained above, the Division has multiple tools to prevent future harm without depriving issuers and their existing investors of basic procedural protections.

The arbitrary and capricious nature of the Division of Enforcement's order is further illustrated by fact that the Division of Enforcement previously investigated DiversyFund—also supervised by Ms. Levin—in which no wrongdoing was found and the investigation was closed on January 14, 2020, within a matter of months of being commenced. No such order of disqualification was issued during the previous investigation. Since then, nothing about DiversyFund's business model, operations, or management has changed. The Division of Enforcement provides no explanation or evidence to support its novel application of Section 230.262(a)(7) to disqualify DiversyFund pending the current investigation.

BN 48620863v6

**C.** **The Division's Disqualification Order is Unlawful Under the Appointments Clause of the U.S. Constitution**

Any disqualification of DiversyFund's Regulation A exemption under the Division of Enforcement's "interpretation" of Section 230.262(a)(7) would also violate the Appointments Clause of the U.S. Constitution, because Ms. Levin—the apparent decision maker here—does not appear to have been appointed by the President, a court, or the Commission. *See Lucia v. SEC*, 138 S. Ct. 2044, 2055-56 (2018).

The Appointments Clause of the United States Constitution empowers the President to nominate, and upon the advice and consent of the Senate, appoint "ambassadors, other public ministers and consuls, judges of the Supreme Court, and all other officers of the United States . . . ." U.S. Const. art. II, § 2, cl. 2. With respect to "inferior officers," Congress may vest the appointment in the President alone, in the courts of law, or in the heads of departments. U.S. Const. art. II, § 2, cl. 2.

In *Lucia v. SEC, supra,* the Supreme Court held that the Securities and Exchange Commission's Administrative Law Judges ("ALJs") are "inferior officers" because they hold continuing positions, exercise significant discretion, and hold the power to receive evidence, order and take depositions, administer oaths, shape the administrative record, and issue orders that become the action of the Commission without the Commission's review. *Lucia, supra,* 138 S. Ct. at 2053-54.

Here, Ms. Levin has all of these same powers. She has a continuing position as an Assistant Regional Director of Enforcement. She was "designated" as an "officer[] of the Commission" and has been "empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of [documents], and to perform all other

duties in connection therewith as prescribed by law." November 8 Order at 3. Furthermore, on November 29, 2021, Ms. Levin purported to disqualify DiversyFund's Regulation A exemption, stating:

> [W]e are investigating, among other things, to determine whether to seek a Regulation A suspension order with respect to DF Growth REIT and DF Growth REIT II. This means that, under the disqualification provisions of Rule 262 of Regulation A (17 C.F.R. Section 230.262) the two issuers, and related entities and persons as set forth in the rule, are considered bad actors pending our investigation. See Rule 262(a)(7). As a result, Regulation A is not available to DF Growth REIT and DF Growth REIT II, and offers and sales by both issuers must stop.

In her December 8, 2021 correspondence, responding to DiversyFund's Notice of Intent to Petition, Ms. Levin denies having issued "any sort of order . . . pursuant to delegated authority (or otherwise)." According to Ms. Levin, her November 29, 2021 directive was "not an order issued by the Division of Enforcement or the Commission" but instead, was simply "designed to notify" DiversyFund of the investigation and "ensure that [DiversyFund] were aware of the staff's interpretation of Rule 262(a)(7) in determining what steps, if any, should be taken in response to the pending investigation."

However, Ms. Levin's attempted downplaying of the imposition on DiversyFund does not reconcile with her unequivocal mandate that "offers and sales by [REIT I and REIT II] must stop" because petitioners are considered "bad actors" under Section 230.262(a)(7). If anything, it highlights the precarious position she created for DiversyFund by failing to provide any notice or hearing either before or after she decided to consider seeking a suspension order and then purported to disqualify DiversyFund on that basis. The haphazard nature of the Division's disqualification decision underscores the importance of respecting fundamental procedural protections and ensuring that decisions like these are made by officials who are appointed in compliance with the Constitution.

As noted, 17 C.F.R. § 230.258(a) authorizes the *Commission* to "enter an order temporarily suspending a Regulation A exemption if the *Commission* has reason to believe that . . . any proceeding has been initiated for the purposes of Rule 262(a)(3)-(8) (§ 230.262(a)(3) through (8)." 17 C.F.R. § 230.258 (emphasis added). Thus, under the Division of Enforcement's interpretation of Section 230.262(a)(7), Ms. Levin has discretion to make and announce investigation decisions for the Commission that have the necessary and known consequence of disqualifying issuers, such as DiversyFund, from using Regulation A. For all practical purposes, Ms. Levin is exercising the authority to issue temporary suspension or stop orders that normally must be issued by an ALJ, a court, or the Commission.

Pursuant to the Appointments Clause, powers such as these may only be vested in officers that are appointed by the President, a court, or a "Head[] of Department." Art. II, § 2, cl.2. Here, Ms. Levin received the ostensible authority to disqualify DiversyFund from Regulation A from the Division of Enforcement. *See* November 8 Order at 3 n.1. Accordingly, DiversyFund's purported disqualification is unlawful under the Appointments Clause.

## V. THE COMMISSION SHOULD LEAVE THE AUTOMATIC STAY IN PLACE WHILE IT CONSIDERS THIS PETITION FOR REVIEW

The Division of Enforcement's orders, including DiversyFund's purported disqualification, were automatically stayed by DiversyFund's December 6, 2021 Notice of Intent to Petition for Review. *See* 17 C.F.R. § 201.431(e). Section 201.431(d) provides that when the Commission grants review and sets a briefing schedule it must also "state whether a stay shall be granted, if none is in effect, or shall be continued, if in effect pursuant to paragraph (e)."

Here, the Commission should leave the stay in place if it grants this Petition for Review.

22

As detailed above, disqualification would impose immediate and irreparable harm on DiversyFund and its investors.

In contrast, the Division of Enforcement has made no attempt at showing that an immediate disqualification is necessary—if the Division thought otherwise, it would have followed the appropriate procedural path and sought a cease-and-desist order under 15 U.S.C. § 77h-1(c) or a temporary suspension order under 17 C.F.R. § 230.258.

For the same reasons, if the Commission denies this Petition for Review it should stay the effectiveness of the Division of Enforcement's orders for 30 days to allow DiversyFund the opportunity to seek judicial review.

## VI. CONCLUSION

The Commission should grant this Petition for Review and modify the Division of Enforcement's orders to make clear that the Division's investigation does not disqualify DiversyFund's offerings from Regulation A. To the extent required and permitted under the Commission's Rules of Practice, Rule 451, DiversyFund hereby requests an oral argument before the Commission on this matter. If the Commission denies this Petition for Review, it should stay the effectiveness of the Division's orders for 30 days to allow for judicial review.

Respectfully submitted,

Sanjay Bhandari
BUCHALTER APC
655 West Broadway, Suite 1600
San Diego, CA 92101-8494
(619) 219-5335

*Counsel for Petitioners*

Date: December 13, 2021

23

BN 48620863v6

## CERTIFICATE OF SERVICE

I, Chandra Roam, counsel for DiversyFund, Inc., DF Growth REIT, LLC, DF Growth

REIT II, LLC, DF Manager, LLC, Craig Cecilio and Alan Lewis (collectively "DiversyFund"),

hereby certify that, on December 13, 2021, I electronically filed a copy of:

**PETITION FOR REVIEW OF ORDER OF INVESTIGATION AND ORDER COMMANDING DIVERSYFUND TO STOP OFFERING OR SELLING SECURITIES PREVIOUSLY OFFERED PURSUANT TO REGULATION A EXEMPTION**

via the SEC's eFAP system.

Additionally, I hereby certify that, on December 13, 2021, I served a copy of the above-

listed document via email at the email addresses indicated below:

Will Rosenthal
*Counsel, Division of Enforcement*
Securities and Exchange Commission, Los Angeles Regional Office
444 South Flower Street, Suite 900, Los Angeles, CA 90071
Phone: (323) 965-4518
Email: rosenthalw@sec.gov

Victoria Levin
*Assistant Regional Director, Division of Enforcement*
Securities and Exchange Commission, Los Angeles Regional Office
444 South Flower Street, Suite 900, Los Angeles, CA 90071
Phone: (323) 965-3872
Email: levinv@sec.gov

DATED: December 13, 2021

_____
Chandra Roam

D6659.0002 BN 48611059v2

58

12/13/21, 7:52 PM                                                                 Filing Confirmation



**U.S. Securities and
Exchange Commission**

## Filing Confirmation

Your Filing ID is 3328.

Use this ID when making any inquires about this filing.

### Filing Details

| | | | | |
|---|---|---|---|---|
| AP File No. | N/A | Filer | Bhandari, Sanjay | ID  3328 |
| Case Name | N/A | On Behalf of | DiversyFund, Inc., DF Growth REIT, LLC, DF Growth REIT II, LLC, DF Manager, LLC, Craig Cecilio and Alan Lewis | |
| Date Submitted | 12/13/2021 | | | |
| Description | Petition for Review and Certificate of Service, Motion for the Submission of Additional Evidence and Certificate of Service, and Declaration of Alan Lewis in Support of DiversyFund's Motion for the Submission of Additional Evidence and Certificate of Service. | | | |

### Successfully Uploaded Files

| AP File No. | Date Submitted | File Name | Title/Description | Document Type | Under Seal |
|---|---|---|---|---|---|
| N/A | 12/13/2021 | 2021-12-13_DiversyFund_Declaration of Alan Lewis in Support of Motion for the Submission of Additional Evidence.pdf | Other - Declaration of Alan Lewis in Support of DiversyFund's Motion for the Submission of Additional Evidence and Certificate of Service | Filing | No |
| N/A | 12/13/2021 | 2021-12-13_DiversyFund_Motion for the Submission of Additional Evidence.pdf | Other - Motion for the Submission of Additional Evidence and Certificate of Service | Filing | No |
| N/A | 12/13/2021 | 2021-12-13_DiversyFund_Petition for Review of Orders.pdf | Other - Petition for Review and Certificate of Service | Filing | No |

NOTICE REGARDING SERVICE: The filing of a document through the eFAP system does not constitute service of this filing on any other party. You are responsible for serving this filing in accordance with Rule 150 of the Commission's Rules of Practice.

# EXHIBIT 3

# Buchalter

655 West Broadway, Suite 1600
San Diego, CA 92101
619.219.5335 Phone

December 7, 2021

619.219.5376 Direct
sbhandari@buchalter.com

## FOIA CONFIDENTIAL TREATMENT REQUESTED

**VIA FAX (202.772.9207)**
**VIA U.S. MAIL**

Sebastian Gomez Abero
Chief, Office of Small Business Policy, Division
of Corporation Finance
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-3628

Re:  **In the Matter of DiversyFund, Inc. (LA-5266)**
      **Request for Expedited Waiver of Any Disqualification Under Rule 262(a)(7)**
      **of Regulation A**

Dear Mr. Gomez Abero:

This letter requests an expedited waiver (by December 17, 2021) of any disqualification that may arise under Rule 262(a)(7) of Regulation A (17 C.F.R. § 230.262(a)(7)) until procedural due process (including notice and a meaningful opportunity to be heard) has been afforded to the Waiver Applicants identified below.

No wrongdoing by Waiver Applicants has been alleged, much less established: the Commission's investigation of Waiver Applicants is just beginning. Indeed, as of the Alleged Disqualification Event described herein, the Staff were not prepared to provide counsel a subpoena or even a list of topics to address. Respectfully, disqualification of individuals and entities as "bad actors" must follow thorough fact-finding and provide for basic due process. Moreover, a waiver is warranted because of the imminent and irreparable harm that disqualification will impose on

buchalter.com

Los Angeles
Napa Valley
Orange County
Portland
Sacramento
Salt Lake City
San Diego
San Francisco
Scottsdale
Seattle

Confidential Treatment Requested by Diversyfund
DF-CORR-000001
BN 48539781v1

# Buchalter

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

Sebastian Gomez Abero
December 7, 2021
Page 2

Waiver Applicants and their investors. For the reasons set forth below, Waiver Applicants ask that the Commission grant an immediate written waiver against the Alleged Disqualification Event claimed by the Staff of the Enforcement Division.

## Waiver Applicants

Waiver Applicants consist of the **bolded** entities and individuals described below, all of whom are affected by the Alleged Disqualification Event described below.

**DF Growth REIT LLC ("REIT I")** is a Delaware limited liability company that offered and sold securities through November 13, 2021 under Regulation A in an offering qualified by the Commission on November 18, 2018.

**DF Growth REIT II, LLC ("REIT II")** is a Delaware limited liability company that is offering and selling securities under Regulation A in an offering qualified by the Commission on January 29, 2021.

The purpose of REIT I and REIT II is to invest in real estate projects and assets across the United States, focusing primarily on multifamily value-add properties. As of REIT I's last Form 1-SA filing, for the period ended June 30, 2021, REIT I had raised $54,670,218, and invested $35,172,294 in ten projects, seven of which are multifamily properties. REIT I includes approximately 25,828 individual investors. REIT II includes approximately 3,712 individual investors.

**DF Manager LLC**, a Delaware limited liability company, is the manager of REIT I and REIT II.

**DiversyFund, Inc.**, a Delaware corporation, is the sponsor of REIT I and REIT II, and owns 100% of DF Manager. DiversyFund has sponsored or managed approximately eight issuers ("**Reg D Issuers**") raising capital under 17 CFR §230.506.

**Craig Cecilio** and **Alan Lewis** are Chief Executive Officer and Chief Financial Officer/Chief Investment Officer, respectively, of REIT I and II, and are also officers in DiversyFund and DF Manager. DiversyFund has approximately 250 other passive investor shareholders.

Confidential Treatment Requested by Diversyfund
DF-CORR-000002
BN 48539781v1

# Buchalter

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

Sebastian Gomez Abero
December 7, 2021
Page 3

Under 17 C.F.R. § 230.506(d)(1)(vii), a disqualification under 17 C.F.R. § 230.262(a)(7) automatically results in disqualification under 17 C.F.R. § 230.506. Consequently, the current disqualification affects REIT I, REIT II, DF Manager, DiversyFund, Mr. Lewis, Mr. Cecilio, all the Reg D Issuers, and any other affiliated issuer.

### Alleged Disqualification Event

Waiver Applicants are not subject to disqualification for any conviction, decree, expulsion, judgment, order, or suspension. *Compare* Rule 262(a)(1)-(8). Rather, Waiver Applicants have been directed to stop selling securities as a result of an alleged disqualification by suspicion.

Specifically, on November 29, 2021, by email, a Staff member of the Division of Enforcement directed Waiver Applicants to stop offering or selling securities (previously authorized by the Commission), because one or more members of the Staff had decided to investigate to determine whether to seek a suspension order.

The first contact from the Commission to Waiver Applicants occurred on November 18, 2021, at 10:28 a.m., when Victoria A. Levin (Assistant Regional Director, Enforcement, Los Angeles Regional Office) contacted me by email to ask whether I represented DiversyFund. *See* Attachment 1. At 3:16 p.m., I confirmed that I did and offered to speak the next day. Ms. Levin informed me that she would be out that day and through November 28, and offered to speak on November 29. I agreed, and we set 2:00 p.m. for our call. *Id.*

On November 29, 2021 at 2:00 p.m., after informing me that she did not have a subpoena ready to send to DiversyFund, Ms. Levin told me that under Rule 262(a)(7), because she and/or others had decided to investigate whether to seek a stop or suspension order, REIT I and REIT II must stop offering or selling securities. I asked Ms. Levin to put that in writing, and she did, stating as follows in the email attached as Attachment 2 hereto:

> Thank you for speaking with us this afternoon. Per our call, this email confirms that in our DiversyFund (LA-5266) matter, we are investigating, among other things, to determine whether to seek a Regulation A suspension order with respect to DF Growth REIT and DF Growth REIT II. This means that, under the disqualification provisions of Rule 262 of Regulation A (17 C.F.R. Section 230.262) the two issuers, and related entities and persons as set forth in the rule, are considered bad actors pending our investigation. See Rule 262(a)(7). *As a result,*

Confidential Treatment Requested by Diversyfund
DF-CORR-000003
BN 48539781v1

# Buchalter

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

Sebastian Gomez Abero
December 7, 2021
Page 4

> *Regulation A is not available to DF Growth REIT and DF Growth REIT II and offers and sales by both issuers must stop.* (Attachment 2 (emphasis added).)

Waiver Applicants were provided no evidence supporting any suspicion against them, and no opportunity to confront or rebut such evidence. Despite repeated requests from Waiver Applicants' counsel from November 29 forward, the Staff were not prepared to provide a list of topics to address, and still have not done so. The first Subpoena to Waiver Applicants was issued was emailed by the Staff after close of business on December 2, 2021.

Waiver Applicants obtained a copy of the Formal Order of Investigation (LA-5266). Nowhere in the Formal Order is there any mention of the Commission having formally authorized the Staff to investigate whether to seek a Regulation A suspension order, or to disqualify Waiver Applicants during the course of such an investigation. Rather, the decision to so characterize the investigation in order to order a halt to the offer or sale of securities under Rule 262(a)(7) (the "Alleged Disqualification Event") appears to have been the decision of one or more Staff members of the Division of Enforcement.

On December 7, 2021 Waiver Applicants notified the Commission of their intention to file a petition for review of the Formal Order and Ms. Levin's order to halt the offer of sale of securities under Rule 262(a)(7), which automatically stayed both orders pending further action by the Commission.

### Grounds for Waiver

The Commission may waive exemption disqualifications upon a showing of good cause that it is not necessary under the circumstances that exemption be denied. *See* 17 C.F.R. §§ 230.262(b)(2) and 230.506(d)(2)(ii). The Commission has delegated authority to grant waivers to the Division of Corporation Finance. The Division has stated that it considers the following factors, none of which it considers dispositive: (i) the nature of the violation and whether it involved the offer or sale of securities, (ii) whether the conduct involved a criminal conviction or scienter-based violation, (iii) who was responsible for the misconduct, (iv) the duration of the misconduct, (v) remedial steps taken and to be taken, and (vi) the impact if waiver is denied. SEC Division of Corporation Finance, *Waivers of Disqualification Under Regulation A and Rules 505 and 506 of Regulation D* (Mar. 13, 2015). In the related context of waivers of the Rule 506 disqualification provisions, the Commission has indicated that the "absence of notice and opportunity for hearing" would be an important factor in determining whether a waiver is warranted. 78 Fed. Reg. 44,730, 44,748 (July 24, 2013).

Confidential Treatment Requested by Diversyfund
DF-CORR-000004
BN 48539781v1

# Buchalter

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

Sebastian Gomez Abero
December 7, 2021
Page 5

These grounds themselves demonstrate why waiver should be granted. The Alleged Disqualification Event involves no finding of a violation, much less one that involved scienter, key individuals, or long duration. No remedial steps can be taken because no violation has been identified. As of the Alleged Disqualification Event, the Staff was not even prepared to issue a subpoena, much less a finding. The Commission has not provided basic due process—e.g., notice and an opportunity to be heard—to Waiver Applicants. Instead, the record supplies much reason to be skeptical that any disqualification is necessary under the current circumstances. The Waiver Applicants have never before sought or needed a Regulation A or Regulation D waiver from the Commission. Both REIT I and REIT II are fully current in their respective reporting obligations: they have filed all annual reports, all semiannual reports, and numerous Form 1-Us and Supplements where appropriate. Their business practices, including all fees, are fully disclosed in their Offering Circulars and other reports. They have regularly filed independently audited financial statements. Enforcement staff have not sought a temporary cease-and-desist order under 15 U.S.C. § 77h-1(c) or sought a suspension order under 17 C.F.R. § 230.258. In fact, the attempt to impose disqualification-by-investigation, without any representation that temporary cease-and-desist or suspension proceedings are imminent, is contrary to, and may encourage attempts to evade, the procedural protections in Section 77h-1(c)–(d) and 17 C.F.R. § 230.258, both of which entitle Waiver Applicants to notice, a hearing, and an opportunity for Commission and judicial review.

Further, in a prior investigation supervised by the very same Staff member (Ms. Levin) as the present investigation, Waiver Applicants cooperated fully, explained all questions to the Staff's satisfaction, and received a letter from the Staff closing its investigation, within a few months of the investigation's commencement. *See* Attachment 3.

Waiver Applicants suspect that the Staff have been presented false and misleading information by one or more disgruntled individuals, who likely have a financial interest (including perhaps under the Commission's whistleblower procedures) in causing the Staff to commence an investigation against Waiver Applicants. While it is appropriate for the Staff to ask questions even on such biased information, it is not appropriate for the Staff to terminate a duly issued exemption before affording Waiver Applicants the minimum process required by the U.S. Constitution and basic principles of administrative law.

Both the statute and the Commission's regulations provide that the Commission must make the exemption available to Waiver Applicants and other small issuers. Accordingly, the Alleged Disqualification Event—that is, the Commission's investigation order combined with enforcement Staff's position that the investigation triggers the bad-actor provisions because staff is determining

Confidential Treatment Requested by Diversyfund
DF-CORR-000005
BN 48539781v1

# Buchalter

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

Sebastian Gomez Abero
December 7, 2021
Page 6

whether to seek a suspension order—deprives Waiver Applicants of protected liberty and property interests without any process at all, much less the minimum process required by Congress, the Commission, and the Due Process Clause.

The potential for significant and irreparable harm to Waiver Applicants and tens of thousands of investors is manifest. One of the first risk factors in REIT II's Offering Circular states as follows:

> **OUR AUDITOR HAS RAISED QUESTIONS ABOUT OUR ABILITY TO SURVIVE AS A GOING CONCERN:** In the audited financial statements attached to this Offering Circular, our auditor has noted that the Company has not yet commenced planned principal operations and has not generated revenues or profits since inception, and that these factors, among others, raise substantial doubt about the Company's ability to continue as a "going concern." As further noted by our auditor, *the Company's ability to continue as a going concern in the next twelve months is dependent upon its ability to obtain capital financing from investors sufficient to meet current and future obligations, and to deploy that capital effective to produce profits.* No assurance can be given that the Company will be successful in these efforts. (Form I-A, Regulation A Offering Statement, Part II-Offering Circular, Amendment No. 1, DF Growth REIT II, LLC (effective January 19, 2021) (emphasis added).)

If the Enforcement Staff blocks REIT II from raising capital under Regulation A, which was the only means of raising capital identified in the Company's disclosures, then the Enforcement Staff has predictably and inevitably assured that REIT II will fail. Because REIT II investors are co-investors with REIT I investors in many projects that continue to require capital investment, the sudden stop of REIT II capital will cause harm to investors in both REITs. For example, a joint investment by both REITs in Texas requires REIT II to be able to raise several million dollars before the end of January 2022 (fully expected before the Staff's action), failing which investors in both REITs will likely suffer a loss of nearly $1 million. Thus, the Staff's invocation of Rule 262(a)(7) on the basis of preliminary suspicion for the duration of a complex financial investigation will very likely cause significant and irreparable harm to both REITs and their approximately 30,000 individual investors. In short order, a lack of capital for the investments required for a capital-intensive business will cause that business to fail.

Further, Waiver Applicants will be damaged in many other ways in the absence of a waiver, including the following:

Confidential Treatment Requested by Diversyfund
DF-CORR-000006
BN 48539781v1

# Buchalter

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

Sebastian Gomez Abero
December 7, 2021
Page 7

- The company will suffer irreparable damage to its reputation. Rule 262(a)(7) and Rule 506(d) are not referred to as the "bad actor rules" for nothing. Even if, as we strongly suspect, the Commission's current investigation reveals no wrongdoing whatsoever, the public will hear that the Regulation A offering of REIT II was suspended because DiversyFund and its principals are "bad actors." They will never be able to remove that stench.

- There are approximately 250 investors in DiversyFund. If the disqualification is not waived in short order they are going to suffer irreparable economic damage, as a direct and unavoidable consequence of the damage to DiversyFund's reputation.

- Once labeled "bad actors," REIT II, DiversyFund, the Reg D Issuers, and all their affiliates will never again enjoy the same access to the capital markets they enjoy today. You cannot put that genie back in the bottle.

- As the dominoes continue to fall, if REIT II and the other issuers are denied access to the capital markets, it will increase their borrowing costs, which will have an immediate and irreversible impact on investors.

- Capital raised by REIT II and other issuers is used, in part, to pay for the physical renovations that are central to the company's "value add" investment strategy. If the reputation of the company is impaired by a "bad actor" suspension, investors might never obtain the benefits intended.

- The company engages approximately 30 people whose salaries are funded by the fees earned when the REITs acquire assets by deploying new capital. If the company's cash flow is interrupted by a capital raising interruption caused by disqualification pending a long investigation, many of those employees will lose their jobs. It will be of no benefit to them, the company, or investors when the investigation reveals no wrongdoing months later.

Without the ability to rely on Regulation A and Regulation D, Waiver Applicants will be unable to raise sufficient capital to continue operations across many operations and affiliates, likely resulting in the loss of jobs to employees, loss of millions of dollars to approximately 30,000 investors.

Confidential Treatment Requested by Diversyfund
DF-CORR-000007
BN 48539781v1

# Buchalter

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

Sebastian Gomez Abero
December 7, 2021
Page 8

Moreover, Waiver Applicants have operated for years in reliance on the Regulation A exemption and crafted a business model that depends on the availability of the exemption. Enforcement Staff appear not to have considered these obvious reliance interests or the consequences to Waiver Applicants, their employees, or their investors. The Alleged Disqualification Event is therefore arbitrary and capricious.

For this harm to flow from a decision that could be made by a single Staff member of the Enforcement Division, before a single finding of fact by a neutral arbiter, before a single allegation is leveled by the Commission, and before a single subpoena is even issued to the Waiver Applicants, is clearly "not necessary under the circumstances" within the meaning of Rule 262(b)(2) and Rule 506(d)(2)(ii). A waiver should be granted pending a full investigation, formal accusation, evidence from both sides, and findings of fact by a neutral and duly authorized trier of fact.

Waiver Applicants are unaware of any entity or individual who has ever been similarly disqualified under Rule 262(a)(7). The Enforcement Staff appear to be relying upon an amendment to Rule 262(a)(7) that was described by the Commission in requests for public comment as merely harmonizing the reference times for bad actor provisions across different regulations. Nowhere in the public comment on the proposed amendments is there any mention of a new power to terminate previously granted Regulation A exemptions on mere suspicion, without due process. Nowhere does the statutory basis for bad actor provisions authorize deprivation of registration exemptions without notice and an opportunity to be heard. To the contrary, Congress specifically provided a procedure for temporary cease-and-desist orders and the Commission's rules allow the Commission to seek temporary suspension of an exemption, which gives the Commission a way to take any steps necessary to protect the public from alleged violations while providing issuers who rely on Regulation A with basic due process.

### Conclusion

The "bad actor" provisions of the Securities Act of 1933 were designed to limit the harm that demonstrated bad actors, such as convicted felons, can cause to investors. In this case, there are no demonstrated bad actors, and the threat to investors comes not from any bad actor but from the premature invocation of "bad actor" disqualification before any bad actors have been found.

Waiver Applicants respectfully submit that the power to designate an individual or entity as a bad actor cannot lawfully be vested in the Enforcement Staff acting on the basis of suspicion, without any apparent exigency (note the Staff's 11-day delay between their November 18 first

# Buchalter

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

Sebastian Gomez Abero
December 7, 2021
Page 9

contact and the November 29 Alleged Disqualification Event), without proper investigation, and without notice and an opportunity to be heard having been afforded the Waiver Applicants.

While maintaining their objection to the lawfulness of the Enforcement Staff's action, Waiver Applicants ask that the Division of Corporation Finance clarify that it waives any disqualification arising from Rule 262(a)(7) until such time as Waiver Applicants have been provided procedural due process for the deprivation of constitutionally protected interests that disqualification would injure. To avoid the potential for irreparable harm to investors, and unnecessary expedited litigation over the lawfulness of the Staff's action, Waiver Applicants ask that the Division's decision on this waiver application be rendered on an expedited basis, no later than the date stated in the first paragraph of this request.

Because of the irreparable harm that would flow from extended uncertainty over the validity of the Alleged Disqualification Event, Waiver Applicants respectfully request a waiver decision by December 17, 2021, after which failure to provide a response will be treated as a denial in any subsequent litigation in federal court.

Very truly yours,
BUCHALTER
A Professional Corporation

Sanjay Bhandari

Attachments

**Bhandari, Sanjay**

| | |
|---|---|
| **From:** | Levin, Victoria A. <LevinV@sec.gov> |
| **Sent:** | Thursday, November 18, 2021 3:40 PM |
| **To:** | Bhandari, Sanjay |
| **Cc:** | Rosenthal, William M; Levin, Victoria A. |
| **Subject:** | RE: smail Confidential |

This message has originated from an **External Email**. Levin, Victoria A. <levinv@sec.gov>:

This message was sent securely using Zix®

Thanks – I'll send you an invite for 2:00 on 11/29 – my colleague Will Rosenthal, the attorney on the matter, will be on the call as well.

**From:** Bhandari, Sanjay <sbhandari@buchalter.com>
**Sent:** Thursday, November 18, 2021 3:37 PM
**To:** Levin, Victoria A. <LevinV@sec.gov>
**Cc:** Rosenthal, William M <rosenthalw@SEC.GOV>
**Subject:** RE: smail Confidential

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

This message was sent securely using Zix®

Sure. I'm flexible 9-11am and 2-5pm on 11/29.

# Buchalter

**Sanjay Bhandari**
Shareholder

T (619) 219-5376
C (619) 550-2445
sbhandari@buchalter.com

655 W. Broadway, Suite 1600
San Diego, CA 92101
www.buchalter.com

**From:** Levin, Victoria A. <LevinV@sec.gov>
**Sent:** Thursday, November 18, 2021 3:26 PM
**To:** Bhandari, Sanjay <sbhandari@buchalter.com>

Confidential Treatment Requested by DiversyFund
DF-CORR-000010

**Cc:** Rosenthal, William M <rosenthalw@SEC.GOV>
**Subject:** Re: smail Confidential

> This message has originated from an **External Email**. Levin, Victoria A. <levinv@sec.gov>:

This message was sent securely using Zix®

Thanks Sanjay. I am actually out of the office tomorrow and will not be back until Nov 29. Can we schedule a call then?

On Nov 18, 2021, at 3:16 PM, Bhandari, Sanjay <sbhandari@buchalter.com> wrote:

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

This message was sent securely using Zix®

Thank you. I can now confirm that I represent DiversyFund in this matter. Please let me know if there is a convenient time tomorrow for me to call.

# Buchalter

---

**Sanjay Bhandari**
Shareholder

**T** (619) 219-5376
**C** (619) 550-2445
sbhandari@buchalter.com

---

655 W. Broadway, Suite 1600
San Diego, CA 92101
http://www.buchalter.com

**From:** Levin, Victoria A. <LevinV@sec.gov>
**Sent:** Thursday, November 18, 2021 11:40 AM
**To:** Bhandari, Sanjay <sbhandari@buchalter.com>
**Cc:** Rosenthal, William M <rosenthalw@SEC.GOV>; Levin, Victoria A. <LevinV@sec.gov>
**Subject:** RE: smail Confidential

> This message has originated from an **External Email**. Levin, Victoria A. <levinv@sec.gov>:

This message was sent securely using Zix®

Confidential Treatment Requested by DiversyFund
DF-CORR-000011

Thank you for letting us know — we will wait for your confirmation.

**From:** Bhandari, Sanjay <sbhandari@buchalter.com>
**Sent:** Thursday, November 18, 2021 11:38 AM
**To:** Levin, Victoria A. <LevinV@sec.gov>
**Cc:** Rosenthal, William M <rosenthalw@SEC.GOV>
**Subject:** RE: smail Confidential

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

<div style="text-align:center">This message was sent securely using Zix</div>

Tentatively yes. I am at a new firm, so I will need to clear conflicts, but I can confirm that the client would like me to continue represent them. I will confirm with you as soon as I can. Thanks.

# Buchalter

**Sanjay Bhandari**
Shareholder

**T** (619) 219-5376
**C** (619) 550-2445
sbhandari@buchalter.com

655 W. Broadway, Suite 1600
San Diego, CA 92101
http://www.buchalter.com

**From:** Levin, Victoria A. <LevinV@sec.gov>
**Sent:** Thursday, November 18, 2021 10:28 AM
**To:** Bhandari, Sanjay <sbhandari@buchalter.com>
**Cc:** Rosenthal, William M <rosenthalw@SEC.GOV>; Levin, Victoria A. <LevinV@sec.gov>
**Subject:** smail Confidential

> This message has originated from an **External Email**. Levin, Victoria A. <levinv@sec.gov>:

<div style="text-align:center">This message was sent securely using Zix</div>

Sanjay -- You represented DiversyFund in a prior investigation (LA-5069). We have opened a new investigation (LA-5266). Will you be representing DiversyFund in our new investigation?

Regards,

Vicki Levin

**Confidential Treatment Requested by DiversyFund**
**DF-CORR-000012**

Victoria A. Levin
Assistant Regional Director, Enforcement
Securities and Exchange Commission
Los Angeles Regional Office
444 South Flower St., Suite 900
Los Angeles, CA  90071
Ph: (323) 965-3872 E-mail: levinv@sec.gov

This message was secured by Zix®.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

This message was secured by Zix®.

This message was secured by Zix®.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

This message was secured by Zix®.

This message was secured by Zix®.

Confidential Treatment Requested by DiversyFund
DF-CORR-000013

**Bhandari, Sanjay**

| | |
|---|---|
| **From:** | Levin, Victoria A. <LevinV@sec.gov> |
| **Sent:** | Monday, November 29, 2021 2:54 PM |
| **To:** | Bhandari, Sanjay |
| **Cc:** | Rosenthal, William M; Levin, Victoria A. |
| **Subject:** | smail Confidential |

This message has originated from an **External Email**. Levin, Victoria A. <levinv@sec.gov>:

This message was sent securely using Zix®

Sanjay –

Thank you for speaking with us this afternoon. Per our call, this email confirms that in our DiversyFund (LA-5266) matter, we are investigating, among other things, to determine whether to seek a Regulation A suspension order with respect to DF Growth REIT and DF Growth REIT II. This means that, under the disqualification provisions of Rule 262 of Regulation A (17 C.F.R. Section 230.262) the two issuers, and related entities and persons as set forth in the rule, are considered bad actors pending our investigation. See Rule 262(a)(7). As a result, Regulation A is not available to DF Growth REIT and DF Growth REIT II, and offers and sales by both issuers must stop.

Sincerely,

_____

Victoria A. Levin
Assistant Regional Director, Enforcement
Securities and Exchange Commission
Los Angeles Regional Office
444 South Flower St., Suite 900
Los Angeles, CA 90071
Ph: (323) 965-3872 E-mail: levinv@sec.gov

This message was secured by **Zix**®.

**Confidential Treatment Requested by DiversyFund**
DF-CORR-000014

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

This message was secured by Zix®.

This message was secured by Zix®.

Confidential Treatment Requested by DiversyFund
DF-CORR-000015



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Los Angeles Regional Office
444 South Flower Street, Suite 900
Los Angeles, CA 90071

**DIVISION OF ENFORCEMENT**

Victoria A. Levin
(323) 965-3872
levinv@sec.gov

January 14, 2020

Sanjay Bhandari, Esq.
McNamara Smith LLP
655 West Broadway, Suite 1600
San Diego, CA 92101

   Re: In the Matter of DiversyFund, Inc. (LA-5069)

Dear Mr. Bhandari:

   We have concluded the investigation as to DiversyFund, Inc. Based on the information we have as of this date, we do not intend to recommend an enforcement action by the Commission against DiversyFund, Inc. We are providing this notice under the guidelines set out in the final paragraph of Securities Act Release No. 5310, which states in part that the notice "must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation." (The full text of Release No. 5310 can be found at: http://www.sec.gov/divisions/enforce/wells-release.pdf.)

        Sincerely,

        Victoria A. Levin
        Assistant Regional Director

Confidential Treatment Requested by DiversyFund
DF-CORR-000016

# EXHIBIT 4

# Buchalter

655 West Broadway, Suite 1600
San Diego, CA 92101
619.219.5335 Phone

619.219.5376 Direct
sbhandari@buchalter.com

December 6, 2021

**VIA EFAP**

Office of the Secretary
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-3628

      Re:    In re DiversyFund, Inc. (LA-5266)

To Whom it May Concern:

      As counsel for DiversyFund, Inc. and its affiliates and officers DF Growth REIT, LLC, DF Growth REIT II, LLC, DF Manager, LLC, Diversy Advisory Services, LLC and Craig Cecilio and Alan Lewis (collectively, "DiversyFund"), I submit this letter, pursuant to Rule 430(b)(1) of the SEC's Rules of Practice, as written notice of DiversyFund's intention to petition for review of: (1) the above referenced November 8, 2021 Order Directing Private Investigation And Designated Officers To Take Testimony (LA-5266), which I received via email on December 1, 2021; and (2) the Enforcement Staff's November 29, 2021 Order commanding DiversyFund to stop offering or selling securities previously offered pursuant to Regulation A exemptions, which order I received via email from an Assistant Regional Director of Enforcement for Los Angeles on November 29, 2021. Both actions were made, or purported to be made, pursuant to authority delegated by 17 C.F.R. § 200.30-4(a) and other applicable rules.

buchalter.com

Los Angeles
Napa Valley
Orange County
Portland
Sacramento
Salt Lake City
San Diego
San Francisco
Scottsdale
Seattle

# Buchalter

Office of the Secretary
December 6, 2021
Page 2

DiversyFund intends to file separately a petition for review in accordance with SEC Rule 430(b)(2).

Pursuant to 17 C.F.R. § 201.431(e), the filing of this notice automatically stays both orders until the Commission orders otherwise.

This letter also constitutes my notice of appearance under Rule 102 of the SEC's Rules of Practice on behalf of DiversyFund. I may be contacted at the address, telephone number and email address listed on the first page of this letter. Please feel free to contact me with any questions.

Very truly yours,

BUCHALTER
A Professional Corporation

Sanjay Bhandari

cc:     Will Rosenthal and Victoria Levin
        Enforcement Division, Los Angeles Regional Office, SEC

**CERTIFICATE OF SERVICE**

I, Sanjay Bhandari, counsel for DiversyFund, Inc., DF Growth REIT, LLC and DF Growth REIT II, LLC, hereby certify that on December 6, 2021, I served copies of the attached Notice of Intention to Petition for Review, via the SEC's eFAP system on the Office of the Secretary, U.S. Securities and Exchange Commission, 100 F Street, N.E., Washington, DC 20549-3628, and via email to the following representatives of the Division of Enforcement: Will Rosenthal (Counsel) and Victoria Levin (Assistant Regional Director, Enforcement, Securities and Exchange Commission, Los Angeles Regional Office, 444 South Flower St., Suite 900, Los Angeles, CA 90071, Ph: (323) 965-3872, E-mail: rosenthalw@sec.gov; levinv@sec.gov).

DATED: December 6, 2021

_____
Sanjay Bhandari

# EXHIBIT 5

Exhibit 5 - January 13 Order
**Filed Under Seal**

# EXHIBIT 6

Exhibit 6 - January 26 Order
**Filed Under Seal**

# EXHIBIT 7

No. _____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**DIVERSYFUND, INC., DF GROWTH REIT, LLC, DF GROWTH REIT II, LLC, DF MANAGER, LLC, CRAIG CECILIO, AND ALAN LEWIS,**

*Petitioners,*

*v.*

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**

*Respondent.*

On Appeal from the United States of America
Before the Securities and Exchange Commission
File No. LA-5266

## DECLARATION OF ALAN LEWIS IN SUPPORT OF PETITIONERS' MOTION FOR STAY

Sanjay Bhandari
Buchalter, APC
655 West Broadway
Suite 1600
San Diego, CA 92101
Telephone: 619-219-5335
sbhandari@buchalter.com

***Attorneys for Petitioners DiversyFund, Inc., DF Growth REIT, LLC, DF Growth REIT II, LLC, DF Manager, LLC, Craig Cecilio and Alan Lewis***

I, Alan Lewis, hereby declare as follows.

1.     I am an officer of each of the Petitioning Entities (DiversyFund, Inc., DF Growth REIT, LLC, DF Growth REIT II, LLC, and DF Manager, LLC). I have personal knowledge of the matters discussed herein except where otherwise stated, and could testify competently to these matters if called as a witness.

2.     This Declaration is submitted to update and clarify my December 13, 2021 declaration submitted in support of Petitioners' December 13, 2021 administrative petition to the U.S. Securities and Exchange Commission ("SEC"). I incorporate that declaration (referred to as "First Lewis Decl.," and filed herewith) by reference, and refer the reader to it for details that will not be restated herein.

3.     The Petitioning entities and individuals have for years operated a capital-intensive real estate business in reliance on obtaining continued funding through securities offerings under registration exemptions such as Regulation A ("Reg A"). After the SEC's January 13, 2022 Amended Formal Order of Investigation, all Petitioners are disqualified under SEC Rule 262 from participating in

-2-

exempt offerings while the investigation is pending. The SEC has stated that its investigations take years to conclude. *See* SEC Division of Enforcement, 2019 Annual Report at 7 (available at https://www.sec.gov/files/enforcement-annual-report-2019.pdf) (average length of SEC investigations was 24 months generally and 37 months for financial fraud and disclosure). If Petitioners' disqualification were to last that long, all of the Petitioning Entities would be driven out of business, and all affected individuals (I, Craig Cecilio, the 30,000+ investors in the Petitioning Entities, and our employees) would suffer significant and irreparable losses. For many, these losses would be both financial and reputational.

4. These losses will start to be suffered within weeks if the disqualification is not removed. Petitioners continually face funding commitments (e.g., to close on real estate transactions) that would cause immediate injury (e.g., forfeiture of deposit, *see* First Lewis Decl. ¶ 16) if Petitioners defaulted. The $1 million deposit for the Texas project I described in my earlier Declaration remains at risk of forfeiture until Petitioners can meet closing requirements, for which

-3-

they must raise additional capital that they will not be able to raise unless the disqualification is lifted no later than February 28, 2022. (The Texas project was also mentioned in my prior Declaration; it was delayed due to a lender extension issue, and funds raised in the interim were invested in competing time-sensitive projects.) A San Diego project for which Petitioners received an $18 million construction financing commitment requires equity funding of $3 million within 60 days, or that valuable financing will disappear (and likely not be available in the future). Petitioners' business involves complex, ongoing commitments that depend on operations continuing. If those are brought to a sudden stop, cascading harm will likely result.

5. Continued exempt offerings are the only viable means of continuing to meeting DF Growth REIT and REIT II's capital needs: seeking to register an offering would take too much time (months if not years) and capital to be a viable response to the SEC's actions. Because management of investments provides most or all of the revenues and operations of the other Petitioning entities, shutting down the REITs' ability to obtain capital would also shut down their affiliates. If

-4-

Petitioners were unable to obtain relief from disqualification, they would be forced to take drastic measures, including discharging employees, stoppages to other expenses needed to operate their business, and winding down operations, to attempt to limit investor losses. Petitioners will begin these drastic measures if relief is not obtained by February 28, 2022, implementing them as slowly as possible as long as hope remains that disqualification will be lifted.

Executed under penalty of perjury in San Diego, California on the date set forth below.

Dated: February 15, 2022

Alan Lewis

# CERTIFICATE OF SERVICE

(FED. R. APP. P. 25; 9TH CIR. R. 25-5(f))

I certify that I electronically filed the foregoing document entitled DECLARATION OF ALAN LEWIS IN SUPPORT OF PETITIONERS' MOTION FOR STAY. All participants in the case are registered CM/ECF users who will be served by the appellate CM/ECF system and/or by electronic mail by agreement of the parties.

I declare under penalty of perjury under the laws of the United States of America I am a member of the Bar of this Court making service, and this certificate is executed on February 15, 2022, at San Diego, in the County of San Diego, State of California.

By: _/s/ Sanjay Bhandari_
SANJAY BHANDARI

-6-

# EXHIBIT 8

Exhibit 8 - November 8 Order
**Filed Under Seal**

## CERTIFICATE OF SERVICE
(FED. R. APP. P. 25; 9TH CIR. R. 25-5(f))

I certify that I electronically filed the foregoing document entitled PETITIONERS' EMERGENCY MOTION FOR STAY PURSUANT TO CIRCUIT RULE 27-3; RELIEF REQUESTED BY FEBRUARY 28, 2022. All participants in the case are registered CM/ECF users who will be served by the appellate CM/ECF system and/or by electronic mail by agreement of the parties.

I declare under penalty of perjury under the laws of the United States of America I am a member of the Bar of this Court making service, and this certificate is executed on February 15, 2022, at San Diego, in the County of San Diego, State of California.

By: */s/ Sanjay Bhandari*
SANJAY BHANDARI