## 22-70023

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

DiversyFund, Inc.; DF Growth REIT, LLC; DF Growth REIT II, LLC;
DF Manager, LLC; Craig Cecilio; and Alan Lewis,

*Petitioners*,

v.

U.S. Securities and Exchange Commission,

*Respondent*.

---

On Petition for Review of Orders of the
Securities and Exchange Commission

---

## BRIEF FOR THE SECURITIES AND EXCHANGE COMMISSION

---

DAN M. BERKOVITZ
General Counsel

MICHAEL A. CONLEY
Solicitor

JEFFREY A. BERGER
Senior Litigation Counsel

DANIEL T. YOUNG
Attorney

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-3078 (Young)
youngda@sec.gov

## TABLE OF CONTENTS

Table of Authorities .............................................................................................................iii

Introduction .........................................................................................................................1

Counterstatement of Jurisdiction.......................................................................................3

Issues Presented...................................................................................................................3

Statutory Addendum............................................................................................................4

Counterstatement of the Case ...........................................................................................4

      A.      Regulation A is an exemption from registration that is subject to suspension in order to protect investors. ......................................................4

            1.      The Commission crafted Regulation A pursuant to its express authority to create an exemption for small issues..............4

            2.      Regulation A has long contained investor-protection provisions that allow the Commission to halt use of the exemption. .......................................................................................6

            3.      The disqualification and suspension rules protect investors. ..........8

      B.      An investigation into whether a temporary suspension should issue automatically disqualified REIT II under Rule 262(a)(7). .......................11

      C.      The Commission temporarily suspended REIT II under Rule 258(a). .................................................................................................13

Standard of Review ...........................................................................................................15

Summary of Argument ......................................................................................................15

Argument.............................................................................................................................18

I.      The appeal is not justiciable because petitioners are challenging a non-final disqualification that has been mooted by intervening events. .....................18

      A.      Petitioners' disqualification is not a final agency action.............................19

      B.      Petitioners are now receiving process under Rule 258, which moots their appeal...................................................................................................24

C.     The Court should reject petitioners' improper request to expand the appeal to interfere with ongoing proceedings ...................................... 28

II.     REIT II does not have a protected interest in using Regulation A during an investigation into whether the exemption should be suspended. .................... 30

A.     Regulation A's suspension provisions are substantive conditions of REIT II's ability to use the exemption from registration. ......................... 30

B.     Under similar facts, courts have held that there is no protected right to avoid temporary suspensions during the pendency of investigations. ...................................................................................... 35

III.     Even if there is a protectable interest, the due process claim fails because REIT II is receiving sufficient process under Regulation A. ................................. 39

A.     The D.C. Circuit rejected a similar due process challenge under a previous version of Regulation A. ................................................................. 39

B.     Under the balancing test in *Mathews v. Eldridge*, the process that REIT II is receiving is constitutional. ........................................................... 41

     1.     REIT II's interest in continuing to sell securities pursuant to the exemption while under investigation is minimal. ..................... 42

     2.     The Commission has a strong interest in protecting investors. ......................................................................................... 44

     3.     Regulation A minimizes the risk of erroneous deprivation. ........... 47

C.     REIT II is currently receiving an opportunity for a hearing regarding the suspension of the exemption. ............................................... 50

IV.     The Commission's actions were not arbitrary and capricious. ............................ 52

Conclusion ................................................................................................................................ 54

Figure 1: Disqualifications and Suspensions Under Regulation A ................................. 56

Certificate of Compliance ..................................................................................................... 57

Statement of Related Cases ................................................................................................... 58

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967) ................................................................................... 19–20

*Aguayo v. Jewell,*
   827 F.3d 1213 (9th Cir. 2016) ................................................................ 15

*Aiona v. Judiciary of State of Hawaii,*
   17 F.3d 1244 (9th Cir. 1994) .................................................................. 51

*Aladdin Hotel Corp. v. Nev. Gaming Comm'n,*
   637 F.2d 582 (9th Cir. 1980) .................................................................. 24

*Alliance for the Wild Rockies v. Savage,*
   897 F.3d 1025 (9th Cir. 2018) ................................................................ 25

*Amalgamated Clothing & Textile Workers Union v. SEC,*
   15 F.3d 254 (2d Cir. 1994) ..................................................................... 20

*Ass'n of Am. Med. Colls. v. United States,*
   217 F.3d 770 (9th Cir. 2000) .................................................................. 22

*Barry v. Barchi,*
   443 U.S. 55 (1979) ................................................................................. 47

*Bd. of Regents v. Roth,*
   408 U.S. 564 (1972) ............................................................................... 31

*Bell v. Burson,*
   402 U.S. 535 (1971) ............................................................................... 34

*Bennett v. Spear,*
   520 U.S. 154 (1997) ............................................................................... 20

*Bernhardt v. Los Angeles,*
   279 F.3d 862 (9th Cir. 2002) .................................................................. 27

*Brewster v. Bd. of Educ.,*
   149 F.3d 971 (9th Cir. 1998) ............................................................ 30, 39

*Buckingham v. Sec'y of U.S. Dep't of Agric.,*
   603 F.3d 1073 (9th Cir. 2010) ................................................................ 15

*California ex rel. Lockyer v. FERC,*
  329 F.3d 700 (9th Cir. 2003) .................................................... 43–44

*Cassim v. Bowen,*
  824 F.2d 791 (9th Cir. 1987) .................................................... 44, 49, 51

*City of Auburn v. United States,*
  154 F.3d 1025 (9th Cir. 1998) .................................................... 26

*City of San Diego v. Whitman,*
  242 F.3d 1097 (9th Cir. 2001) .................................................... 20

*Clancy v. Off. of Foreign Assets Control,*
  559 F.3d 595 (7th Cir. 2009) .................................................... 42

*Clarinda Home Health v. Shalala,*
  100 F.3d 526 (8th Cir. 1996) .................................................... 35–36

*Clark v. City of Seattle,*
  899 F.3d 802 (9th Cir. 2018) .................................................... 19

*Cleveland Bd. of Educ. v. Loudermill,*
  470 U.S. 532 (1985) .................................................... 38, 42, 50–51

*Coffin Brothers v. Bennett,*
  277 U.S. 29 (1928) .................................................... 45

*Doe v. DEA,*
  484 F.3d 561 (D.C. Cir. 2007) .................................................... 20

*Doe v. Reed,*
  697 F.3d 1235 (9th Cir. 2012) .................................................... 24

*Enrico's, Inc. v. Rice,*
  730 F.2d 1250 (9th Cir. 1984) .................................................... 25

*Erickson v. United States ex rel. Dep't of Health & Hum. Servs.,*
  67 F.3d 858 (9th Cir. 1995) .................................................... 35

*Ernst & Ernst v. Hochfelder,*
  425 U.S. 185 (1976) .................................................... 4

*Esch v. Yeutter,*
  876 F.2d 976 (D.C. Cir. 1989) .................................................... 53

iv

*Fahey v. Mallonee,*
  332 U.S. 245 (1947) .................................................................................. 40, 45

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs,*
  543 F.3d 586 (9th Cir. 2008) ...................................................................... 20–21

*FDIC v. Mallen,*
  486 U.S. 230 (1988) ................................................................. 45, 47, 50–51

*Friends of Animals v. Haaland,*
  997 F.3d 1010 (9th Cir. 2021 ............................................................................ 53

*FTC v. Standard Oil Co.,*
  449 U.S. 232 (1980) .......................................................................................... 22

*Fuentes v. Shevin,*
  407 U.S. 67 (1972) ....................................................................................... 42, 45

*Funbus Sys., Inc. v. Cal. Pub. Utils. Comm'n,*
  801 F.2d 1120 (9th Cir. 1986) ........................................................................... 28

*Fund for Animals, Inc. v. Hogan,*
  428 F.3d 1059 (D.C. Cir. 2005) ................................................................... 26–27

*Gentile v. SEC,*
  974 F.3d 311 (3d Cir. 2020) ........................................................................ 15, 52

*Gilbert v. Homar,*
  520 U.S. 924 (1997) ............................................................................... *passim*

*Goldberg v. Kelly,*
  397 U.S. 254 (1970) ..................................................................................... 40, 54

*Gonzalez-Droz v. Gonzalez-Colon,*
  660 F.3d 1 (1st Cir. 2011) ................................................................................. 43

*Graham v. Off. of Surface Mining Reclamation & Enf't,*
  722 F.2d 1106 (3d Cir. 1983) ............................................................................ 42

*Greater Yellowstone Coalition, Inc v. Servheen,*
  665 F.3d 1015 (9th Cir. 2011) ..................................................................... 52–53

*Greenwood v. FAA,*
  28 F.3d 971 (9th Cir. 1994) .............................................................................. 46

v

*GTE Cal. v. FCC,*
  39 F.3d 940 (9th Cir. 1994) ................................................................. 26–27

*Gun S., Inc. v. Brady,*
  877 F.2d 858 (11th Cir. 1989) ................................................................... 49

*Guzman v. Shewry,*
  552 F.3d 941 (9th Cir. 2009) ....................................................... 35–36, 43

*Heckler v. Cheney,*
  470 U.S. 821 (1985) .............................................................................. 15, 52

*Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.,*
  452 U.S. 264 (1981) .............................................................................. 44–45

*Huawei Techs. USA v. FCC,*
  2 F.4th 421 (5th Cir. 2021) ................................................................. 21, 36

*In re Sac & Fox Tribe of Miss. in Iowa Casino Litig.,*
  340 F.3d 749 (8th Cir. 2003) .............................................................. 21–22

*Inv. Co. Inst. (ICI) v. Fed. Rsrv. Sys.,*
  551 F.2d 1270 (D.C. Cir. 1977) ................................................................ 23

*James Madison Ltd. by Hecht v. Ludwig,*
  82 F.3d 1085 (D.C. Cir. 1996) ............................................................ 43, 47

*Jerron W., Inc. v. Cal. Bd. of Equalization,*
  129 F.3d 1334 (9th Cir. 1997) ................................................................... 26

*Lindeen v. SEC,*
  825 F.3d 646 (D.C. Cir. 2016) ...................................................... 4–5, 8, 52

*Mackey v. Montrym,*
  443 U.S. 1 (1979) ....................................................................................... 49

*Malouf v. SEC,*
  933 F.3d 1248 (10th Cir. 2019) ................................................................. 29

*Mansourian v. Regents of Univ. of California,*
  602 F.3d 957 (9th Cir. 2010) .................................................................... 24

*Mathews v. Eldridge,*
  424 U.S. 319 (1976) .................................................................. 3, 17, 30, 42

*McBryde v. Comm. of Jud. Conf.*,
   264 F.3d 52 (D.C. Cir. 2001) .................................................26

*MFS Secs. Corp. v. SEC*,
   380 F.3d 611 (2d Cir. 2004) ................................................15

*Morrissey v. Brewer*,
   408 U.S. 471 (1972).............................................................39

*N. Am. Cold Storage Co. v. Chicago*,
   211 U.S. 306 (1908).............................................................45

*N.Y. Republican State Comm. v. SEC*,
   799 F.3 1126 (D.C. Cir. 2015) .............................................23

*Nasdaq v. SEC*,
   1 F.4th 34 (D.C. Cir. 2021) ...........................................22–23

*Neighbors of Cuddy Mountain v. Alexander*,
   303 F.3d 1059 (9th Cir. 2002) .............................................20

*Nor-Am Agric. Prods., Inc. v. Hardin*,
   435 F.2d 1151 (7th Cir. 1970) .............................................21

*O'Brien, Inc. v. SEC*,
   704 F.2d 1065 (9th Cir. 1983) .............................................23

*Parrino v. Price*,
   869 F.3d 392 (6th Cir. 2017).............................................35

*Pers. Care Prods., Inc. v. Hawkins*,
   635 F.3d 155 (5th Cir. 2011).............................................35

*Peterson v. Weinberger*,
   508 F.2d 45 (5th Cir. 1975)...........................................35–36

*Pub. Util. Comm'n v. FERC*,
   100 F.3d 1451 (9th Cir. 1996) .......................................25, 27

*R. A. Holman & Co. v. SEC*,
   299 F.2d 127 (D.C. Cir. 1962).....................................*passim*

*Raditch v. United States*,
   929 F.2d 478 (9th Cir. 1991).........................................24–25

*Recchia v. L.A. Dep't of Animal Servs.*,
889 F.3d 553 (9th Cir. 2018)........................................................46

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
324 F.3d 726 (D.C. Cir. 2000) ....................................................21

*Reno v. Catholic Soc. Servs., Inc.*,
509 U.S. 43 (1993)........................................................................20

*Ritter v. Cohen*,
797 F.2d 119 (3d Cir. 1986) ........................................................43

*Rodriguez v. Airborne Express*,
265 F.3d 890 (9th Cir. 2001)........................................................27

*S & D Maint. Co. v. Goldin*,
844 F.2d 962 (2d Cir. 1988) ................................................ 36–37

*S. Or. Barter Fair v. Jackson Cty.*,
372 F.3d 1128 (9th Cir. 2004) ....................................................24

*San Geronimo Caribe Project, Inc. v. Acevedo-Vila*,
687 F.3d 465 (1st Cir. 2012) .......................................................48

*SEC v. Internet Solutions for Bus., Inc.*,
509 F.3d 1161 (9th Cir. 2007) ....................................................13

*SEC v. Ralston-Purina*,
346 U.S. 119 (1953)........................................................................5

*Shah v. Azar*,
920 F.3d 987 (5th Cir. 2019)........................................................35

*Sierra Club v. Nuclear Reg. Comm'n*,
825 F.2d 1356 (9th Cir. 1987) ....................................................24

*Sinaloa Lake Owners Ass'n v. City of Simi Valley*,
864 F.2d 1475 (9th Cir. 1989)......................................................46

*Soranno's Gasco, Inc. v. Morgan*,
874 F.2d 1310 (9th Cir. 1989)......................................................46

*Soundboard Ass'n v. FTC*,
888 F.3d 1261 (D.C. Cir. 2018)...................................................20

viii

*Spiegel v. Ryan*,
  946 F.2d 1435 (9th Cir. 1991) .................................................. 45–47

*Spinelli v. City of New York*,
  579 F.3d 160 (2d Cir. 2009) ............................................................34

*Springsteen-Abbott v. SEC*,
  989 F.3d 4 (D.C. Cir. 2021) ............................................................28

*Tabby's Int'l, Inc. v. SEC*,
  479 F.2d 1080 (5th Cir. 1973) ..........................................................6

*Telecomms. Rsch. & Action Ctr. (TRAC) v. FCC*,
  750 F.2d 70 (D.C. Cir. 1984) .........................................................23

*Thornton v. City of St. Helens*,
  425 F.3d 1158 (9th Cir. 2005) ........................................................37

*Title Guar. & Surety Co. v. Idaho*,
  240 U.S. 136–42 (1916) ..................................................................45

*Touche Ross & Co. v. SEC*,
  609 F.2d 570 (2d Cir. 1979) .............................................................4

*Town of Castle Rock v. Gonzales*,
  545 U.S. 748 (2005) ........................................................................37

*Tur v. FAA*,
  4 F.3d 766 (9th Cir. 1993) ........................................................ 34, 46

*United States v. James Daniel Good Real Prop.*,
  510 U.S. 43 (1993) ..........................................................................42

*Veldhoen v. Coast Guard*,
  35 F.3d 222 (5th Cir. 1994) ............................................................23

*Vernazza v. SEC*,
  327 F.3d 851 (9th Cir. 2003) .........................................................19

*Watts v. SEC*,
  482 F.3d 501 (D.C. Cir. 2007) ...................................................... 19

*White v. SEC*,
  809 F. App'x 28 (2d Cir. 2020) .......................................................15

*Wild Wilderness v. Allen*,
   871 F.3d 719 (9th Cir. 2017) ................................................................24

*Xumanii Int'l Holdings Corp v. SEC*,
   670 F. App'x 508 (9th Cir. 2016) .........................................................44

*Yorktown Med. Lab., Inc. v. Perales*,
   948 F.2d 84 (2d Cir. 1991) ............................................................. 35–36

**Statutes and Rules**

Administrative Procedure Act, 5 U.S.C. 101, et seq.

   5 U.S.C. 551(6) ...................................................................................19

   5 U.S.C. 551(7) ...................................................................................34

   5 U.S.C. 558(c) ...................................................................................34

   5 U.S.C. 701(a)(2) .......................................................................... 15, 52

   5 U.S.C. 704 ................................................................................... 19, 22

   5 U.S.C. 706(2)(A) ..............................................................................15

Securities Act of 1933, 15 U.S.C. 77a, et seq.

   Section 5, 15 U.S.C. 77e ................................................................. 4, 34

   Section 3(b), 15 U.S.C. 77c(b) .....................................................*passim*

   Section 9(a), 15 U.S.C. 77i(a) .......................................3, 19, 23, 28

Rules Under the Securities Act of 1933, 17 C.F.R. 230.01, et seq.

   Rule 506(d), 17 C.F.R. 230.506(d)(1)(vii) .............................................7

   Rule 251(a), 17 C.F.R. 230.251(a) ......................................................32

   Rule 251(a)(1), 17 C.F.R. 230.251(a)(1) ...............................................5

   Rule 251(a)(2), 17 C.F.R. 230.251(a)(2) ...............................................5

   Rule 251(b), 17 C.F.R. 230.251(b) .........................................................5

   Rule 251(b)(1), 17 C.F.R. 230.251(b)(1) .............................................32

   Rule 251(b)(5), 17 C.F.R. 230.251(b)(5) .............................................32

   Rule 251(b)(8), 17 C.F.R. 230.251(b)(8) .............................................32

   Rule 251(d), 17 C.F.R. 230.251(d) .........................................................5

   Rule 251(d)(1), 17 C.F.R. 230.251(d)(1) .............................................32

   Rule 251(d)(2), 17 C.F.R. 230.251(d)(2) ...............................................5

x

Rule 252, 17 C.F.R. 230.252 .................................................................................5

Rule 252(d)(2)(A), 17 C.F.R. 230.252(d)(2)(A) .............................................32

Rule 252(d)(2)(C), 17 C.F.R. 230.252(d)(2)(C) .............................................32

Rule 253, 17 C.F.R. 230.253 .................................................................................5

Rule 256, 17 C.F.R. 230.256 .................................................................................5

Rule 257, 17 C.F.R. 230.257 .................................................................................5

Rule 258(a), 17 C.F.R. 230.258(a) ...............................................................*passim*

Rule 258(a)(1), 17 C.F.R. 230.258(a)(1) ............................................................9

Rule 258(a)(2), 17 C.F.R. 230.258(a)(2) ...................................................... 9, 14

Rule 258(a)(3), 17 C.F.R. 230.258(a)(3) ............................................................9

Rule 258(a)(4), 17 C.F.R. 230.258(a)(4) ............................................................9

Rule 258(a)(5), 17 C.F.R. 230.258(a)(5) ............................................................9

Rule 258(a)(6), 17 C.F.R. 230.258(a)(6) ............................................................9

Rule 258(b), 17 C.F.R. 230.258(b) .............................................................*passim*

Rule 258(b)(2), 17 C.F.R. 230.258(b)(2) ...............................................9, 51, 56

Rule 258(c), 17 C.F.R. 230.258(c) .............................................................. 9, 56

Rule 258(d), 17 C.F.R. 230.258(d) ............................................................. 9, 56

Rule 260(b), 17 C.F.R. 230.260(b) ...................................................................31

Rule 262(a)(1), 17 C.F.R. 230.262(a)(1) ...................................................... 9, 32

Rule 262(a)(2), 17 C.F.R. 230.262(a)(2) ...................................................... 9, 32

Rule 262(a)(3), 17 C.F.R. 230.262(a)(3) ...................................................... 9–10

Rule 262(a)(4), 17 C.F.R. 230.262(a)(4) ............................................................9

Rule 262(a)(5), 17 C.F.R. 230.262(a)(5) ............................................................9

Rule 262(a)(6), 17 C.F.R. 230.262(a)(6) ............................................................9

Rule 262(a)(7), 17 C.F.R. 230.262(a)(7) ..................................................... *passim*

Rule 262(a)(8), 17 C.F.R. 230.262(a)(8) ............................................................9

Rule 262(b)(2), 17 C.F.R. 230.262(b)(2) ....................................................10–11, 48

Rules of Organization, 17 C.F.R. 200.1, et seq.

17 C.F.R. 200.30-4(a)(13) ...............................................................................11

Rules of Practice, 17 C.F.R. 201.100, et seq.

17 C.F.R. 201.100 .................................................................................................53

**Legislative Materials**

H.R. Rep. No. 83-1542, 1954 WL 3159 (Apr. 23, 1954)............................... 7, 40

S. Rep. No. 83-1036 (Feb. 26, 1954) ..............................................7, 29, 33, 40

Securities Act of 1933, Pub. L. No. 73-22, 48 Stat. 74 (May 27, 1933)...........5

Dodd-Frank Act, Pub. L. No. 111-203, 124 Stat. 1376 (July 21, 2010)...........7

JOBS Act, Pub. L. No. 112-106, 126 Stat. 306 (Apr. 5, 2012) .........................8

**Treatises**

7 J. William Hicks, EXEMPTED TRANSACTIONS UNDER
   THE SECURITIES ACT OF 1933 § 6:6 (last updated Feb. 2022) ....................5

13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper,
   FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3533.2.1
   (3d ed. last updated Apr. 2021) ...........................................................26

**Miscellaneous**

*Small Business Initiatives*,
   57 Fed. Reg. 36442 (Aug. 13, 1992).......................................................7

*Proposed Rule Amendments for Small and Additional Issues Exemptions*,
   79 Fed. Reg. 3926 (Jan. 23, 2014).......................................................52

*Amendments for Small and Additional Issues Exemptions*,
   80 Fed. Reg. 21806 (Apr. 20, 2015) .......................................................8

*Facilitating Capital Formation*
    85 Fed. Reg. 17956 (Mar. 31, 2020) (proposing release)..........................10

*Facilitating Capital Formation*
    86 Fed. Reg. 3496 (Jan. 14, 2021) (final rule).......................................10

*In re Tabby's Int'l, Inc.*, SEC Rel. No. 33-5283,
   1972 WL 121288 (July 21, 1972)..........................................................6

SEC Rel. No. 33-632,
   1936 WL 30900 (Jan. 21, 1936) ............................................................5

SEC Rel. No. 33-2410,
   1940 WL 7107 (Dec. 3, 1940).............................................................6

SEC Rel. No. 33-3466,
    1953 WL 5669 (Mar. 6, 1953) ........................................................................6

SEC Rel. No. 33-3663,
    1956 WL 7217 (July 23, 1956) ......................................................................6

*In re DF Growth REIT II, LLC,*
    SEC Rel. No. 33-11040, 2022 WL 797894 (Mar. 16, 2022), *available at*
    https://www.sec.gov/litigation/admin/2022/33-11040.pdf....................................13

*In re DF Growth REIT II, LLC,*
    SEC Rel. No. 33-11041, 2022 WL 810300 (Mar. 16, 2022), *available at*
    https://www.sec.gov/rules/other/2022/33-11041.pdf ...............................14, 48, 53

*In re DF Growth REIT II, LLC,*
    SEC Rel. No. 33-11049, 2022 WL 990125 (Mar. 31, 2022), *available at*
    https://www.sec.gov/litigation/opinions/2022/33-11049.pdf ...............................14

*In re DF Growth REIT II, LLC,*
    SEC Admin. Rel. No. 6840 (Apr. 1, 2022), *available at*
    https://www.sec.gov/alj/aljorders/2022/ap-6840.pdf ............................................ 14

**22-70023**

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

DiversyFund, Inc.; DF Growth REIT, LLC; DF Growth REIT II, LLC;
DF Manager, LLC; Craig Cecilio; and Alan Lewis,

*Petitioners*,

v.

U.S. Securities and Exchange Commission,

*Respondent*.

---

On Petition for Review of Orders of the
Securities and Exchange Commission

---

**BRIEF FOR THE SECURITIES AND EXCHANGE COMMISSION**

---

**INTRODUCTION**

A central pillar of the Securities Act of 1933 is Congress's requirement that issuers of securities register public offerings with the Commission. At the same time, Congress authorized the Securities and Exchange Commission to create an exemption from registration for smaller public offerings. In response, the Commission promulgated Regulation A to facilitate capital formation while ensuring that investors remain protected in the absence of the full registration process. For more than eighty

1

years, Regulation A has included provisions disabling use of the exemption in certain circumstances in order to safeguard investors.

The application of these investor-protection provisions temporarily stopped petitioner DF Growth REIT II, LLC (REIT II) from offering and selling securities in unregistered transactions under Regulation A pending further proceedings that are now underway. The Commission's Division of Enforcement commenced an investigation into whether REIT II violated the securities laws. As part of this investigation, the Division considered whether to recommend that the Commission suspend the exemption as to REIT II. Under Rule 262 of Regulation A, this part of the investigation automatically disqualified REIT II from eligibility for the exemption. A few weeks later, and after petitioners initiated this appeal, the Commission issued an order, pursuant to Rule 258(a), temporarily suspending REIT II from using the exemption. REIT II requested a hearing to determine whether the suspension should become permanent or be vacated; that hearing has been scheduled for June 6.

REIT II and several affiliated parties seek review of two Commission orders, but they focus on the Rule 262 disqualification, which went into effect automatically pursuant to the rule's terms. Petitioners claim that the disqualification violates the Due Process Clause, but their appeal fails for several different reasons. It is not justiciable because there has been no final agency action regarding the availability of the Regulation A exemption and because the ongoing Rule 258 process, which petitioners previously requested, has mooted the appeal, leaving no relief that can be

2

granted. To the extent the Court reaches the merits, REIT II does not have a constitutionally protected interest in offering and selling securities during the pendency of the investigation. And even if it did, REIT II is receiving sufficient process now through the Rule 258 proceeding. Under the decision in *R. A. Holman & Co. v. SEC*, 299 F.2d 127 (D.C. Cir. 1962), which held that an earlier version of Regulation A was constitutional, as well as the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the process available to REIT II satisfies the Due Process Clause.

## COUNTERSTATEMENT OF JURISDICTION

Petitioners seek review of two Commission orders: (1) a formal order of investigation, entered on January 13, 2022; and (2) an order denying a request for Commission review, entered on January 26, 2022. Petitioners sought review of these orders within sixty days, as required by Section 9(a) of the Securities Act, 15 U.S.C. 77i(a), by filing a petition on February 15, 2022. But this Court lacks jurisdiction for the reasons explained in Section I of the Argument.

## ISSUES PRESENTED

1. Whether this appeal should be dismissed for lack of jurisdiction because REIT II's automatic disqualification is not a final Commission determination as to Regulation A's availability and because no effective relief can be granted in light of the ongoing Rule 258 process, which moots the appeal.

2. If the Court reaches the merits, whether REIT II lacks a constitutionally protected property interest in continuing to engage in unregistered transactions

pursuant to Regulation A while the Commission assesses whether to permanently suspend the exemption.

3.      Whether, assuming REIT II has a protected interest, the ongoing Rule 258 process satisfies the Due Process Clause given REIT II's minimal private interest in selling securities during the pendency of an investigation and the strong public interest in protecting investors.

4.      Whether the Commission acted within its discretion in commencing an investigation, which triggered the automatic disqualification in Rule 262.

## STATUTORY ADDENDUM

Pertinent statutes and regulations appear in an addendum bound with this brief.

## COUNTERSTATEMENT OF THE CASE

**A.      Regulation A is an exemption from registration that is subject to suspension in order to protect investors.**

**1.      The Commission crafted Regulation A pursuant to its express authority to create an exemption for small issues.**

Congress's chief purpose in passing the Securities Act was "to provide investors with full disclosure of material information concerning public offerings of securities." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976). Section 5 requires that "a registration statement be filed with the Commission before a security [may] be sold to the public." *Touche Ross & Co. v. SEC*, 609 F.2d 570, 580 (2d Cir. 1979); 15 U.S.C. 77e. The registration process protects investors, but it can be "prohibitively expensive for small companies." *Lindeen v. SEC*, 825 F.3d 646, 649 (D.C. Cir. 2016).

4

Recognizing this, Congress authorized the Commission, through rulemaking and "subject to such terms and conditions as may be prescribed" by the Commission, Pub. L. No. 73-22, § 3(b), 48 Stat. 74, 77 (May 27, 1933), to exempt "certain small-dollar offerings, so long as the Commission finds that federal registration is not required to protect both investors and the public interest," *Lindeen*, 825 F.3d at 649. In 1936, the Commission exercised the authority provided by Section 3(b) and promulgated Regulation A. SEC Rel. No. 33-632, 1936 WL 30900 (Jan. 21, 1936).

Regulation A, the "conditional small issues exemption," facilitates capital formation while protecting investors. 17 C.F.R. 230.251–263. The exemption now contains two tiers of offerings; Tier 2 has a higher maximum offering amount (currently $75 million) and more investor protections. *Id.* at 230.251(a)(1)–(2). To rely on Regulation A, an issuer must satisfy numerous conditions, including: (1) being an eligible issuer, *id.* at 230.251(b); (2) preparing an offering statement, which the Commission must qualify, and an offering circular, which the issuer must deliver to investors, *id.* at 230.251(d), 230.252–253; (3) complying with limitations on communications, *id.* at 230.255; (4) filing required reports, *id.* at 230.257; and (5) restricting who can purchase the securities, *id.* at 230.251(d)(2), 256. An issuer relying on Regulation A as an exemption from registration has the burden of showing compliance with all its conditions. *SEC v. Ralston-Purina*, 346 U.S. 119, 126 (1953); *see also* 7 J. William Hicks, EXEMPTED TRANSACTIONS UNDER THE SECURITIES ACT OF 1933 § 6:6 (last updated Feb. 2022).

### 2.  Regulation A has long contained investor-protection provisions that allow the Commission to halt use of the exemption.

For over eighty years, the Commission has ensured that it can disable use of the exemption in order to protect investors. "In the field of exemptions from registration, the desire of Congress to protect the public appears paramount." *R. A. Holman & Co. v. SEC*, 299 F.2d 127, 132–33 (D.C. Cir. 1962). Given this objective, the Commission has viewed the exemption as "a conditional one based on strict compliance with express provisions and standards" and stated that "suspension is appropriate where they are not met." *In re Tabby's Int'l, Inc.*, SEC Rel. No. 33-5283, 1972 WL 121288, at *2 (July 21, 1972), *aff'd*, 479 F.2d 1080 (5th Cir. 1973).

The Commission first placed an automatic disqualification provision into Regulation A in 1940. SEC Rel. No. 33-2410, 1940 WL 7107, at *3–4 (Dec. 3, 1940). The Commission later added a discretionary mechanism under which it could suspend the exemption if it had "reason to believe" that Regulation A's "terms and conditions" had "not been met" or "that fraud or deceit [was] being perpetrated." SEC Rel. No. 33-3466, 1953 WL 5669, at *1, 7–8 (Mar. 6, 1953); *see also* SEC Rel. No. 33-3663, 1956 WL 7217 (July 23, 1956) (adopting rule that disqualified an issuer if it was subject to ongoing suspension proceedings).

Congress has legislated against this regulatory backdrop. When it amended Section 3(b) in 1954, the accompanying committee reports highlighted Regulation A's inclusion of a "'suspension power so as to assure that issues offered under the

6

regulation are offered under conditions which furnish practical protection against fraud.'" *Holman*, 299 F.2d at 133, quoting H.R. Rep. No. 83-1542, at 17 (Apr. 23, 1954), *available at* 1954 WL 3159. This suspension power "formed part of the basis upon which" Congress acted. *Id.* at 133, citing S. Rep. No. 83-1036, at 8 (Feb. 26, 1954) (stating that the Commission "may by order promptly suspend or deny the exemption because of fraud, threatened fraud, or other violation of the act or the regulations").

Recent amendments to Regulation A—some mandated by Congress—have maintained the use of discretionary suspension and automatic disqualification provisions to protect investors. In 1992, the Commission moved the suspension provisions to Rule 258 and placed the automatic disqualifications in Rule 262. *Small Business Initiatives*, 57 Fed. Reg. 36442 (Aug. 13, 1992). Moreover, the Commission added disqualification under Rule 262 to the list of requirements in Rule 251 that determine whether an issuer is ineligible for the exemption.

Congress looked to Rule 262 as a template for other exemptions. In the Dodd-Frank Act, it ordered the Commission to adopt disqualification rules for a different exemption, known as Regulation D, that were "substantially similar" to Rule 262. Pub. L. No. 111-203, § 926, 124 Stat. 1376, 1851 (2010). Under these rules, adopted in 2013, an issuer is disqualified from relying on Regulation D if, at the time of a sale, it is "the subject of an investigation or proceeding to determine whether a stop order or suspension order should be issued." 17 C.F.R. 230.506(d)(1)(vii).

Congress revisited disqualification in Regulation A when it amended Section 3(b) in 2012. JOBS Act, Pub. L. No. 112-106, § 401, 126 Stat. 306, 323–25 (2012); *see Lindeen*, 825 F.3d at 651 (Congress "added section 3(b)(2) to the Securities Act, which directed the SEC to revamp Regulation A"). Congress authorized the Commission to promulgate "disqualification provisions" that were "in the public interest and for the protection of investors," and that would be "substantially similar" to the Regulation D provisions "adopted in accordance with" the Dodd-Frank Act. 15 U.S.C. 77c(b)(2)(G)(ii). The Commission responded by moving existing disqualification provisions to Rule 262(a)(7), which automatically disqualified issuers subject to specified investigations. *Amendments for Small and Additional Issues Exemptions Under the Securities Act*, 80 Fed. Reg. 21806, 21902 (Apr. 20, 2015).

### 3. The disqualification and suspension rules protect investors.

The discretionary suspension and automatic disqualification rules safeguard investors in complementary ways. As part of its mission to enforce the federal securities laws, the Commission investigates possible violations through its Division of Enforcement. An investigation into misconduct related to the sale of securities may also entail consideration of whether to recommend that the Commission suspend a registered offering or an exemption from the registration requirement.

Rule 258 authorizes the Commission to temporarily suspend the use of the Regulation A exemption "at any time" if it "has reason to believe" that any of six factors are present. These include whether "any of the terms, conditions, or

8

requirements of Regulation A have not been complied with" and whether the offering statement, any sales material, or any report filed with the Commission contains any materially false or misleading statements. 17 C.F.R. 230.258(a)(1)–(6). If the Commission enters a temporary suspension order under Rule 258(a), it notifies the issuer that the Commission, "upon receipt of a written request within 30 calendar days after the entry of the order, will, within 20 calendar days after receiving the request, order a hearing." *Id.* at 230.258(b)(2). If the issuer does not request a hearing, the temporary suspension becomes permanent and remains "in effect unless or until it is modified or vacated by the Commission." *Id.* at 230.258(c).

If, however, an issuer requests a hearing, "the Commission will, after notice of and opportunity for such hearing, either vacate the order or enter an order permanently suspending the exemption." *Id.* Thus, a Rule 258 hearing will result in either the end of the suspension—in which case the issuer may again rely on Regulation A—or a permanent suspension. The basis for ordering a permanent suspension, "after notice of and opportunity for hearing," can be "any reason upon which [the Commission] could have entered a temporary suspension order" under Rule 258(a), and any permanent suspension "shall remain in effect until vacated by the Commission." *Id.* at 230.258(d).

Rule 262 provides an additional layer of protection. The rule lists eight events that render the exemption unavailable. 17 C.F.R. 230.262(a)(1)–(8). These include convictions for certain securities-related felonies, *id.* at 230.262(a)(1), and bars against

9

engaging in the securities industry, *id. at* 230.262(a)(3). Rule 262(a)(7) creates an automatic disqualification if, "at the time of" the filing of an offering statement or a sale, the issuer is "the subject of an investigation or proceeding to determine whether a stop order or suspension order should be issued." 17 C.F.R. 230.262(a)(7).[1]

The duration of the disqualification is tied to the Rule 258(a) proceeding. If a Rule 258(a) order issues, the Rule 262(a)(7) disqualification is superseded by the suspension of the exemption, subject to the hearing process under Rule 258(b) (assuming it is requested). But if the investigation into whether a suspension should issue ends without a Rule 258(a) order, the Rule 262(a)(7) disqualification is lifted and the exemption again becomes available. *See* Figure 1 (located at the back of this brief, *infra* page 56, and showing how the disqualification and suspension rules function).

An issuer disqualified under Rule 262(a)(7) may seek a waiver of the disqualification. Rule 262(b) states that a disqualification will not apply "[u]pon a showing of good cause and without prejudice to any other action by the Commission,

---

[1] To harmonize Regulation A with Regulation D, the Commission amended Rule 262(a)(7) so that an issuer would also be disqualified if it is subject to an investigation *at the time of a sale*, as well as when an offering statement is filed. *Facilitating Capital Formation*, 86 Fed. Reg. 3496 (Jan. 14, 2021). Among other things, this change avoids situations where an issuer "could potentially offer and sell securities under Regulation A after the filing of the offering statement" despite the "occurrence of an event during that time frame that otherwise would constitute a disqualifying event if it occurred prior to the filing of the offering statement." *Facilitating Capital Formation,* 85 Fed. Reg. 17956, 18002 (Mar. 31, 2020) (proposing release).

if the Commission determines that it is not necessary under the circumstances that an exemption be denied." 17 C.F.R. 230.262(b)(2).

**B.     An investigation into whether a temporary suspension should issue automatically disqualified REIT II under Rule 262(a)(7).**

Acting upon information it received, the Division of Enforcement opened an investigation into REIT II and the other petitioners. The petitioners include DiversyFund, Inc., its co-founders, a DiversyFund subsidiary, and two affiliated but distinct issuers—REIT I and REIT II. Both issuers offered and sold securities in unregistered offerings under Regulation A. The REIT I offering concluded, and while REIT I remains subject to an investigation into whether it violated the securities laws, it is not disqualified. REIT II filed an offering statement for a Tier 2 offering, which was qualified on January 29, 2021, and REIT II sold securities in unregistered transactions pursuant to Regulation A before disqualification.

The Division of Enforcement, acting under delegated authority, 17 C.F.R. 200.30-4(a)(13), issued a formal order of investigation on November 8, 2021, so that its staff could subpoena evidence and testimony. 1-ER-12–14. As part of the investigation, Enforcement staff sought to determine whether to recommend that the Commission issue a temporary suspension under Rule 258. 1-ER-4–5. Enforcement staff emailed petitioners' counsel on November 29, confirming the investigation and setting forth Rule 262(a)(7)'s automatic disqualification. 2-ER-69.

11

Petitioners responded on December 7 by requesting a waiver of the disqualification to allow REIT II to resume offering and selling securities immediately, without proposing any conditions or investor protections. 2-ER-56–71. Petitioners separately appealed to the Commission, asking it to set aside the formal order of investigation and the November 29 email, which petitioners incorrectly construed as an action taken pursuant to delegated authority. 2-ER-26–54. Petitioners argued that the Enforcement Division should have sought "a suspension order under [Rule 258]," which "would have provided DiversyFund" with "notice, a prompt post-deprivation hearing before a neutral decision maker, and an orderly process for Commission and judicial review based on a complete record." 2-ER-44.

The Commission, no longer acting through delegated authority, issued an amended formal order of investigation on January 13, 2022. 1-ER-8–10. This order confirmed that the investigation covered "whether a suspension order pursuant to Rule 258 * * * should be issued to suspend the ability of REIT II to rely" on Regulation A. 1-ER-10. Thus, this amended order clarified that the disqualification under Rule 262(a)(7) applied only to REIT II.

The Commission denied the administrative appeal on January 26. 1-ER-4–6. It explained that neither the original formal order nor the email were reviewable under the Commission's rules of practice. 1-ER-5. The Commission also found that the petition had been partially mooted by the amended formal order. *Id.*

12

Petitioners sought review in this Court, claiming a violation of the Due Process Clause. They nominally appealed the January 13 amended formal order of investigation and the January 26 order denying their administrative appeal (ECF No. 1), but their briefing reveals that they are mainly challenging the Rule 262(a)(7) disqualification itself (*e.g.*, Br. 10, 22). Petitioners also filed an emergency motion for a stay, which the Court denied. ECF No. 13.

## C.     The Commission temporarily suspended REIT II under Rule 258(a).

The investigation has continued during this time. Shortly after the filing of this appeal, Enforcement staff issued a "Wells Notice" informing petitioners that it planned to recommend that the Commission temporarily suspend REIT II's use of the Regulation A exemption under Rule 258(a). A Wells Notice gives "the recipient the opportunity to set forth his version of the law or facts" to the Commissioners. *SEC v. Internet Solutions for Bus., Inc.*, 509 F.3d 1161, 1163 n.1 (9th Cir. 2007) (internal quotation marks omitted). After requesting an extension (*see* ECF No. 12), REIT II made its Wells submission on March 4.

Less than two weeks later, the Commission temporarily suspended REIT II from using the exemption. SEC Rel. No. 33-11040, 2022 WL 797894 (Mar. 16, 2022), *available at* https://www.sec.gov/litigation/admin/2022/33-11040.pdf. The order provided four reasons for the suspension. The Commission stated that it had reason to believe that REIT II violated two terms and conditions of Regulation A (citing

13

Rule 258(a)(1)) and reason to believe that REIT II made materially false or misleading statements in its offering statement or sales materials (citing Rule 258(a)(2)). *Id.*

On the same day, the Commission denied the request for a waiver from disqualification that petitioners had filed in December and never updated. SEC Rel. No. 33-11041, 2022 WL 810300 (Mar. 16, 2022), *available at* https://www.sec.gov/rules/other/2022/33-11041.pdf. The Commission explained that the request was moot in light of the Rule 258 order—*i.e.*, even if good cause were shown, the exemption would still be unavailable because of the temporary suspension. *Id.* at *3. But petitioners had not shown good cause in any event, the Commission found, because "the waiver request [did] not identify any remedial measures or safeguards that would protect investors during the pendency of an investigation to justify allowing the Regulation A offering to move forward." *Id.*

As required by Rule 258(b), REIT II received notice of the Rule 258(a) order on March 16. It requested a hearing the same day. On March 31, the Commission ordered that the proceeding be set for a hearing before an administrative law judge. *In re DF Growth REIT II, LLC*, SEC Rel. No. 33-11049, 2022 WL 990125 (Mar. 31, 2022), *available at* https://www.sec.gov/litigation/opinions/2022/33-11049.pdf. The following day, the ALJ set the hearing for June 6. *In re DF Growth REIT II, LLC*, SEC Admin. Rel. No. 6840 (Apr. 1, 2022), *available at* https://www.sec.gov/alj/aljorders/2022/ap-6840.pdf. Pursuant to the March 31 order, the ALJ must issue an initial decision no later than thirty days after the completion of post-hearing briefing.

14

## STANDARD OF REVIEW

Commission actions may be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. 706(2)(A). However, investigatory decisions, including the January 13 order, are "committed to agency discretion by law," 5 U.S.C. 701(a)(2), and are not reviewable. *Gentile v. SEC*, 974 F.3d 311, 318–19 (3d Cir. 2020), citing *Heckler v. Cheney*, 470 U.S. 821 (1985). The January 26 order denying the administrative appeal, pursuant to the Commission's rules of practice, is reviewed for an abuse of discretion. *White v. SEC*, 809 F. App'x 28, 30 (2d Cir. 2020), citing *MFS Secs. Corp. v. SEC*, 380 F.3d 611, 617 (2d Cir. 2004). To the extent the arbitrary and capricious standard applies, it "is highly deferential," "the agency's decision is entitled to a presumption of regularity," and the Court "may not substitute [its] judgment for that of the agency." *Aguayo v. Jewell*, 827 F.3d 1213, 1226 (9th Cir. 2016). If the Court reaches the merits, it will review petitioners' due process claims *de novo*. *Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1079–80 (9th Cir. 2010).

## SUMMARY OF ARGUMENT

Petitioners' appeal fails on justiciability grounds and on the merits. There are two justiciability problems. First, the appeal is not ripe because petitioners are challenging non-final orders that do not constitute the Commission's ultimate determination about the availability of the exemption for REIT II. Rule 262 is an automatic disqualification that protects investors while an investigation is pending into

15

whether a Rule 258(a) suspension order should issue. But the final determination about the exemption does not come until the end of the Rule 258(b) process, which is in progress. The commencement of that process raises the second justiciability problem—mootness. The only remedy available for petitioners' due process claim is more process, which REIT II is receiving now via the Rule 258 hearing that petitioners previously requested. Moreover, granting the relief requested, and vacating the Rule 262 disqualification, would not permit REIT II to begin offering securities immediately because the temporary suspension under Rule 258 remains in place. This Court should reject petitioners' improper request to alter the appeal and interfere with the Rule 258 process before it is completed.

Petitioners' Fifth Amendment claim also fails on the merits. They stumble at the first hurdle by failing to demonstrate that REIT II has a protected interest in continuing to offer and sell securities under the Regulation A exemption while the investigation is ongoing. Any protected interest would arise from the Securities Act and Regulation A, not the Constitution, and the Commission, with congressional imprimatur, has retained the power to halt the use of Regulation A—through suspension, disqualification, or both—for over eighty years. Rule 262 is a substantive part of the Regulation A exemption because an issuer subject to a disqualification is not eligible for the exemption, and an issuer does not have a protected interest in continuing to utilize the exemption while it is disqualified. In other analogous situations, courts have held that there is no protectable interest in avoiding a

16

temporary suspension while an investigation is ongoing, even in circumstances where post-deprivation process would be required for a more permanent suspension or exclusion. The rationale of those cases applies equally here.

Even if REIT II had a protected interest, Regulation A provides sufficient process in determining the availability of the exemption. This Court should follow the part of the D.C. Circuit's ruling in *R. A. Holman & Co. v. SEC*, 299 F.2d 127 (D.C. Cir. 1962), holding that the predecessor to Regulation A was constitutional under the Due Process Clause, particularly in light of the balance between an issuer's interest in using the exemption and the public interest in investor protection.

Applying the test in *Mathews v. Eldridge*, 424 U.S. 319 (1976), likewise leads to the conclusion that Regulation A provides sufficient process. REIT II's private interest is relatively weak because it is an issuer offering and selling securities in a highly regulated context pursuant to a conditional exemption from the registration requirement that is infused with investor-protection mechanisms, including Rules 262 and 258. The exemption is not the equivalent of a job, property, liberty, money, or a business license, the loss of which may merit more pre-deprivation process. In balance, the Commission's interest in protecting investors is powerful. A century of Supreme Court precedent, particularly in the financial sphere, allows the government to act promptly to protect the public interest, even without pre-deprivation process. In light of the balance of those interests, and the process available, there is little risk of erroneous deprivation when the disqualification was imposed automatically as the

17

result of an investigation formally authorized by the Commission. Nor is there any unreasonable delay between imposition of the temporary disqualification under Rule 262 and the opportunity for a hearing under Rule 258.

Finally, petitioners have not shown that the Commission acted arbitrarily or capriciously in issuing the formal order of investigation, which triggered the disqualification, or the order denying petitioners' administrative appeal. The decision to investigate is committed to the agency's discretion and is unreviewable. And the Commission reasonably explained why it denied petitioners' administrative appeal under the Commission's rules of practice. While petitioners challenge the reasonableness of the Rule 258(a) suspension order, their argument is premature: petitioners will have the opportunity to make their case in the upcoming hearing, and if the Commission issues an adverse ruling, they can seek judicial review.

## ARGUMENT

**I. The appeal is not justiciable because petitioners are challenging a non-final disqualification that has been mooted by intervening events.**

Petitioners' appeal suffers from two separate fatal flaws—lack of ripeness and mootness. While petitioners nominally challenge the January 13 formal order of investigation and the January 26 order denying their administrative appeal, their focus is on REIT II's disqualification under Rule 262(a)(7). Their appeal of the disqualification is not ripe because it is not a final determination as to the availability of the exemption. Moreover, it has been mooted by the ongoing process under

18

Rule 258 to determine whether the Commission will permanently suspend REIT II's use of the exemption. Petitioners effectively acknowledge these justiciability obstacles when they ask this Court to "expand" the appeal to preempt the Rule 258 hearing, which is an improper request that this Court should deny.

## A. Petitioners' disqualification is not a final agency action.

The petition should be dismissed because REIT II's disqualification is not a final determination as to the availability of the Regulation A exemption. Under Section 9(a) of the Securities Act, 15 U.S.C. 77i(a), and the Administrative Procedure Act, 5 U.S.C. 704, the Commission "order" or "action" being challenged must be final. *Watts v. SEC*, 482 F.3d 501, 505–06 (D.C. Cir. 2007) (holding that Section 9(a) requires final agency action), citing 5 U.S.C. 551(6) (defining "order" to mean "the whole or a part of a final disposition * * * of an agency"); *accord Vernazza v. SEC*, 327 F.3d 851, 857 (9th Cir.) (federal law "give[s] the Courts of Appeals jurisdiction to review final orders of the Commission"), *as amended*, 335 F.3d 1096 (9th Cir. 2003). Ripeness, which courts use "to determine whether a case presents a live case or controversy," also turns on finality. *Clark v. City of Seattle*, 899 F.3d 802, 808 (9th Cir. 2018). Particularly when applied to agency appeals, ripeness protects "agencies from judicial interference until an administrative decision has been formalized." *Abbott*

19

*Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967); *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1067 (9th Cir. 2002).[2]

To be final, an "action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature" and it "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citations and quotations omitted); *see Doe v. DEA*, 484 F.3d 561, 566–67 (D.C. Cir. 2007) (treating the finality test in *Bennett* as "complementary" to the finality analysis for ripeness). The first prong of *Bennett* requires an assessment of whether the agency "has asserted its ultimate administrative position" regarding an issue or whether the issue "'might be subject to subsequent revision' or 'further agency consideration or possible modification.'" *Fairbanks*, 543 F.3d at 592, quoting *City of San Diego v. Whitman*, 242 F.3d 1097, 1102 (9th Cir. 2001); *see Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) ("[E]ach prong of *Bennett* must be satisfied independently for agency action to be final.").

---

[2] Finality is often viewed jurisdictionally, both for purposes of the judicial review statutes at issue here and for ripeness, which derives from Article III considerations as well as prudential reasons for declining to exercise jurisdiction. *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993); *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008) ("[F]inality is a jurisdictional requirement to obtaining judicial review under the APA."); *Amalgamated Clothing & Textile Workers Union v. SEC*, 15 F.3d 254, 257 (2d Cir. 1994) (stating that if a Commission action "is not a final order," the court "lacks jurisdiction to review it").

Finality is lacking here because the Commission has not taken an "ultimate administrative position," *Fairbanks*, 543 F.3d at 592, regarding the availability of Regulation A for REIT II. Although the process for making a *final* determination as to REIT II is ongoing, petitioners are purporting to appeal a *preliminary* disqualification that went into effect automatically, pursuant to Rule 262(a)(7).

In analogous contexts, courts have held that a temporary suspension is not the consummation of agency decisionmaking. The Fifth Circuit held that an agency's initial designation of two companies as national security risks was not the consummation of the agency's process; it was tentative because the agency engaged in further proceedings before issuing a final designation. *Huawei Techs. USA v. FCC*, 2 F.4th 421, 434–35 (5th Cir. 2021). The D.C. Circuit held that an investigation into a product, a preliminary determination that the product presented a hazard, and a request for corrective action did "not constitute final agency action." *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2000); *accord Nor-Am Agric. Prods., Inc. v. Hardin*, 435 F.2d 1151, 1157 (7th Cir. 1970) (an agency's "emergency" and "temporary" suspension of the registration of seventeen fungicides was a "tentative, temporary measure" that was "preliminary to more thorough administrative consideration" of safety). And the Eighth Circuit held that an order closing a tribal casino was not a final action, even though it may have had a significant effect on the tribe's finances, because the order was temporary pending further administrative review. *In re Sac & Fox Tribe of Miss. in Iowa Casino*

21

*Litig.*, 340 F.3d 749, 756 (8th Cir. 2003); *see also* 5 U.S.C. 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.").

The disqualification here is similarly interlocutory. Rule 262(a)(7) protects investors as a condition of the offering during the pendency of an investigation into whether there is reason to believe that any of the Rule 258(a) circumstances are present. But the final determination of whether REIT II can use Regulation A will not occur until the Commission enters a permanent suspension order or vacates the temporary suspension.

To the extent petitioners are challenging the amended order of investigation that triggered Rule 262(a)(7), that order is not reviewable because "[a]n investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action." *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 781 (9th Cir. 2000). In *FTC v. Standard Oil Co.*, an agency found "reason to believe" that a company was violating federal law and instituted an adjudication. 449 U.S. 232, 241 (1980). While the Supreme Court recognized that the agency complaint was definitive as to the question of whether the agency had "reason to believe" there was a violation—language that also appears in Regulation A—the order was not final because it was not a "definitive statement of position" on whether there was a violation. *Id.* at 241, 244–45. "*Standard Oil* teaches that finality must be measured in

22

relation to the agency's entire process, not just one phase of the process." *Nasdaq v. SEC*, 1 F.4th 34, 39 (D.C. Cir. 2021).[3]

Petitioners, however, are challenging an early phase of the process. The disqualification is the result of the existence of the investigation; it comes before a determination that there is "reason to believe" that Rule 258(a) should apply to suspend the exemption. 17 C.F.R. 230.258(a). As this Court held, review of investigatory actions is "inappropriate because 'final agency action,' a prerequisite to judicial review, ha[s] not yet occurred." *O'Brien, Inc. v. SEC*, 704 F.2d 1065, 1067 n.6 (9th Cir. 1983), *rev'd on other grounds*, 467 U.S. 735 (1984). Similarly, the fact that REIT II has to defend itself before the Commission is not the type of obligation that creates final agency action. *Veldhoen v. Coast Guard*, 35 F.3d 222, 226 (5th Cir. 1994).

---

[3] The D.C. Circuit has ruled that a finality issue blocking appellate review does not open a district-court pathway, departing from what it previously said in *Holman*. In a key case, the court held that "a special review statute vesting jurisdiction in a particular court cuts off other courts' original jurisdiction in all cases covered by the special statute." *Inv. Co. Inst. (ICI) v. Fed. Rsrv. Sys.*, 551 F.2d 1270, 1279 (D.C. Cir. 1977), citing *Holman*, 299 F.2d at 130; *see also N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126, 1130 (D.C. Cir. 2015) (reaffirming *ICI*'s ruling). Later, the court confirmed that "where a statute commits review of agency action to the Court of Appeals," as Section 9 does, "any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals," even when it is deciding whether it lacks jurisdiction on finality grounds. *Telecomms. Rsch. & Action Ctr. (TRAC) v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984).

**B.** **Petitioners are now receiving process under Rule 258, which moots their appeal.**

Petitioners face another justiciability problem—mootness. *Mansourian v. Regents of Univ. of California*, 602 F.3d 957, 963 (9th Cir. 2010) (a moot case is "beyond our jurisdiction"). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Doe v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012) (cleaned up). Courts "will not entertain a petition where pending administrative proceedings or further agency action might render the case moot and judicial review completely unnecessary." *Sierra Club v. Nuclear Reg. Comm'n*, 825 F.2d 1356, 1362 (9th Cir. 1987). Given the pendency of the Rule 258 process, there are two related reasons why "there is no effective relief remaining that the court could provide": the Commission is holding the hearing that petitioners requested, and the Rule 262 disqualification has been superseded by the Rule 258 temporary suspension. *Wild Wilderness v. Allen*, 871 F.3d 719, 724 (9th Cir. 2017), quoting *S. Or. Barter Fair v. Jackson Cty.*, 372 F.3d 1128, 1134 (9th Cir. 2004).

First, the Commission is providing the only relief available. The remedy for a complaint of insufficient process is more process. *Aladdin Hotel Corp. v. Nev. Gaming Comm'n*, 637 F.2d 582, 584 (9th Cir. 1980) (absent a hearing regarding suspension of a license, "the appropriate relief would have been merely to require the Commission to give Aladdin that hearing and the necessary accompanying procedural safeguards"). As this Court stated in *Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991), "[a]

24

violation of procedural rights requires only a procedural correction, not the reinstatement of a substantive right to which the claimant may not be entitled on the merits." REIT II is currently receiving process in the Rule 258 hearing, scheduled for June 6, where REIT II will have an opportunity to argue why it should be able to continue using Regulation A.

Moreover, petitioners *requested* this process, and when an agency has provided requested action, the case becomes moot because a federal court "lacks the ability to grant effective relief" and "there is nothing left for the court to do." *Pub. Util. Comm'n v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996); *Alliance for the Wild Rockies v. Savage*, 897 F.3d 1025, 1031 (9th Cir. 2018). Petitioners argued to the Commission in their administrative appeal that a Rule 258 proceeding would provide them with "a prompt post-deprivation hearing before a neutral decision maker, and an orderly process for Commission and judicial review based on a complete record." 2-ER-44. They asserted that Rule 258 provides sufficient "procedural protections," 2-ER-44–45, and deemed Rule 258 the "appropriate procedural path," 2-ER-52. And in this Court they ask for "a constitutionally adequate adversary proceeding to determine whether the exemption is properly subject to suspension," which is what Rule 258 will provide. Br. 35; *see also* Stay Mot. (ECF No. 2) at 5 (asserting that the Commission "could at the appropriate time start suspension proceedings under SEC Rule 258"). Holding in REIT II's favor, and ordering more process, would grant "no relief beyond that already provided." *Enrico's, Inc. v. Rice*, 730 F.2d 1250, 1254 (9th Cir. 1984); *see also*

25

13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3533.2.1 & n.18 (3d ed. last updated Apr. 2021) (collecting cases).

Second, the appeal is moot because "the occurrence of intervening events renders a decision unnecessary." *City of Auburn v. United States*, 154 F.3d 1025, 1028 n.5 (9th Cir. 1998), *as amended* (Oct. 20, 1998). "Where events have occurred that prevent [the Court] from granting effective relief," the Court lacks "jurisdiction and must dismiss the appeal." *GTE Cal. v. FCC*, 39 F.3d 940, 945 (9th Cir. 1994). The intervening event here—the temporary suspension under Rule 258(a)—means that "effective relief cannot be granted." *Jerron W., Inc. v. Cal. Bd. of Equalization*, 129 F.3d 1334, 1336 (9th Cir. 1997), *as amended* (Jan. 29, 1998); *McBryde v. Comm. of Jud. Conf.*, 264 F.3d 52, 55 (D.C. Cir. 2001) ("If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot.").

The appeal effectively challenges the automatic disqualification that protects investors during the pendency of an investigation to determine whether a suspension order should be issued. Now that the Rule 258(a) order has issued, the Regulation A exemption is unavailable to REIT II because of that suspension order. If the Court were to rule that the disqualification was improper, Regulation A would remain unavailable to REIT II because of the suspension order, which cannot be challenged until the completion of the Rule 258 process. In effect, the disqualification has been

26

"superseded" by the subsequent Commission order. *Fund for Animals, Inc. v. Hogan*, 428 F.3d 1059, 1064 (D.C. Cir. 2005).

Petitioners incorrectly argue, in a short footnote, that their appeal fits within the "capable of repetition, yet evading review" exception to mootness. Br. 33 n.8. "An argument placed in a footnote of an opening brief is insufficient to raise an issue on appeal." *Rodriguez v. Airborne Express*, 265 F.3d 890, 894 n.2 (9th Cir. 2001). And, in any event, this rule "applies only in exceptional circumstances," *GTE*, 39 F.3d at 945 (cleaned up), when "(1) the challenged action is too short in duration to be fully litigated before cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again," *Bernhardt v. Los Angeles*, 279 F.3d 862, 871–72 (9th Cir. 2002).

To begin with, the final determination of the exemption's availability will not evade review because, to the extent the Commission permanently suspends the exemption, REIT II will have an opportunity to appeal that order. *Pub. Util. Comm'n*, 100 F.3d at 1459. And even assuming *arguendo* that the duration prong is satisfied, petitioners have not shown a reasonable expectation that REIT II would be subject to a future disqualification under Rule 262(a)(7).

There are two possible outcomes now that the Rule 258 process has begun. The Commission could permanently suspend the exemption, and REIT II would no longer be able to use Regulation A. Or the Commission could vacate the suspension, and REIT II would be able to resume selling securities up to the maximum amount

27

described in its offering statement. Either way, REIT II has not shown there is a "reasonable expectation" that it—and not offerors generally—will be subject to a disqualification again. *See Funbus Sys., Inc. v. Cal. Pub. Utils. Comm'n*, 801 F.2d 1120, 1131 (9th Cir. 1986) ("That other persons may litigate a similar claim does not save a case from mootness.").

### C. The Court should reject petitioners' improper request to expand the appeal to interfere with ongoing proceedings.

Instead of resolving their finality and mootness defects, petitioners multiply their justiciability problems when they ask this Court to "expand" the appeal, interfere with the ongoing Rule 258 proceeding, and "restore" the exemption so that REIT II can sell securities immediately. Br. 11, 33–35. To reiterate, the Rule 258(a) order is an interlocutory, "temporary suspension"— the final determination as to the suspension will be addressed at the hearing scheduled for June 2022. While petitioners dedicate part of their brief to disputing the grounds for the Rule 258(a) order, Br. 29–30, the proper venue for those arguments is the upcoming hearing.

Even if the Rule 258(a) order could somehow be deemed final, attempts to litigate the underlying factors for the preliminary suspension now run into the exhaustion requirement in Section 9. 15 U.S.C. 77i(a) ("No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission."); *see also Springsteen-Abbott v. SEC*, 989 F.3d 4, 7–8 (D.C. Cir. 2021) (dismissing on exhaustion grounds). Petitioners allude to the

28

futility exception for exhaustion, Br. 33–34, but a litigant may be excused from the exhaustion requirement "only when the administrative process would have been clearly useless." *Malouf v. SEC*, 933 F.3d 1248, 1257 (10th Cir. 2019) (internal quotation marks omitted). Petitioners' claim that it would be futile to file a new *waiver* request under Rule 262(b) is a non sequitur; they never explain why following Rule 258(b)—which they previously identified as providing due process—would be "clearly useless." *Id.*

Ultimately, petitioners ask this Court to ignore the Commission's preliminary investor-protection concerns and immediately let REIT II sell securities in an unregistered offering pursuant to an exemption that has fewer safeguards for investors. This request is contrary to *Raditch*'s ruling that the remedy for lack of process is more process and to the history of Regulation A, which has long linked the availability of the exemption to investor-protection provisions allowing for suspension and disqualification. *See, e.g.*, S. Rep. No. 83-1036, at 8 (discussing the Commission's authority to "promptly suspend" exemptions to prevent "fraud" or "threatened fraud"). In this area, where investor safety is "paramount," *Holman*, 299 F.2d at 132–33, petitioners should not be permitted to sell securities in advance of a hearing they requested when the Commission preliminarily found reason to believe that REIT II did not comply with Regulation A and made materially false or misleading statements.

29

**II.    REIT II does not have a protected interest in using Regulation A during an investigation into whether the exemption should be suspended.**

If the Court reaches the merits notwithstanding the justiciability defects, it should reject petitioners' constitutional arguments.  "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  *Brewster v. Bd. of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998).  "[A] plaintiff must first establish that he possessed a 'property interest' that is deserving of constitutional protection."  *Id.*, citing *Gilbert v. Homar*, 520 U.S. 924 (1997).  Petitioners' due process challenge falters at this initial step; there is no protected interest, and thus there is no need to apply *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what process is due.

**A.    Regulation A's suspension provisions are substantive conditions of REIT II's ability to use the exemption from registration.**

1.    REIT II is the only petitioner whose possible interests inform the due process analysis.  Petitioners have chosen not to "separately brief" whether REIT II has a protected interest, despite acknowledging that it is their burden to do so.  Br. 19–20 n.5.  Instead, they erroneously assert that the Commission "conceded" that there is a protected interest in its opposition to the stay motion.  Br. 23.  In that brief, however, the Commission stated that "[f]or purposes of this motion, *it is assumed*" that REIT II had a protected interest.  Stay Opp'n (ECF No. 9) at 10 (emphasis added).  Given the time and space constraints of the stay briefing, the Commission argued that

30

there was no due process violation even if REIT II had a protected interest, but it did not waive any arguments for the merits briefing.

2. The disqualification provision in Rule 262 is a substantive condition of Regulation A that forecloses REIT II's claim to a protected interest in continuing to offer and sell securities in unregistered transactions pursuant to Regulation A, Br. 23–24, during the pendency of an investigation and a hearing to determine whether to suspend the exemption. "Property interests, of course, are not created by the Constitution." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "Rather, they are created and their dimensions are defined by existing rules" that stem from an independent source of law, such as federal statutes and regulations. *Id.*

The dimensions of the interest asserted here are shaped by Regulation A, which has long been cabined by investor-protection measures that can limit its availability while an issuer is under investigation. The Commission created Regulation A pursuant to Section 3(b)(2)'s exemption from the registration process. 15 U.S.C. 77c(b)(2). The exemption is not self-executing; the Commission fashioned its requirements "by rule." *Id.* For Tier 2 offerings, Congress mandated five conditions, *id.* at 77c(b)(2)(A)–(F), and left it to the Commission to add such additional "terms, conditions, or requirements as the Commission may determine necessary in the public interest and for the protection of investors," *id.* at 77c(b)(2)(G). The Commission has crafted many such "terms, conditions, or requirements" to protect investors and

31

markets, and an issuer seeking to offer and sell securities "pursuant to Regulation A,"

17 C.F.R. 230.251(a), must comply with all of them, *id.* at 230.260(b).

One of those conditions is Rule 262. It disqualifies an issuer from using

Regulation A whenever one (or more) of eight criteria are present, such as a

conviction for certain felonies or the existence of certain court orders.

*Id.* at 230.262(a)(1)–(2) It also states that "[n]o exemption under [Regulation A] shall

be available for a sale of securities if the issuer" is, at the time of a sale, "the subject of

an investigation or proceeding to determine whether a stop order or suspension order

should be issued." *Id.* at 230.262(a)(7).

Rule 262 is woven into the substantive fabric of Regulation A. In listing the

eligibility requirements for issuers, Rule 251 states that an issuer cannot "be

disqualified under Rule 262" and still utilize the exemption. *Id.* at 230.251(b)(8). Just

as an issuer seeking to use Regulation A must be a U.S. or Canadian entity and cannot

issue certain interests in "oil or gas rights," *id.* at 230.251(b)(1), (5), an issuer cannot be

subject to a Rule 262 disqualification. And Rule 262 is no less a substantive condition

of the exemption than the requirements that "no offer of securities may be made

unless an offering statement has been filed with the Commission," *id.* at 230.251(d)(1),

that "[n]o sale of securities be made" until "the offering statement has been qualified,"

*id.* at 230.252(d)(2)(A), and that purchasers in Tier 2 offerings meet certain

requirements, *id.* at 230.252(d)(2)(C). The fact that Rule 262(a)(7) is triggered by a

discretionary action—an investigation—does not change the analysis.[4]  If anything, it only strengthens the argument that there is no protected interest in avoiding a temporary disqualification under Rule 262 while an investigation is pending.  *See infra* Sec. II.B.3 (discussing relevant cases).

Congress has authorized and legislated against the backdrop of these conditions.  Regulation A has included suspension or disqualification mechanisms since 1940, and Congress has acknowledged these provisions when amending Section 3(b).  *See, e.g.*, S. Rep. No. 83-1036, at 8 (expressly citing the Commission's authority to "promptly suspend" exemptions to prevent "fraud" or "threatened fraud").  Most recently, in 2012, Congress authorized the Commission to create "disqualification provisions" for Regulation A that were "substantially similar" to the disqualification provisions that Congress separately ordered the Commission to create for Regulation D, which include an investigation-based disqualification.  15 U.S.C. 77c(b)(2)(G)(ii).  These statutes illustrate that Rule 262 is not a separate procedural limitation applied to Regulation A; it is a substantive condition of Regulation A that the Commission created to protect investors and promote capital formation.

---

[4] The Supreme Court has recognized that an automatic trigger for a suspension, such as a suspension of a public worker upon a felony arrest, is a permissible limitation even on a protectable right "since there would be nothing to consider at the hearing except the independently verifiable fact of whether an employee had indeed been formally charged with a felony."  *Gilbert v. Homar*, 520 U.S. 924, 933 (1997).

Petitioners fail to distinguish between Regulation A, including its substantive condition that the issuer not be disqualified, and other types of property interests. While petitioners describe Regulation A as a "license," Br. 24, they disregard that an issuer's compliance with all the "terms," "conditions," and "requirements" is a prerequisite to an offering satisfying the Section 3(b) exemption such that the issuer can avoid Section 5 liability. The exemption is not akin to a business or occupational license, the suspension of which threatens the holder's livelihood. *See, e.g.*, *Bell v. Burson*, 402 U.S. 535, 539 (1971) (driver's licenses), cited at Br. 24; *Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009) (gun-dealer license); *Tur v. FAA*, 4 F.3d 766, 769 (9th Cir. 1993) (airman's certificate).[5] The unavailability of Regulation A does not preclude REIT II from investing "in real estate projects and assets across the United States," 2-ER-32, or obtaining funds through other means, including by "issu[ing] any security if it complies with full registration requirements" or by satisfying a separate exemption from registration. *Holman*, 299 F.2d at 132. Nor does disqualification directly preclude REIT II, let alone the other petitioners, from operating their business. Instead, it precludes REIT II from using one method of capital formation during the pendency of an investigation.

---

[5] Regulation A may fit within the APA's definition of a license because it implements a "statutory exemption." 5 U.S.C. 551(7). But that classification does not create a protected interest in using a "license" at all times and under all circumstances. *See* 5 U.S.C. 558(c) (allowing suspension of licenses without prior notice and opportunity to be heard when "public health, interest, or safety requires otherwise").

34

**B. Under similar facts, courts have held that there is no protected right to avoid temporary suspensions during the pendency of investigations.**

Courts have held that there is no protected property interest in analogous circumstances involving investigations and temporary suspensions.

1. Cases in the Medicare/Medicaid context provide an instructive analogy. This Court and others have ruled that physicians do not have a property interest in *continued* participation in those programs. *Erickson v. United States ex rel. Dep't of Health & Hum. Servs.*, 67 F.3d 858, 862–63 (9th Cir. 1995); *accord Shah v. Azar*, 920 F.3d 987, 998 & n.30 (5th Cir. 2019); *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017). And courts have held that there is no protected interest in avoiding *temporary* suspension of Medicare and Medicaid reimbursements pending an investigation for potential fraud, even if there is a protectable interest implicated by a *permanent* suspension. *Guzman v. Shewry*, 552 F.3d 941, 954–57 (9th Cir. 2009); *Pers. Care Prods., Inc. v. Hawkins*, 635 F.3d 155, 159 (5th Cir. 2011); *Clarinda Home Health v. Shalala*, 100 F.3d 526, 531 (8th Cir. 1996); *Yorktown Med. Labs., Inc. v. Perales*, 948 F.2d 84, 89 (2d Cir. 1991); *Peterson v. Weinberger*, 508 F.2d 45, 50 (5th Cir. 1975). There is no protected interest because temporary suspension of payments to providers pending fraud investigations is woven into the substance of the regulatory regime. *Pers. Care Prods.*, 635 F.3d at 159 ("The statutory scheme does not [create] * * * a property interest in its present reimbursement claims while past claims are under investigation for fraud."); *Yorktown Med. Labs.*, 948 F.2d at 89 (same); *Peterson*, 508 F.2d at 49–50 (same). Similarly,

35

temporary disqualification under Rule 262 is baked into Regulation A, with authorization from Congress.

Several aspects of Rule 262 find parallels in the regulations at issue in these cases. First, disqualification is not a permanent revocation. *Clarinda Home Health*, 100 F.3d at 531 (differentiating between a provider "who had been suspended from the program entirely" and temporarily withholding "payments during an ongoing investigation for acts of fraud"); *Yorktown Med. Labs.*, 948 F.2d at 89 (distinguishing temporary suspension from "withhold[ing] payment indefinitely"). Second, Rule 262 is triggered by a discretionary decision to investigate. *Id.*, citing *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 968 (2d Cir. 1988). Third, suspension is not tantamount to the denial of an occupational license or ability to make a living, even if the suspension may have financial consequences. *See Guzman*, 552 F.3d at 954; *Peterson*, 508 F.2d at 50 (stating that the withholding of potential overpayments pending an investigation is unlike welfare recipients being "deprived of their very means of existence while awaiting the outcome of a post-termination hearing").

2.    In another analogous context, a court held that no property interest was implicated when the FCC made an initial designation that two telecom providers were national security risks, which suspended their ability to receive federal subsidies. *Huawei*, 2 F.4th at 427. The Fifth Circuit rejected the argument that the initial designation triggered due process protections because that step was temporary, pending a final determination as to eligibility. *Id.* at 459–60. Similarly, REIT II had

no protected interest in continuing to offer and sell securities while Enforcement staff were investigating whether to recommend a suspension (or while the Commission, having entered a temporary suspension, determines whether to permanently suspend or vacate the exemption).

3. Finally, in *S & D Maintenance Co. v. Goldin*, a city comptroller withheld payment for services because of a pending investigation into whether a contractor violated the law. 844 F.2d at 963. The Second Circuit held that the comptroller had "unfettered discretion" to investigate possible impropriety and to withhold public money pending the outcome of an audit and investigation. *Id.* at 969. Thus, the court ruled, the contractor had "no property interest" to "prompt payment pending an investigation when the result of that very investigation will determine whether the City tenders payment or declares the contract void." *Id.*; *cf. Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."). Similarly, there is no protectable interest in avoiding a temporary disqualification that is part of the substantive rules that create the Regulation A exemption. Moreover, the initiation of the investigation that triggers the automatic disqualification is committed to the Commission's discretion. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) ("[A] statute that grants the reviewing body unfettered discretion to approve or deny an application does not create a property right.").

37

4.     Contrary to petitioners' understanding, the decision in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), does not require a contrary result.  Br. 20. In *Loudermill*, the question was whether public employees, removable only for cause, had a property interest in continued employment.  *Id.* at 547–48.  Even putting aside the difference between a job and a conditional exemption from the registration requirement for securities offerings, the Supreme Court later explained that *Loudermill* did not address whether employees have a protected interest in continuing to work while under investigation for violating a condition of the job.  *Gilbert v. Homar*, 520 U.S. 924, 929 (1997).

Nor did *Loudermill* address a situation where the availability of employment was premised upon not being disqualified pursuant to a substantive condition of the regulatory regime.  *Loudermill* instructs that "[t]he categories of substance and procedure are distinct," 470 U.S. at 541, and clarifies that no one "can insist on a hearing in order to argue that the decisionmaker should be lenient and depart from legal requirements," *id.* at 543 n.8.  Consistent with Supreme Court precedent, as well as Medicare/Medicaid and other cases described above, petitioners have no substantive right to avoid the disqualification that is expressly required by Rule 262 and that functions as a substantive limit on the exemption created by Regulation A.

38

**III.  Even if there is a protectable interest, the due process claim fails because REIT II is receiving sufficient process under Regulation A.**

Even if the Court were to assume that REIT II has a protected interest in using the exemption right now, "[p]recisely what procedures the Due Process Clause requires in any given case is a function of context." *Brewster*, 149 F.3d at 983.  Due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Gilbert*, 520 U.S. at 930 ("[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances.") (cleaned up).  In this instance, the Commission's regulations provide sufficient process under *Holman*, which decided that Regulation A's predecessor was constitutional, and under the application of the *Mathews* test.

**A.  The D.C. Circuit rejected a similar due process challenge under a previous version of Regulation A.**

The *Holman* decision should guide this Court.  In *Holman*, the Commission's temporary suspension of the Regulation A exemption then in effect "automatically disqualified" an underwriter from using Regulation A until the Commission completed proceedings to decide whether to revoke the exemption.  299 F.2d at 129.  The underwriter appealed, arguing that the disqualification violated due process.

The D.C. Circuit held that the disqualification was constitutional, observing that it "has long been recognized that where harm to the public is threatened, and the private interest infringed is reasonably deemed to be of less importance, an official

39

body can take summary action pending a later hearing." *Id.* at 131, citing *Fahey v. Mallonee*, 332 U.S. 245 (1947). Presaging the *Mathews* balancing test, *Holman* held that the Commission's "interest in protecting the public would seem to outweigh appellant's interest in being able to market small issues of securities without full registration for a temporary period while a hearing is in process." *Id.* at 132. The court emphasized that the underwriter "has not been completely put out of business" because it could, among other things, "issue any security if it complies with full registration requirements." *Id.*

The court rested its decision, in part, on the fact that Congress gave the Commission "broad rule-making powers" to "protect investors against fraud or deception made possible by constantly changing conditions," and that for "exemptions from registration, the desire of Congress to protect the public appears paramount." *Id.* at 132–33. The court explained "that the Commission's regulations" creating the "suspension power" were a "practical protection against fraud" that were "known to Congress and formed part of the basis" upon which it legislated. *Id.* at 133, citing H.R. Rep. No. 83-1542, at 17 and S. Rep. No. 83-1036, at 8, 13.

In *Goldberg v. Kelly*, 397 U.S. 254 (1970), the Supreme Court highlighted *Holman* as a way to distinguish between the process due before terminating welfare benefits, which provide the means to obtain human essentials, like food, and the process due in other situations. *Goldberg* cited *Holman* for the proposition "that some governmental benefits may be administratively terminated without affording the recipient a pre-

40

termination evidentiary hearing." *Id.* at 263 & n.10, citing *Holman*, 299 F.2d at 131.

*Holman*'s reasoning retains its persuasive force today, especially given the larger

offering amounts and expanded protections in the current iteration of Regulation A.

*Holman* teaches that the Commission's interest in protecting investors from

potential misconduct in Tier 2 offerings outweighs REIT II's interest in continuing to

use Regulation A during the pendency of an investigation into whether the exemption

should be suspended. As in *Holman*, disqualification does not halt REIT II from

engaging in commercial transactions or raising capital through other means.

Moreover, *Holman* endorses consideration of the legislation amending Section 3(b);

the most recent congressional enactments authorized the Commission to adopt

disqualifications like the one challenged here, minimizing the force of any interest

REIT II can claim.

**B.     Under the balancing test in *Mathews v. Eldridge*, the process that REIT II is receiving is constitutional.**

Applying the Supreme Court's *Mathews* test likewise demonstrates that REIT II

is receiving due process. Contrary to petitioners' contention, Br. 20, the Supreme

Court has "rejected the proposition that due process *always* requires the [government]

to provide a hearing prior to [an] initial deprivation." *Gilbert*, 520 U.S. at 930

(quotation omitted). Instead, it has "recognized, on many occasions, that where [the

government] must act quickly, or where it would be impractical to provide

predeprivation process, postdeprivation process satisfies the requirements of the Due

Process Clause." *Id.* In assessing what process is due, and when notice and an opportunity for a hearing must occur, this Court considers (i) "the private interest that will be affected by the official action," (ii) "the risk of erroneous deprivation of such interest through the procedures used," and (iii) "the Government's interest." *Mathews*, 424 U.S. at 335. Each of these factors favors the Commission here.

### 1. REIT II's interest in continuing to sell securities pursuant to the exemption while under investigation is minimal.

Even if REIT II can articulate a protected interest in using Regulation A during an investigation into whether it should be suspended, that interest is not especially weighty. The conditional nature of the exemption shapes the due process analysis because "[n]ot every deprivation of property requires the full arsenal of available procedural safeguards." *Clancy v. Off. of Foreign Assets Control*, 559 F.3d 595, 600 (7th Cir. 2009). REIT II's interest is not liberty, money, land, a job, or the means of livelihood. *Cf. Loudermill*, 470 U.S. 532 (employment); *Fuentes v. Shevin*, 407 U.S. 67 (1972) (goods); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993) (house and land). This is not "a case in which the Government seeks to deprive [anyone] of funds earmarked for life's necessities." *Graham v. Off. of Surface Mining Reclamation & Enf't*, 722 F.2d 1106, 1111 (3d Cir. 1983). And this is not a case involving revocation of a business license that would require an entity to cease operations. *Holman*, 299 F.2d at 132 (being suspended from using the Regulation A exemption is not akin to being "completely put out of business").

Critically, neither the disqualification REIT II has appealed—nor the temporary suspension under Rule 258(a) that post-dated the filing of the appeal—constitutes a final decision regarding the exemption. In *Gilbert*, the Supreme Court stated that in "determining what process is due," account must be taken of the "*finality of the deprivation*," stressing that unlike "the employee in *Loudermill*, who faced *termination*," the employee there "faced only a *temporary suspension* without pay." 520 U.S. at 932 (emphases in original). *Gilbert* labeled as "indefensible" a rule that would require pre-deprivation process before a *suspension* in all instances. *Id.* at 930. Similarly, in *Guzman*, this Court held that a decision to temporarily suspend a physician from receiving Medicaid reimbursements was not tantamount to having "revoked or suspended his license to practice medicine." 552 F.3d at 954; *accord Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 14 (1st Cir. 2011) (distinguishing between revocation of a medical license and a "license suspension" that was "provisional (not final)").

The nature of the private interest also turns on REIT II's role as a participant in the securities industry, where entities are "subject to constant and intensive government regulation." *James Madison Ltd. by Hecht v. Lud*wig, 82 F.3d 1085, 1100 (D.C. Cir. 1996) (discussing banking regulations). A "corporation claiming financial hardship" typically "does not merit as great a protection" as a recipient of government welfare. *Ritter v. Cohen*, 797 F.2d 119, 123 (3d Cir. 1986). Moreover, the asserted interest here carries less force because it is "speculative" and depends on "future

conditions." *California ex rel. Lockyer v. FERC*, 329 F.3d 700, 710 (9th Cir. 2003).

Petitioners assert that because REIT II has relied on Regulation A in the past, their

inability to offer securities right now will affect their ability to "properly conduct their

business." Br. 24. But the suspension of Regulation A does not "block their ability to

raise capital," and they fail to explain how either the disqualification or suspension of

REIT II forecloses it from raising capital through other methods, including complying

with "full registration requirements." *Holman*, 299 F.2d at 132.

### 2. The Commission has a strong interest in protecting investors.

Balanced against REIT II's interest is the Commission's significant interest in

protecting investors who purchase securities in exempt offerings that do not have all

the safeguards of the full registration process. The Commission's interest in pausing

Regulation A offerings while determining whether there are grounds for a permanent

suspension fits within the "long-established principle of due process jurisprudence"

that the "Government must sometimes be allowed to act promptly to avoid public

harm." *Cassim v. Bowen*, 824 F.2d 791, 797 n.2 (9th Cir. 1987) (collecting cases); *see*

*Xumanii Int'l Holdings Corp v. SEC*, 670 F. App'x 508, 509 (9th Cir. 2016) ("[D]ue

process rights were adequately protected by the availability of a prompt post-

deprivation review of the trading suspension."). As the Supreme Court held,

"administrative action provided through immediate cessation orders responds to

situations in which swift action is necessary to protect the public health and safety.

This is precisely the type of emergency situation in which this Court has found summary administrative action justified." *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 301 (1981) (mine disasters); *see also N. Am. Cold Storage Co. v. Chicago*, 211 U.S. 306 (1908) (seizure of food suspected of being unsafe).

Courts have upheld post-deprivation process as sufficient where the government seeks to protect against financial harm, such as "the economic disaster of a bank failure." *Fuentes*, 407 U.S. at 92 & n.26. In *Title Guaranty & Surety Co. v. Idaho*, 240 U.S. 136, 141–42 (1916), the Supreme Court held that a state may empower an agency to close an insolvent bank without waiting for judicial proceedings. In *Coffin Brothers v. Bennett*, 277 U.S. 29, 30–31 (1928), the Court upheld the government's power to place a lien on the property of a bank's stockholders to pay depositors where a post-attachment trial would serve as the hearing. The Court in *Fahey v. Mallonee*, 332 U.S. 245, 253–54 (1947), held that a post-deprivation administrative hearing was consistent with due process even though the appointment of a conservator affected private interests by seizing bank property, suspending the bank's officers, and attaching liens. And in *FDIC v. Mallen*, 486 U.S. 230, 241–42 (1988), the Court upheld the suspension of an indicted bank officer where the government conducted an administrative hearing within thirty days of a request to do so.

This Court followed this precedent in *Spiegel v. Ryan*, 946 F.2d 1435 (9th Cir. 1991), which upheld the Office of Thrift Supervision's decision to require "a former officer of a savings and loan association to make restitution in the sum of $21 million

45

pending an administrative hearing." *Id.* at 1436. *Spiegel* focused on the government's interest in "fighting insider abuse of savings institutions in order to maintain the integrity of savings and loan institutions, as well as to protect the public fisc," which insured deposits in those institutions. *Id.* at 1440. The Court "concluded that due process [did] not entitle Spiegel to a predeprivation hearing." *Id.* at 1442.

Even outside the realm of financial regulations, courts have declined to require pre-deprivation process in a wide array of fact patterns. For instance, in *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310 (9th Cir. 1989), the Court upheld a regulation that authorized suspension of petroleum permits without a hearing, impairing the plaintiff's property interests, because "swift administrative action" was "necessary in order to protect the public health and safety from violations of the state's pollution control regulations." *Id.* at 1317–18. Other Ninth Circuit decisions are in accord.[6]

The Commission's interest in protecting investors in conditional offerings under Regulation A is no less important. *See Holman*, 299 F.2d at 132–33 (describing Congress's "paramount" interest in protecting investors). Regulation A allows the Commission to protect investors in offerings that lack many of the safeguards of the normal registration process rather than letting an offering continue during an

---

[6] *E.g.*, *Recchia v. L.A. Dep't of Animal Servs.*, 889 F.3d 553, 562 (9th Cir. 2018) (animal welfare); *Greenwood v. FAA*, 28 F.3d 971, 975 (9th Cir. 1994) (designation as a pilot examiner); *Tur v. FAA*, 4 F.3d 766, 769 (9th Cir. 1993) (revocation of a helicopter pilot's certificate); *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 864 F.2d 1475, 1482–83 (9th Cir.), *as amended*, 882 F.2d 1398 (9th Cir. 1989) (flood risk).

investigation into whether that offering should be permanently halted. *See Mallen*, 486 U.S. at 240–41 (deferring to the "congressionally recognized interest" that "prompt suspension of indicted bank officers may be necessary"). To use the Supreme Court's baseline, the Commission's interest in preserving the integrity of securities offerings "is at least as significant as" the interest "in preserving the integrity of the sport of horse racing," and justifies disqualification without a pre-deprivation hearing because the Rule 258 process provides prompt notice and the opportunity to be heard. *Gilbert*, 520 U.S. at 932–33, citing *Barry v. Barchi*, 443 U.S. 55, 64 (1979) (permitting suspension of a horse trainer's license without pre-deprivation process).

### 3. Regulation A minimizes the risk of erroneous deprivation.

Under governing precedent, the available process provides assurances that the use of Regulation A will not be erroneously terminated. In *Spiegel*, this Court held that a pre-hearing, temporary restitution order based on an investigation, as opposed to a completed adjudication, provided "substantial assurance" that the order was not baseless or unwarranted. *Spiegel*, 946 F.2d at 1440; *accord James Madison Ltd.*, 82 F.3d at 1100–01 (describing the "numerous safeguards" in the agency's investigation and "internal review" process). *Spiegel* found that there were sufficient guarantees of accuracy as the result of several factors, including the relevant "statutory requirements," the fact that "the decision to issue the order was made by the head of the agency expert in these matters," and the "detailed findings of Spiegel's misconduct following a long investigation by [government] examiners, the results of which were

47

submitted to the district court under penalty of perjury." *Id.* at 1440; *see also San Geronimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465, 488–89 (1st Cir. 2012) ("The Supreme Court's jurisprudence regarding emergency procedures recognizes that even though those procedures may sometimes be invoked in error, such procedures nevertheless satisfy due process.").

Regulation A provides comparable checks against erroneous deprivation. The Commission, charged with enforcing the securities laws, issued an amended formal order directing staff to conduct an investigation, which triggered the disqualification under Rule 262(a)(7). Rule 262(b)(2) allows an issuer to seek a waiver of disqualification for "good cause," 17 C.F.R. 230.262(b)(2), and in December 2021 petitioners sought a waiver for REIT II, which was never updated and which the Commission denied for failure to show good cause. 2022 WL 810300, at *3. In *Holman*, the court factored a version of this waiver provision into its ruling that Regulation A satisfied due process, citing an issuer's ability to continue to use Regulation A if it could "make a sufficient showing of good cause." 299 F.2d at 132.

Moreover, a Rule 262 disqualification triggered by an investigation generally will lead to one of two outcomes—a Rule 258(a) proceeding or the lifting of the disqualification if the investigation does not result in a Rule 258(a) order. In this instance, the Commission, having considered REIT II's Wells submission, found "reason to believe" that there were multiple grounds justifying a temporary suspension, including failure to comply with Regulation A and the making of false or

misleading statements. The issuance of the Rule 258(a) order triggers the Rule 258(b) process, and REIT II has requested a hearing, which will result in either the exemption being revoked or REIT II again being able to use Regulation A. *Cf. Gilbert*, 520 U.S. at 935 (stating that "a short delay actually benefits the employee by allowing state officials to obtain more accurate information"). That hearing is scheduled for June 6, and an initial decision must issue within thirty days after post-hearing briefing.

During that hearing, REIT II will have the opportunity to explain why a permanent suspension should not be entered, and, if the Commission rejects that argument, REIT II may seek judicial review of the Commission's final decision. When an aggrieved party can put the government "to its proof" before a final sanction, post-suspension procedures are sufficient to protect against erroneous deprivation. *Cassim*, 824 F.2d at 799; *see also Gun S., Inc. v. Brady*, 877 F.2d 858, 867–68 (11th Cir. 1989) (holding that a ninety-day suspension on rifle imports did not violate due process because revocation of the permits could not occur without a hearing). Likewise, when a case involves "objective facts" and "prompt postdeprivation review is available for correction of administrative error," the Supreme Court has "generally required no more than that the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible government official warrants them to be." *Mackey v. Montrym*, 443 U.S. 1, 13 (1979).

49

Petitioners do not explain how a pre-disqualification process would lessen the risk of erroneous deprivation. Rule 262 is triggered automatically upon the existence of an investigation. 17 C.F.R. 230.262(a)(7). There would be little to contest at such a hearing—the existence of an investigation is not in dispute and petitioners cannot challenge an investigation. At most, a pre-deprivation hearing would serve as a forum for petitioners "to argue that the decisionmaker should be lenient and depart from legal requirements," *Loudermill*, 470 U.S. at 543 n.8, which the Due Process Clause does not require. *See Stone v. Godbehere*, 894 F.2d 1131, 1134–35 (9th Cir. 1990) (holding that "where the state has authorized a mandatory deprivation conditioned on an easily determined event," there the initiation of a divorce proceeding, "the risk of erroneous deprivation is minimal or nonexistent").

## C. REIT II is currently receiving an opportunity for a hearing regarding the suspension of the exemption.

The Rule 258 process is ongoing, which undermines petitioners' claim of delay. Petitioners speculate that the investigation is "likely to last for years," Br. 25, but the part of the investigation that created the disqualification has already reached its culmination; the Commission temporarily suspended REIT II, subject to the outcome of the Rule 258 hearing. And that hearing is scheduled to occur soon (June 6), with an initial decision required shortly after post-hearing briefing is completed. While there is some point at which a delay might become a constitutional problem, *see Mallen*, 486 U.S. at 242, this case is nowhere near that point. Only a few weeks

50

elapsed from the disqualification to the March 16 issuance of the Rule 258(a) order, REIT II started the clock by requesting a hearing the same day, 17 C.F.R. 230.258(b)(2), and the hearing is scheduled to occur roughly sixty days from the filing of this brief.[7]

To the extent this constitutes a delay at all, it is well within the range of what is constitutionally acceptable. *See, e.g.*, *Loudermill*, 470 U.S. at 547 ("The chronology of the proceedings set out in the complaint, coupled with the assertion that nine months is too long to wait, does not state a claim of a constitutional deprivation."). In *Mallen*, for instance, the Court held that the statutory requirement for a hearing was within "permissible limits" when it required the FDIC "to hold a hearing within 30 days of a written request," coupled with a sixty-day deadline for disposition. *Mallen*, 486 U.S. at 242–43; *see also Aiona v. Judiciary of State of Hawaii*, 17 F.3d 1244, 1249 (9th Cir. 1994) (ninety-day delay in reviewing license revocations was permissible); *Cassim*, 824 F.2d at 799 (no unconstitutional delay where doctor suspended from Medicare "could receive an ALJ decision four or five months after he requests a hearing").

The Commission has no interest in never-ending investigations that suspend the Regulation A exemption. If grounds exist for a permanent suspension, investors

---

[7] Petitioners overstate their supposed efforts "to expedite the process." Br. 26. If anything, they slowed the process by taking three weeks (including requesting an extension) to file their Wells submission, which pushed back the Commission's consideration of whether to issue a Rule 258(a) order or decline to do so.

should be protected as soon as possible. And if it is determined that a temporary suspension should be vacated after a hearing, that also should occur as soon as possible so the offering can resume. The Commission has expended significant effort to revitalize Regulation A, including in 2015 when it created Tier 2 offerings to enhance the attractiveness of Regulation A as a method of capital formation. The Commission's imperative was "to 'protect offerees and investors in Regulation A securities, while streamlining compliance and reducing transaction costs.'" *Lindeen*, 825 F.3d at 652, quoting *Proposed Rule Amendments for Small and Additional Issues Exemptions*, 79 Fed. Reg. 3926, 3969 (Jan. 23, 2014).

## IV.    The Commission's actions were not arbitrary and capricious.

Petitioners have not demonstrated that the Commission acted arbitrarily and capriciously with regard to the two orders under review. The January 13 formal order of investigation clarified that the investigation into REIT II included consideration of whether to seek a suspension order, which had the effect of triggering the disqualification in Rule 262(a)(7). To the extent petitioners are challenging the investigation itself, the APA precludes judicial review of agency action that "is committed to agency discretion by law," 5 U.S.C. 701(a)(2), including the commencement of investigations. *Gentile v. SEC*, 974 F.3d 311, 318–19 (3d Cir. 2020), citing *Heckler v. Cheney*, 470 U.S. 821 (1985). And to the extent petitioners are challenging the investigation's triggering of Rule 262(a)(7), it is not arbitrary and capricious for the Commission to follow its own rules. *Greater Yellowstone Coalition, Inc.*

52

*v. Servheen*, 665 F.3d 1015, 1031 (9th Cir. 2011). Indeed, "it is well settled that an agency is legally bound to respect its own regulations, and commits procedural error if it fails to abide them." *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989).

Petitioners likewise identify no error in the Commission's application of its rules of practice when it denied petitioners' administrative appeal in the January 26 order. The Commission's rules do not permit administrative appeals of investigative orders, as petitioners sought, 17 C.F.R. 201.100, and petitioners' request for review of the original investigative order, issued pursuant to delegated authority, was rendered moot by the Commission's issuance of an amended formal order of investigation. 1-ER-5. The Commission provided a "satisfactory explanation" for declining to reach the merits of the appeal under its rules of practice, *Friends of Animals v. Haaland*, 997 F.3d 1010, 1015 (9th Cir. 2021), and petitioners do not contend that the Commission erroneously applied those rules.

Rather, petitioners mainly argue that the Commission gave insufficient consideration to the supposed harm caused by disqualification. Br. 31–32. But before the Commission, petitioners offered the same "speculative" assertions of harm they provide here, which appear to relate to "entities other than REIT II." 2022 WL 810300, at *3. For instance, petitioners referred to supposed harm to "30,000 investors," Br. 16, but REIT II does not appear to have that many investors, and it remains unclear why REIT II's inability to sell securities *immediately* will cause the harm they describe. Moreover, there is reason to believe that REIT II's offering

statement and solicitation materials do not identify such risk of harm, and if the assertions of investor harm are accepted as true, it underscores the Commission's belief that various representations in REIT II's offering circular and on REIT II's website may be materially misleading. *Id.*

Ultimately, petitioners miss the point of the protective provisions that Congress expressly authorized the Commission to adopt. They serve the interests of investors during the pendency of an investigation into whether an exemption should be suspended (subject to a "good cause" showing during the waiver process). If the Commission were *required* to permit issuers to continue to offer and sell securities during the pendency of an investigation merely because an issuer claims that current investors will be harmed unless more money is immediately obtained from new investors, it would contravene the investor-protection function of the suspension and disqualification provisions that have been a part of Regulation A for eighty years. *See Goldberg*, 397 U.S. at 263 & n.10, citing *Holman*, 299 F.2d at 131.

## CONCLUSION

The Court should dismiss the petition on ripeness or mootness grounds. If it reaches the merits, it should deny the petition for review.

54

Respectfully submitted,

/s/  Daniel T. Young

DAN M. BERKOVITZ
General Counsel

MICHAEL A. CONLEY
Solicitor

DANIEL T. YOUNG
Attorney

JEFFREY A. BERGER
Senior Litigation Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C.  20549
(202) 551-3078 (Young)
youngda@sec.gov

April 8, 2022

55

## Figure 1:  Disqualifications and Suspensions Under Regulation A



56

# CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number**          22-70023

I am the attorney or self-represented party.

**This brief contains 13,866 words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief:

[X] complies with the word limit of Cir. R. 32-1.

**Signature:**          /s/ Daniel T. Young          **Date:**          April 8, 2022

## STATEMENT OF RELATED CASES

**9th Cir. Case Number**          22-70023

The undersigned attorney or self-represented party states the following:

[ X ]   I am unaware of any related cases currently pending in this court.

[   ]   I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[   ]   I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:


**Signature:**          /s/ Daniel T. Young          **Date:**          April 8, 2022

58

# STATUTORY AND REGULATORY ADDENDUM

# ADDENDUM

# TABLE OF CONTENTS

**Statute or Regulation**                                                                        **Page**

Section 3 of the Securities Act of 1933 (2020),
    15 U.S.C. 77c ........................................................................................ Add. 1

Section 3 of the Securities Act of 1933 (1933),
    Pub. L. No. 73-22, § 3, 48 Stat. 74, 75–77 ........................................... Add. 4

Section 5 of the Securities Act of 1933 (2020),
    15 U.S.C. 77e ........................................................................................ Add. 8

Section 9 of the Securities Act of 1933 (2020),
    15 U.S.C. 77i ......................................................................................... Add. 9

Section 926 of the Dodd-Frank Act,
    Pub. L. No. 111-203, § 926, 124 Stat. 1376, 1851 (2010) ................................ Add. 11

SEC Regulation A,
    Rules 251–263, 17 C.F.R. 230.251–230.263 (2021) ......................................... Add. 12

SEC Rules of Practice,
    Rule 100, 17 C.F.R. 201.100 (2021) ................................................................. Add. 26



# Section 3 of the Securities Act of 1933 (2020)

111–203, title VII, §762(c)(1), July 21, 2010, 124 Stat. 1759.)

### AMENDMENTS

2010—Subsec. (a). Pub. L. 111–203, §762(c)(1)(A), struck out subsec. (a) and reserved subsec. (a) designation. Text read as follows: "The definition of 'security' in section 77b(a)(1) of this title does not include any non-security-based swap agreement (as defined in section 206C of the Gramm-Leach-Bliley Act)."

Subsec. (b). Pub. L. 111–203, §762(c)(1)(B), substituted "(as defined in section 78c(a)(78) of this title)" for "(as defined in section 206B of the Gramm-Leach-Bliley Act)" wherever appearing.

### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the later of 360 days after July 21, 2010, or, to the extent a provision of subtitle B (§§761–774) of title VII of Pub. L. 111–203 requires a rulemaking, not less than 60 days after publication of the final rule or regulation implementing such provision of subtitle B, see section 774 of Pub. L. 111–203, set out as a note under section 77b of this title.

### § 77c. Classes of securities under this subchapter

#### (a) Exempted securities

Except as hereinafter expressly provided, the provisions of this subchapter shall not apply to any of the following classes of securities:

(1) Reserved.

(2) Any security issued or guaranteed by the United States or any territory thereof, or by the District of Columbia, or by any State of the United States, or by any political subdivision of a State or territory, or by any public instrumentality of one or more States or territories, or by any person controlled or supervised by and acting as an instrumentality of the Government of the United States pursuant to authority granted by the Congress of the United States; or any certificate of deposit for any of the foregoing; or any security issued or guaranteed by any bank; or any security issued by or representing an interest in or a direct obligation of a Federal Reserve bank; or any interest or participation in any common trust fund or similar fund that is excluded from the definition of the term "investment company" under section 3(c)(3) of the Investment Company Act of 1940 [15 U.S.C. 80a–3(c)(3)]; or any security which is an industrial development bond (as defined in section 103(c)(2)[1] of title 26) the interest on which is excludable from gross income under section 103(a)(1)[1] of title 26 if, by reason of the application of paragraph (4) or (6) of section 103(c)[1] of title 26 (determined as if paragraphs (4)(A), (5), and (7) were not included in such section 103(c)),[1] paragraph (1) of such section 103(c)[1] does not apply to such security; or any interest or participation in a single trust fund, or in a collective trust fund maintained by a bank, or any security arising out of a contract issued by an insurance company, which interest, participation, or security is issued in connection with (A) a stock bonus, pension, or profit-sharing plan which meets the requirements for qualification under section 401 of title 26, (B) an annuity plan which meets the

requirements for the deduction of the employer's contributions under section 404(a)(2) of title 26, (C) a governmental plan as defined in section 414(d) of title 26 which has been established by an employer for the exclusive benefit of its employees or their beneficiaries for the purpose of distributing to such employees or their beneficiaries the corpus and income of the funds accumulated under such plan, if under such plan it is impossible, prior to the satisfaction of all liabilities with respect to such employees and their beneficiaries, for any part of the corpus or income to be used for, or diverted to, purposes other than the exclusive benefit of such employees or their beneficiaries, or (D) a church plan, company, or account that is excluded from the definition of an investment company under section 3(c)(14) of the Investment Company Act of 1940 [15 U.S.C. 80a–3(c)(14)], other than any plan described in subparagraph (A), (B), (C), or (D) of this paragraph (i) the contributions under which are held in a single trust fund or in a separate account maintained by an insurance company for a single employer and under which an amount in excess of the employer's contribution is allocated to the purchase of securities (other than interests or participations in the trust or separate account itself) issued by the employer or any company directly or indirectly controlling, controlled by, or under common control with the employer, (ii) which covers employees some or all of whom are employees within the meaning of section 401(c)(1) of title 26 (other than a person participating in a church plan who is described in section 414(e)(3)(B) of title 26), or (iii) which is a plan funded by an annuity contract described in section 403(b) of title 26 (other than a retirement income account described in section 403(b)(9) of title 26, to the extent that the interest or participation in such single trust fund or collective trust fund is issued to a church, a convention or association of churches, or an organization described in section 414(e)(3)(A) of title 26 establishing or maintaining the retirement income account or to a trust established by any such entity in connection with the retirement income account). The Commission, by rules and regulations or order, shall exempt from the provisions of section 77e of this title any interest or participation issued in connection with a stock bonus, pension, profit-sharing, or annuity plan which covers employees some or all of whom are employees within the meaning of section 401(c)(1) of title 26, if and to the extent that the Commission determines this to be necessary or appropriate in the public interest and consistent with the protection of investors and the purposes fairly intended by the policy and provisions of this subchapter. For purposes of this paragraph, a security issued or guaranteed by a bank shall not include any interest or participation in any collective trust fund maintained by a bank; and the term "bank" means any national bank, or banking institution organized under the laws of any State, territory, or the District of Columbia, the business of which is substantially confined to banking and is supervised by the State or territorial bank-

---

[1] See References in Text note below.

ing commission or similar official; except that in the case of a common trust fund or similar fund, or a collective trust fund, the term ''bank'' has the same meaning as in the Investment Company Act of 1940 [15 U.S.C. 80a–1 et seq.];

(3) Any note, draft, bill of exchange, or banker's acceptance which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited;

(4) Any security issued by a person organized and operated exclusively for religious, educational, benevolent, fraternal, charitable, or reformatory purposes and not for pecuniary profit, and no part of the net earnings of which inures to the benefit of any person, private stockholder, or individual, or any security of a fund that is excluded from the definition of an investment company under section 3(c)(10)(B) of the Investment Company Act of 1940 [15 U.S.C. 80a–3(c)(10)(B)];

(5) Any security issued (A) by a savings and loan association, building and loan association, cooperative bank, homestead association, or similar institution, which is supervised and examined by State or Federal authority having supervision over any such institution; or (B) by (i) a farmer's cooperative organization exempt from tax under section 521 of title 26, (ii) a corporation described in section 501(c)(16) of title 26 and exempt from tax under section 501(a) of title 26, or (iii) a corporation described in section 501(c)(2) of title 26 which is exempt from tax under section 501(a) of title 26 and is organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization or corporation described in clause (i) or (ii);

(6) Any interest in a railroad equipment trust. For purposes of this paragraph ''interest in a railroad equipment trust'' means any interest in an equipment trust, lease, conditional sales contract, or other similar arrangement entered into, issued, assumed, guaranteed by, or for the benefit of, a common carrier to finance the acquisition of rolling stock, including motive power;

(7) Certificates issued by a receiver or by a trustee or debtor in possession in a case under title 11, with the approval of the court;

(8) Any insurance or endowment policy or annuity contract or optional annuity contract, issued by a corporation subject to the supervision of the insurance commissioner, bank commissioner, or any agency or officer performing like functions, of any State or Territory of the United States or the District of Columbia;

(9) Except with respect to a security exchanged in a case under title 11, any security exchanged by the issuer with its existing security holders exclusively where no commission or other remuneration is paid or given directly or indirectly for soliciting such exchange;

(10) Except with respect to a security exchanged in a case under title 11, any security which is issued in exchange for one or more bona fide outstanding securities, claims or property interests, or partly in such exchange and partly for cash, where the terms and conditions of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear, by any court, or by any official or agency of the United States, or by any State or Territorial banking or insurance commission or other governmental authority expressly authorized by law to grant such approval;

(11) Any security which is a part of an issue offered and sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory.

(12) Any equity security issued in connection with the acquisition by a holding company of a bank under section 1842(a) of title 12 or a savings association under section 1467a(e) of title 12, if—

(A) the acquisition occurs solely as part of a reorganization in which security holders exchange their shares of a bank or savings association for shares of a newly formed holding company with no significant assets other than securities of the bank or savings association and the existing subsidiaries of the bank or savings association;

(B) the security holders receive, after that reorganization, substantially the same proportional share interests in the holding company as they held in the bank or savings association, except for nominal changes in shareholders' interests resulting from lawful elimination of fractional interests and the exercise of dissenting shareholders' rights under State or Federal law;

(C) the rights and interests of security holders in the holding company are substantially the same as those in the bank or savings association prior to the transaction, other than as may be required by law; and

(D) the holding company has substantially the same assets and liabilities, on a consolidated basis, as the bank or savings association had prior to the transaction.

For purposes of this paragraph, the term ''savings association'' means a savings association (as defined in section 1813(b) of title 12) the deposits of which are insured by the Federal Deposit Insurance Corporation.

(13) Any security issued by or any interest or participation in any church plan, company or account that is excluded from the definition of an investment company under section 3(c)(14) of the Investment Company Act of 1940 [15 U.S.C. 80a–3(c)(14)].

(14) Any security futures product that is—

(A) cleared by a clearing agency registered under section 78q–1 of this title or exempt from registration under subsection (b)(7) of such section 78q–1; and

(B) traded on a national securities exchange or a national securities association registered pursuant to section 78o–3(a) of this title.

## (b) Additional exemptions

### (1) Small issues exemptive authority

The Commission may from time to time by its rules and regulations, and subject to such terms and conditions as may be prescribed therein, add any class of securities to the securities exempted as provided in this section, if it finds that the enforcement of this subchapter with respect to such securities is not necessary in the public interest and for the protection of investors by reason of the small amount involved or the limited character of the public offering; but no issue of securities shall be exempted under this subsection where the aggregate amount at which such issue is offered to the public exceeds $5,000,000.

### (2) Additional issues

The Commission shall by rule or regulation add a class of securities to the securities exempted pursuant to this section in accordance with the following terms and conditions:

(A) The aggregate offering amount of all securities offered and sold within the prior 12-month period in reliance on the exemption added in accordance with this paragraph shall not exceed $50,000,000.

(B) The securities may be offered and sold publicly.

(C) The securities shall not be restricted securities within the meaning of the Federal securities laws and the regulations promulgated thereunder.

(D) The civil liability provision in section 77l(a)(2) of this title shall apply to any person offering or selling such securities.

(E) The issuer may solicit interest in the offering prior to filing any offering statement, on such terms and conditions as the Commission may prescribe in the public interest or for the protection of investors.

(F) The Commission shall require the issuer to file audited financial statements with the Commission annually.

(G) Such other terms, conditions, or requirements as the Commission may determine necessary in the public interest and for the protection of investors, which may include—

(i) a requirement that the issuer prepare and electronically file with the Commission and distribute to prospective investors an offering statement, and any related documents, in such form and with such content as prescribed by the Commission, including audited financial statements, a description of the issuer's business operations, its financial condition, its corporate governance principles, its use of investor funds, and other appropriate matters; and

(ii) disqualification provisions under which the exemption shall not be available to the issuer or its predecessors, affiliates, officers, directors, underwriters, or other related persons, which shall be substantially similar to the disqualification provisions contained in the regulations adopted in accordance with section 926 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (15 U.S.C. 77d note).

### (3) Limitation

Only the following types of securities may be exempted under a rule or regulation adopted pursuant to paragraph (2): equity securities, debt securities, and debt securities convertible or exchangeable to equity interests, including any guarantees of such securities.

### (4) Periodic disclosures

Upon such terms and conditions as the Commission determines necessary in the public interest and for the protection of investors, the Commission by rule or regulation may require an issuer of a class of securities exempted under paragraph (2) to make available to investors and file with the Commission periodic disclosures regarding the issuer, its business operations, its financial condition, its corporate governance principles, its use of investor funds, and other appropriate matters, and also may provide for the suspension and termination of such a requirement with respect to that issuer.

### (5) Adjustment

Not later than 2 years after April 5, 2012,[1] and every 2 years thereafter, the Commission shall review the offering amount limitation described in paragraph (2)(A) and shall increase such amount as the Commission determines appropriate. If the Commission determines not to increase such amount, it shall report to the Committee on Financial Services of the House of Representatives and the Committee on Banking, Housing, and Urban Affairs of the Senate on its reasons for not increasing the amount.

## (c) Securities issued by small investment company

The Commission may from time to time by its rules and regulations and subject to such terms and conditions as may be prescribed therein, add to the securities exempted as provided in this section any class of securities issued by a small business investment company under the Small Business Investment Act of 1958 [15 U.S.C. 661 et seq.] if it finds, having regard to the purposes of that Act, that the enforcement of this subchapter with respect to such securities is not necessary in the public interest and for the protection of investors.

(May 27, 1933, ch. 38, title I, §3, 48 Stat. 75; June 6, 1934, ch. 404, title II, §202, 48 Stat. 906; Feb. 4, 1887, ch. 104, title II, §214, as added Aug. 9, 1935, ch. 498, 49 Stat. 557; amended June 29, 1938, ch. 811, §15, 52 Stat. 1240; May 15, 1945, ch. 122, 59 Stat. 167; Aug. 10, 1954, ch. 667, title I, §5, 68 Stat. 684; Pub. L. 85–699, title III, §307(a), Aug. 21, 1958, 72 Stat. 694; Pub. L. 91–373, title IV, §401(a), Aug. 10, 1970, 84 Stat. 718; Pub. L. 91–547, §27(b), (c), Dec. 14, 1970, 84 Stat. 1434; Pub. L. 91–565, Dec. 19, 1970, 84 Stat. 1480; Pub. L. 91–567, §6(a), Dec. 22, 1970, 84 Stat. 1498; Pub. L. 94–210, title III, §308(a)(1), (3), Feb. 5, 1976, 90 Stat. 56, 57; Pub. L. 95–283, §18, May 21, 1978, 92 Stat. 275; Pub. L. 95–425, §2, Oct. 6, 1978, 92 Stat. 962; Pub. L. 95–598, title III, §306, Nov. 6, 1978, 92 Stat. 2674; Pub. L. 96–477, title III, §301, title VII, §701, Oct. 21, 1980, 94 Stat. 2291, 2294; Pub. L. 97–261, §19(d), Sept. 20, 1982, 96 Stat. 1121; Pub. L. 99–514, §2,

VerDate Oct 09 2002   10:22 Oct 12, 2021   Jkt 000000   PO 00000   Frm 00111   Fmt 5800   Sfmt 5800   D:\OLRC\DATA\PRINT\2018SUPP220\OUTPUT\PCC\FOLIOS\USC15.20   PROD

Add. 3

Section 3 of the Securities Act of 1933 (1933)

74      73d CONGRESS.   SESS. I.   CH. 38.   MAY 27, 1933.

[CHAPTER 38.]

**AN ACT**

*May 27, 1933.*
*[H.R. 5480.]*
*[Public, No. 22.]*

To provide full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof, and for other purposes.

*Securities Act of 1933.*
*Post, p. 1026.*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

## TITLE I

### SHORT TITLE

*Title cited.*

SECTION 1. This title may be cited as the " Securities Act of 1933 ".

### DEFINITIONS

*Definitions.*

SEC. 2. When used in this title, unless the context otherwise requires—

*"Security."*
*Post, p 905.*

(1) The term " security " means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of interest in property, tangible or intangible, or, in general, any instrument commonly known as a security, or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing.

*'Person."*

(2) The term " person " means an individual, a corporation, a partnership, an association, a joint-stock company, a trust, any unincorporated organization, or a government or political subdivision thereof.

*"Trust."*

As used in this paragraph the term " trust " shall include only a trust where the interest or interests of the beneficiary or beneficiaries are evidenced by a security.

*"Sale," etc.*

(3) The term " sale ", " sell ", " offer to sell ", or " offer for sale " shall include every contract of sale or disposition of, attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value; except that such terms shall not include

*Preliminaries not included.*

preliminary negotiations or agreements between an issuer and any underwriter.

*Security given with purchase considered part of subject.*

Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing, shall be conclusively presumed to constitute a part of the subject of such

*Issue of security with right to convert.*

purchase and to have been sold for value. The issue or transfer of a right or privilege, when originally issued or transferred with a security, giving the holder of such security the right to convert such security into another security of the same issuer or of another person, or giving a right to subscribe to another security of the same issuer or of another person, which right cannot be exercised until some

*When conversion right exercised.*

future date, shall not be deemed to be a sale of such other security; but the issue or transfer of such other security upon the exercise of such right of conversion or subscription shall be deemed a sale of such other security.

*"Issuer."*

(4) The term " issuer " means every person who issues or proposes to issue any security or who guarantees a security either as to principal or income; except that with respect to certificates of deposit, voting-trust certificates, or collateral-trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a board of directors (or persons performing similar functions) or of the fixed, restricted management, or unit type, the

term " issuer " means the person or persons performing the acts and assuming the duties of depositor or manager pursuant to the provisions of the trust or other agreement or instrument under which such securities are issued; and except that with respect to equipment-trust certificates or like securities, the term " issuer " means the person by whom the equipment or property is or is to be used.

*Equipment-trust securities.*

(5) The term " Commission " means the Federal Trade Commission.

*"Commission "*

(6) The term " Territory " means Alaska, Hawaii, Puerto Rico, the Philippine Islands, Canal Zone, the Virgin Islands, and the insular possessions of the United States.

*"Territory."*

(7) The term " interstate commerce " means trade or commerce in securities or any transportation or communication relating thereto among the several States or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia.

*"Interstate commerce."*

(8) The term " registration statement " means the statement provided for in section 6. and includes any amendment thereto and any report, document, or memorandum accompanying such statement or incorporated therein by reference.

*"Registration statement."*
*Post, p. 78.*

(9) The term " write " or " written " shall include printed, lithographed, or any means of graphic communication.

*"Write" or "written."*

(10) The term " prospectus " means any prospectus, notice, circular, advertisement, letter, or communication. written or by radio, which offers any security for sale; except that (a) a communication shall not be deemed a prospectus if it is proved that prior to such communication a written prospectus meeting the requirements of section 10 was received, by the person to whom the communication was made, from the person making such communication or his principal, and (b) a notice, circular, advertisement, letter, or communication in respect of a security shall not be deemed to be a prospectus if it states from whom a written prospectus meeting the requirements of section 10 may be obtained and, in addition, does no more than identify the security, state the price thereof, and state by whom orders will be executed.

*"Prospectus."*

*Exceptions.*

*Post, pp. 81, 905.*

(11) The term " underwriter " means any person who has purchased from an issuer with a view to, or sells for an issuer in connection with, the distribution of any security. or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph the term " issuer " shall include, in addition to an issuer. any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

*"Underwriter."*

*Persons not included.*

*"Issuer."*

(12) The term " dealer " means any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying. selling, or otherwise dealing or trading in securities issued by another person.

*"Dealer."*

## EXEMPTED SECURITIES

Sec. 3. (a) Except as hereinafter expressly provided, the provisions of this title shall not apply to any of the following classes of securities:

*Exempted securities.*

**76**          73d CONGRESS.  SESS. I.  CH. 38.  MAY 27, 1933.

Prior sale.

New offering excluded.

(1) Any security which, prior to or within sixty days after the enactment of this title, has been sold or disposed of by the issuer or bona fide offered to the public, but this exemption shall not apply to any new offering of any such security by an issuer or underwriter subsequent to such sixty days;

Securities guaranteed by United States, State, or political subdivision, etc.
*Post,* p. 906.

Government corporations.

National, etc., banks.

Federal reserve bank obligations.

Current transactions.

(2) Any security issued or guaranteed by the United States or any Territory thereof, or by the District of Columbia, or by any State of the United States, or by any political subdivision of a State or Territory, or by any public instrumentality of one or more States or Territories exercising an essential governmental function, or by any corporation created and controlled or supervised by and acting as an instrumentality of the Government of the United States pursuant to authority granted by the Congress of the United States, or by any national bank, or by any banking institution organized under the laws of any State or Territory, the business of which is substantially confined to banking and is supervised by the State or territorial banking commission or similar official; or any security issued by or representing an interest in or a direct obligation of a Federal reserve bank;

Short-term paper.

(3) Any note, draft, bill of exchange, or banker's acceptance which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited;

Religious, etc., organizations.
*Post,* p. 906.

(4) Any security issued by a corporation organized and operated exclusively for religious, educational, benevolent, fraternal, charitable, or reformatory purposes and not for pecuniary profit, and no part of the net earnings of which inures to the benefit of any person, private stockholder, or individual;

Building and loan associations, etc., where business substantially confined to members.

Exception.

(5) Any security issued by a building and loan association, homestead association, savings and loan association, or similar institution, substantially all the business of which is confined to the making of loans to members (but the foregoing exemption shall not apply with respect to any such security where the issuer takes from the total amount paid or deposited by the purchaser, by way of any fee, cash value or other device whatsoever, either upon termination of the investment at maturity or before maturity, an aggregate amount in excess of 3 per centum of the face value of such security), or any security issued by a farmers' cooperative association as defined in paragraphs (12), (13), and (14) of section 103 of the Revenue Act of 1932;

Farmers' cooperatives.
Vol. 47, pp. 193, 194.

Common carriers.
Vol. 41, p. 494.
U.S.C., p. 1670.

(6) Any security issued by a common carrier which is subject to the provisions of section 20a of the Interstate Commerce Act, as amended;

Certificates in bankruptcy proceedings.

(7) Certificates issued by a receiver or by a trustee in bankruptcy, with the approval of the court;

Annuity contracts, etc.
*Post,* p. 906.

(8) Any insurance or endowment policy or annuity contract or optional annuity contract, issued by a corporation subject to the supervision of the insurance commissioner, bank commissioner, or any agency or officer performing like functions, of any State or Territory of the United States or the District of Columbia.

Additional classes permitted.

(b) The Commission may from time to time by its rules and regulations, and subject to such terms and conditions as may be prescribed therein, add any class of securities to the securities exempted as provided in this section, if it finds that the enforcement of this title with respect to such securities is not necessary in the public interest and for the protection of investors by reason of the small amount

Add. 6

73d CONGRESS. SESS. I. CH. 38. MAY 27, 1933. 77

involved or the limited character of the public offering; but no issue of securities shall be exempted under this subsection where the aggregate amount at which such issue is offered to the public exceeds $100,000.

*Restriction.*

### EXEMPTED TRANSACTIONS

SEC. 4. The provisions of section 5 shall not apply to any of the following transactions:

*Exempted transactions.*

(1) Transactions by any person other than an issuer, underwriter, or dealer; transactions by an issuer not with or through an underwriter and not involving any public offering; or transactions by a dealer (including an underwriter no longer acting as an underwriter in respect of the security involved in such transaction), except transactions within one year after the last date upon which the security was bona fide offered to the public by the issuer or by or through an underwriter (excluding in the computation of such year any time during which a stop order issued under section 8 is in effect as to the security), and except transactions as to securities constituting the whole or a part of an unsold allotment to or subscription by such dealer as a participant in the distribution of such securities by the issuer or by or through an underwriter.

*By individuals.*
*Post,* p. 906.

*Post,* p. 79.

(2) Brokers' transactions, executed upon customers' orders on any exchange or in the open or counter market, but not the solicitation of such orders.

*Brokers' transactions.*

(3) The issuance of a security of a person exchanged by it with its existing security holders exclusively, where no commission or other remuneration is paid or given directly or indirectly in connection with such exchange; or the issuance of securities to the existing security holders or other existing creditors of a corporation in the process of a bona fide reorganization of such corporation under the supervision of any court, either in exchange for the securities of such security holders or claims of such creditors or partly for cash and partly in exchange for the securities or claims of such security holders or creditors.

*Issuance of securities to existing security holders, creditors, etc.*

### PROHIBITIONS RELATING TO INTERSTATE COMMERCE AND THE MAILS

SEC. 5. (a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

*Prohibitions relating to interstate commerce and the mails.*

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell or offer to buy such security through the use or medium of any prospectus or otherwise; or

*Transmission of broker's prospectus, etc.*

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

*Transporting such security for sale or delivery after sale.*

(b) It shall be unlawful for any person, directly or indirectly—

*Unlawful to transmit.*

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to carry or transmit any prospectus relating to any security registered under this title, unless such prospectus meets the requirements of section 10; or

*Prospectus relating to registered security.*

*Post,* p. 81.

(2) to carry or to cause to be carried through the mails or in interstate commerce any such security for the purpose of sale or for delivery after sale, unless accompanied or preceded by a prospectus that meets the requirements of section 10.

*Security.*

(c) The provisions of this section relating to the use of the mails shall not apply to the sale of any security where the issue of which

*Intrastate sales excluded.*
*Post,* p. 906.

Add. 7

be calculated in accordance with any rules of the Commission under this subchapter regarding the calculation of the income and net worth, respectively, of an accredited investor.

(May 27, 1933, ch. 38, title I, §4A, as added Pub. L. 112–106, title III, §302(b), Apr. 5, 2012, 126 Stat. 315.)

### REFERENCES IN TEXT

Section 77d(6) of this title, referred to in text, was redesignated section 77d(a)(6) of this title by Pub. L. 112–106, title II, §201(b)(1), (c)(1), Apr. 5, 2012, 126 Stat. 314.

## § 77e. Prohibitions relating to interstate commerce and the mails

### (a) Sale or delivery after sale of unregistered securities

Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

### (b) Necessity of prospectus meeting requirements of section 77j of this title

It shall be unlawful for any person, directly or indirectly—

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to carry or transmit any prospectus relating to any security with respect to which a registration statement has been filed under this subchapter, unless such prospectus meets the requirements of section 77j of this title; or

(2) to carry or cause to be carried through the mails or in interstate commerce any such security for the purpose of sale or for delivery after sale, unless accompanied or preceded by a prospectus that meets the requirements of subsection (a) of section 77j of this title.

### (c) Necessity of filing registration statement

It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title.

### (d) Limitation

Notwithstanding any other provision of this section, an emerging growth company or any person authorized to act on behalf of an emerging growth company may engage in oral or written communications with potential investors that are qualified institutional buyers or institutions that are accredited investors, as such terms are respectively defined in section 230.144A and section 230.501(a) of title 17, Code of Federal Regulations, or any successor thereto, to determine whether such investors might have an interest in a contemplated securities offering, either prior to or following the date of filing of a registration statement with respect to such securities with the Commission, subject to the requirement of subsection (b)(2).

### (e) Security-based swaps

Notwithstanding the provisions of section 77c or 77d of this title, unless a registration statement meeting the requirements of section 77j(a) of this title is in effect as to a security-based swap, it shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, offer to buy or purchase or sell a security-based swap to any person who is not an eligible contract participant as defined in section 1a(18) of title 7.

(May 27, 1933, ch. 38, title I, §5, 48 Stat. 77; June 6, 1934, ch. 404, title II, §204, 48 Stat. 906; Aug. 10, 1954, ch. 667, title I, §7, 68 Stat. 684; Pub. L. 111–203, title VII, §768(b), July 21, 2010, 124 Stat. 1801; Pub. L. 112–106, title I, §105(c), Apr. 5, 2012, 126 Stat. 311.)

### AMENDMENTS

2012—Subsecs. (d), (e). Pub. L. 112–106 added subsec. (d) and redesignated former subsec. (d) as (e).

2010—Subsec. (d). Pub. L. 111–203 added subsec. (d).

1954—Subsec. (a)(1). Act Aug. 10, 1954, struck out "or offer to buy" after "to sell".

Subsec. (b). Act Aug. 10, 1954, in par. (1) substituted "with respect to which a registration statement has been filed" for "registered" and in par. (2) omitted "to" after "to carry or" and inserted "subsection (a) of" before "section 77j of this title".

Subsec. (c). Act Aug. 10, 1954, added subsec. (c).

1934—Act June 6, 1934, repealed subsec. (c), the provisions of which were replaced by section 77c(a)(11) of this title.

### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the later of 360 days after July 21, 2010, or, to the extent a provision of subtitle B (§§761–774) of title VII of Pub. L. 111–203 requires a rulemaking, not less than 60 days after publication of the final rule or regulation implementing such provision of subtitle B, see section 774 of Pub. L. 111–203, set out as a note under section 77b of this title.

### EFFECTIVE DATE OF 1954 AMENDMENT

Amendment by act Aug. 10, 1954, effective 60 days after Aug. 10, 1954, see note under section 77b of this title.

### ENCOURAGING EMPLOYEE OWNERSHIP

Pub. L. 115–174, title V, §507, May 24, 2018, 132 Stat. 1363, provided that: "Not later than 60 days after the date of the enactment of this Act [May 24, 2018], the Securities and Exchange Commission shall revise section 230.701(e) of title 17, Code of Federal Regulations, so as to increase from $5,000,000 to $10,000,000 the aggregate sales price or amount of securities sold during any consecutive 12-month period in excess of which the issuer is required under such section to deliver an additional disclosure to investors. The Commission shall index for inflation such aggregate sales price or amount every 5

VerDate Oct 09 2002   10:22 Oct 12, 2021   Jkt 000000   PO 00000   Frm 00121   Fmt 5800   Sfmt 5800   D:\OLRC\DATA\PRINT\2018SUPP220\OUTPUT\PCC\FOLIOS\USC15.20   PROD

Add. 8

# Section 9 of the Securities Act of 1933 (2020)



**(3) No automatic stay of temporary order**

The commencement of proceedings under paragraph (2) of this subsection shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.

**(4) Exclusive review**

Section 77i(a) of this title shall not apply to a temporary order entered pursuant to this section.

**(e) Authority to enter order requiring accounting and disgorgement**

In any cease-and-desist proceeding under subsection (a), the Commission may enter an order requiring accounting and disgorgement, including reasonable interest. The Commission is authorized to adopt rules, regulations, and orders concerning payments to investors, rates of interest, periods of accrual, and such other matters as it deems appropriate to implement this subsection.

**(f) Authority of the Commission to prohibit persons from serving as officers or directors**

In any cease-and-desist proceeding under subsection (a), the Commission may issue an order to prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who has violated section 77q(a)(1) of this title or the rules or regulations thereunder, from acting as an officer or director of any issuer that has a class of securities registered pursuant to section 78*l* of this title, or that is required to file reports pursuant to section 78*o*(d) of this title, if the conduct of that person demonstrates unfitness to serve as an officer or director of any such issuer.

**(g) Authority to impose money penalties**

**(1) Grounds**

In any cease-and-desist proceeding under subsection (a), the Commission may impose a civil penalty on a person if the Commission finds, on the record, after notice and opportunity for hearing, that—

　(A) such person—
　　(i) is violating or has violated any provision of this subchapter, or any rule or regulation issued under this subchapter; or
　　(ii) is or was a cause of the violation of any provision of this subchapter, or any rule or regulation thereunder; and

　(B) such penalty is in the public interest.

**(2) Maximum amount of penalty**

**(A) First tier**

The maximum amount of a penalty for each act or omission described in paragraph (1) shall be $7,500 for a natural person or $75,000 for any other person.

**(B) Second tier**

Notwithstanding subparagraph (A), the maximum amount of penalty for each such act or omission shall be $75,000 for a natural person or $375,000 for any other person, if the act or omission described in paragraph (1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.

**(C) Third tier**

Notwithstanding subparagraphs (A) and (B), the maximum amount of penalty for

each such act or omission shall be $150,000 for a natural person or $725,000 for any other person, if—

　(i) the act or omission described in paragraph (1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and
　(ii) such act or omission directly or indirectly resulted in—
　　(I) substantial losses or created a significant risk of substantial losses to other persons; or
　　(II) substantial pecuniary gain to the person who committed the act or omission.

**(3) Evidence concerning ability to pay**

In any proceeding in which the Commission may impose a penalty under this section, a respondent may present evidence of the ability of the respondent to pay such penalty. The Commission may, in its discretion, consider such evidence in determining whether such penalty is in the public interest. Such evidence may relate to the extent of the ability of the respondent to continue in business and the collectability of a penalty, taking into account any other claims of the United States or third parties upon the assets of the respondent and the amount of the assets of the respondent.

(May 27, 1933, ch. 38, title I, §8A, as added Pub. L. 101–429, title I, §102, Oct. 15, 1990, 104 Stat. 933; amended Pub. L. 107–204, title XI, §1105(b), July 30, 2002, 116 Stat. 809; Pub. L. 111–203, title IX, §929P(a)(1), July 21, 2010, 124 Stat. 1862.)

AMENDMENTS

2010—Subsec. (g). Pub. L. 111–203 added subsec. (g).
2002—Subsec. (f). Pub. L. 107–204 added subsec. (f).

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as an Effective Date note under section 5301 of Title 12, Banks and Banking.

EFFECTIVE DATE

Section effective Oct. 15, 1990, with provisions relating to civil penalties and accounting and disgorgement, see section 1(c)(1) and (2) of Pub. L. 101–429, set out in an Effective Date of 1990 Amendment note under section 77g of this title.

**§ 77i. Court review of orders**

(a) Any person aggrieved by an order of the Commission may obtain a review of such order in the court of appeals of the United States, within any circuit wherein such person resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such Court, within sixty days after the entry of such order, a written petition praying that the order of the Commission be modified or be set aside in whole or in part. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Commission, and thereupon the Commission shall file in the court the record upon which the order complained of was entered, as provided in section 2112 of title 28. No objection to the order of the Commission shall be considered by the

court unless such objection shall have been urged before the Commission. The finding of the Commission as to the facts, if supported by evidence, shall be conclusive. If either party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the hearing before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts, by reason of the additional evidence so taken, and it shall file such modified or new findings, which, if supported by evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of the original order. The jurisdiction of the court shall be exclusive and its judgment and decree, affirming, modifying, or setting aside, in whole or in part, any order of the Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of title 28.

(b) The commencement of proceedings under subsection (a) shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.

(May 27, 1933, ch. 38, title I, § 9, 48 Stat. 80; Pub. L. 85–791, § 9, Aug. 28, 1958, 72 Stat. 945; Pub. L. 100–181, title II, § 206, Dec. 4, 1987, 101 Stat. 1252.)

### Amendments

1987—Subsec. (a). Pub. L. 100–181 substituted "court of appeals" for "Circuit Court of Appeals", "United States Court of Appeals for the District of Columbia, by filing in such Court" for "Court of Appeals of the District of Columbia, by filing in such court", and "section 1254 of title 28" for "sections 239 and 240 of the Judicial Code, as amended (U.S.C., title 28, secs. 346 and 347)".

1958—Subsec. (a). Pub. L. 85–791, in second sentence, substituted "transmitted by the clerk of the court to" for "served upon", struck out "certify and" before "file in the court", struck out "a transcript of" after "file in the court", and inserted "as provided in section 2112 of title 28".

### Transfer of Functions

For transfer of functions of Securities and Exchange Commission, with certain exceptions, to Chairman of such Commission, see Reorg. Plan No. 10 of 1950, §§ 1, 2, eff. May 24, 1950, 15 F.R. 3175, 64 Stat. 1265, set out under section 78d of this title.

## § 77j. Information required in prospectus

### (a) Information in registration statement; documents not required

Except to the extent otherwise permitted or required pursuant to this subsection or subsections (c), (d), or (e)—

(1) a prospectus relating to a security other than a security issued by a foreign government or political subdivision thereof, shall contain the information contained in the registration statement, but it need not include the documents referred to in paragraphs (28) to (32), inclusive, of schedule A of section 77aa of this title;

(2) a prospectus relating to a security issued by a foreign government or political subdivision thereof shall contain the information contained in the registration statement, but it need not include the documents referred to in paragraphs (13) and (14) of schedule B of section 77aa of this title;

(3) notwithstanding the provisions of paragraphs (1) and (2) of this subsection when a prospectus is used more than nine months after the effective date of the registration statement, the information contained therein shall be as of a date not more than sixteen months prior to such use, so far as such information is known to the user of such prospectus or can be furnished by such user without unreasonable effort or expense;

(4) there may be omitted from any prospectus any of the information required under this subsection which the Commission may by rules or regulations designate as not being necessary or appropriate in the public interest or for the protection of investors.

### (b) Summarizations and omissions allowed by rules and regulations

In addition to the prospectus permitted or required in subsection (a), the Commission shall by rules or regulations deemed necessary or appropriate in the public interest or for the protection of investors permit the use of a prospectus for the purposes of subsection (b)(1) of section 77e of this title which omits in part or summarizes information in the prospectus specified in subsection (a). A prospectus permitted under this subsection shall, except to the extent the Commission by rules or regulations deemed necessary or appropriate in the public interest or for the protection of investors otherwise provides, be filed as part of the registration statement but shall not be deemed a part of such registration statement for the purposes of section 77k of this title. The Commission may at any time issue an order preventing or suspending the use of a prospectus permitted under this subsection, if it has reason to believe that such prospectus has not been filed (if required to be filed as part of the registration statement) or includes any untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which such prospectus is or is to be used, not misleading. Upon issuance of an order under this subsection, the Commission shall give notice of the issuance of such order and opportunity for hearing by personal service or the sending of confirmed telegraphic notice. The Commission shall vacate or modify the order at any time for good cause or if such prospectus has been filed or amended in accordance with such order.

### (c) Additional information required by rules and regulations

Any prospectus shall contain such other information as the Commission may by rules or regulations require as being necessary or appropriate in the public interest or for the protection of investors.

## Section 926 of the Dodd-Frank Act (2010)

PUBLIC LAW 111–203—JULY 21, 2010        124 STAT. 1851

dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization,".

(3) SECTION 17A.—Section 17A(c)(4)(C) of the Securities Exchange Act of 1934 (15 U.S.C. 78q–1(c)(4)(C)) is amended by striking "twelve months or bar any such person from being associated with the transfer agent," and inserting "12 months or bar any such person from being associated with any transfer agent, broker, dealer, investment adviser, municipal securities dealer, municipal advisor, or nationally recognized statistical rating organization,".

(b) INVESTMENT ADVISERS ACT OF 1940.—Section 203(f) of the Investment Advisers Act of 1940 (15 U.S.C. 80b–3(f)) is amended by striking "twelve months or bar any such person from being associated with an investment adviser," and inserting "12 months or bar any such person from being associated with an investment adviser, broker, dealer, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization,".

**SEC. 926. DISQUALIFYING FELONS AND OTHER "BAD ACTORS" FROM REGULATION D OFFERINGS.**

15 USC 77d note.

Not later than 1 year after the date of enactment of this Act, the Commission shall issue rules for the disqualification of offerings and sales of securities made under section 230.506 of title 17, Code of Federal Regulations, that—

Deadline.

(1) are substantially similar to the provisions of section 230.262 of title 17, Code of Federal Regulations, or any successor thereto; and

(2) disqualify any offering or sale of securities by a person that—

(A) is subject to a final order of a State securities commission (or an agency or officer of a State performing like functions), a State authority that supervises or examines banks, savings associations, or credit unions, a State insurance commission (or an agency or officer of a State performing like functions), an appropriate Federal banking agency, or the National Credit Union Administration, that—

(i) bars the person from—

(I) association with an entity regulated by such commission, authority, agency, or officer;

(II) engaging in the business of securities, insurance, or banking; or

(III) engaging in savings association or credit union activities; or

(ii) constitutes a final order based on a violation of any law or regulation that prohibits fraudulent, manipulative, or deceptive conduct within the 10-year period ending on the date of the filing of the offer or sale; or

(B) has been convicted of any felony or misdemeanor in connection with the purchase or sale of any security or involving the making of any false filing with the Commission.

SEC Regulation A (2021)

**Securities and Exchange Commission** § 230.251

July 16, 2011, other than a person who is an eligible contract participant under Section 1a(12)(C) of the Commodity Exchange Act as in effect prior to July 16, 2011).

(b) The exemption provided in paragraph (a) of this section does not apply to the provisions of Section 17(a) of the Act (15 U.S.C. 77q(a)).

(c) This section will expire on February 11, 2018.

[82 FR 10707, Feb. 15, 2017]

### § 230.241 Solicitations of interest.

(a) *Solicitation of interest.* At any time before making a determination as to the exemption from registration under the Act under which an offering of securities will be conducted, an issuer or any person authorized to act on behalf of an issuer may communicate orally or in writing to determine whether there is any interest in a contemplated offering of securities exempt from registration under the Act. Such communications are deemed to be an offer of a security for sale for purposes of the antifraud provisions of the Federal securities laws. No solicitation or acceptance of money or other consideration, nor of any commitment, binding or otherwise, from any person is permitted until the issuer makes a determination as to the exemption to be relied on and the offering, meeting the requirements of the exemption, is commenced.

(b) *Conditions.* The communications must state that:

(1) The issuer is considering an offering of securities exempt from registration under the Act, but has not determined a specific exemption from registration the issuer intends to rely on for the subsequent offer and sale of the securities;

(2) No money or other consideration is being solicited, and if sent in response, will not be accepted;

(3) No offer to buy the securities can be accepted and no part of the purchase price can be received until the issuer determines the exemption under which the offering is intended to be conducted and, where applicable, the filing, disclosure, or qualification requirements of such exemption are met; and

(4) A person's indication of interest involves no obligation or commitment of any kind.

(c) *Indications of interest.* Any written communication under this section may include a means by which a person may indicate to the issuer that such person is interested in a potential offering. The issuer may require the name, address, telephone number, and/or email address in any response form included pursuant to this paragraph (c).

[86 FR 3596, Jan. 14, 2021]

REGULATION A—CONDITIONAL SMALL ISSUES EXEMPTION

AUTHORITY: Secs. 230.251 to 230.263 issued under 15 U.S.C. 77c, 77s.

SOURCE: 57 FR 36468, Aug. 13, 1992, unless otherwise noted.

### § 230.251 Scope of exemption.

(a) *Tier 1 and Tier 2.* A public offer or sale of eligible securities, as defined in Rule 261 (§ 230.261), pursuant to Regulation A shall be exempt under section 3(b) from the registration requirements of the Securities Act of 1933 (the "Securities Act") (15 U.S.C. 77a *et seq.*).

(1) *Tier 1.* Offerings pursuant to Regulation A in which the sum of all cash and other consideration to be received for the securities being offered ("aggregate offering price") plus the gross proceeds for all securities sold pursuant to other offering statements within the 12 months before the start of and during the current offering of securities ("aggregate sales") does not exceed $20,000,000, including not more than $6,000,000 offered by all selling securityholders that are affiliates of the issuer ("Tier 1 offerings").

(2) *Tier 2.* Offerings pursuant to §§ 230.251 through 230.263 (Regulation A) in which the sum of the aggregate offering price and aggregate sales does not exceed $75,000,000, including not more than $22,500,000 offered by all selling securityholders that are affiliates of the issuer ("Tier 2 offerings").

(3) *Additional limitation on secondary sales in first year.* The portion of the aggregate offering price attributable to the securities of selling securityholders shall not exceed 30% of the aggregate offering price of a particular offering in:

701

Add. 12

(i) The issuer's first offering pursuant to Regulation A; or

(ii) Any subsequent Regulation A offering that is qualified within one year of the qualification date of the issuer's first offering.

NOTE TO PARAGRAPH (a). Where a mixture of cash and non-cash consideration is to be received, the aggregate offering price must be based on the price at which the securities are offered for cash. Any portion of the aggregate offering price or aggregate sales attributable to cash received in a foreign currency must be translated into United States currency at a currency exchange rate in effect on, or at a reasonable time before, the date of the sale of the securities. If securities are not offered for cash, the aggregate offering price or aggregate sales must be based on the value of the consideration as established by bona fide sales of that consideration made within a reasonable time, or, in the absence of sales, on the fair value as determined by an accepted standard. Valuations of non-cash consideration must be reasonable at the time made. If convertible securities or warrants are being offered and such securities are convertible, exercisable, or exchangeable within one year of the offering statement's qualification or at the discretion of the issuer, the underlying securities must also be qualified and the aggregate offering price must include the actual or maximum estimated conversion, exercise, or exchange price of such securities.

(b) *Issuer.* The issuer of the securities:

(1) Is an entity organized under the laws of the United States or Canada, or any State, Province, Territory or possession thereof, or the District of Columbia, with its principal place of business in the United States or Canada;

(2) [Reserved]

(3) Is not a development stage company that either has no specific business plan or purpose, or has indicated that its business plan is to merge with or acquire an unidentified company or companies;

(4) Is not an investment company registered or required to be registered under the Investment Company Act of 1940 (15 U.S.C. 80a–1 *et seq.*) or a business development company as defined in section 2(a)(48) of the Investment Company Act of 1940 (15 U.S.C. 80a–2(a)(48));

(5) Is not issuing fractional undivided interests in oil or gas rights, or a similar interest in other mineral rights;

(6) Is not, and has not been, subject to any order of the Commission entered pursuant to Section 12(j) (15 U.S.C. 78l(j)) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. 78a *et seq.*) within five years before the filing of the offering statement;

(7) Has filed with the Commission all reports required to be filed, if any, pursuant to § 230.257 or pursuant to section 13 or 15(d) of the Exchange Act (15 U.S.C. 78m or 15 U.S.C. 78o) during the two years before the filing of the offering statement (or for such shorter period that the issuer was required to file such reports); and

(8) Is not disqualified under Rule 262 (§ 230.262).

(c) *Integration with other offerings.* To determine whether offers and sales should be integrated, see § 230.152.

(d) *Offering conditions*—(1) *Offers.* (i) Except as allowed by Rule 255 (§ 230.255), no offer of securities may be made unless an offering statement has been filed with the Commission.

(ii) After the offering statement has been filed, but before it is qualified:

(A) Oral offers may be made;

(B) Written offers pursuant to Rule 254 (§ 230.254) may be made; and

(C) Solicitations of interest and other communications pursuant to Rule 255 (§ 230.255) may be made.

(iii) Offers may be made after the offering statement has been qualified, but any written offers must be accompanied with or preceded by the most recent offering circular filed with the Commission for such offering.

(2) *Sales.* (i) No sale of securities may be made:

(A) Until the offering statement has been qualified;

(B) By issuers that are not currently required to file reports pursuant to Rule 257(b) (§ 230.257(b)), until a Preliminary Offering Circular is delivered at least 48 hours before the sale to any person that before qualification of the offering statement had indicated an interest in purchasing securities in the offering, including those persons that responded to an issuer's solicitation of interest materials; and

(C) In a Tier 2 offering of securities that are not listed on a registered national securities exchange upon qualification, unless the purchaser is either

702

Add. 13

**Securities and Exchange Commission** § 230.251

an accredited investor (as defined in Rule 501 (§ 230.501)) or the aggregate purchase price to be paid by the purchaser for the securities (including the actual or maximum estimated conversion, exercise, or exchange price for any underlying securities that have been qualified) is no more than ten percent (10%) of the greater of such purchaser's:

(*1*) Annual income or net worth if a natural person (with annual income and net worth for such natural person purchasers determined as provided in Rule 501 (§ 230.501)); or

(*2*) Revenue or net assets for such purchaser's most recently completed fiscal year end if a non-natural person.

NOTE TO PARAGRAPH (d)(2)(i)(C). When securities underlying warrants or convertible securities are being qualified pursuant to Tier 2 of Regulation A one year or more after the qualification of an offering for which investment limitations previously applied, purchasers of the underlying securities for which investment limitations would apply at that later date may determine compliance with the ten percent (10%) investment limitation using the conversion, exercise, or exchange price to acquire the underlying securities at that later time without aggregating such price with the price of the overlying warrants or convertible securities.

(D) The issuer may rely on a representation of the purchaser when determining compliance with the ten percent (10%) investment limitation in this paragraph (d)(2)(i)(C), provided that the issuer does not know at the time of sale that any such representation is untrue.

(ii) In a transaction that represents a sale by the issuer or an underwriter, or a sale by a dealer within 90 calendar days after qualification of the offering statement, each underwriter or dealer selling in such transaction must deliver to each purchaser from it, not later than two business days following the completion of such sale, a copy of the Final Offering Circular, subject to the following provisions:

(A) If the sale was by the issuer and was not effected by or through an underwriter or dealer, the issuer is responsible for delivering the Final Offering Circular as if the issuer were an underwriter;

(B) For continuous or delayed offerings pursuant to paragraph (d)(3) of

this section, the 90 calendar day period for dealers shall commence on the day of the first bona fide offering of securities under such offering statement;

(C) If the security is listed on a registered national securities exchange, no offering circular need be delivered by a dealer more than 25 calendar days after the later of the qualification date of the offering statement or the first date on which the security was bona fide offered to the public;

(D) No offering circular need be delivered by a dealer if the issuer is subject, immediately prior to the time of the filing of the offering statement, to the reporting requirements of Rule 257(b) (§ 230.257(b)); and

(E) The Final Offering Circular delivery requirements set forth in paragraph (d)(2)(ii) of this section may be satisfied by delivering a notice to the effect that the sale was made pursuant to a qualified offering statement that includes the uniform resource locator ("URL"), which, in the case of an electronic-only offering, must be an active hyperlink, where the Final Offering Circular, or the offering statement of which such Final Offering Circular is part, may be obtained on the Commission's Electronic Data Gathering, Analysis and Retrieval System ("EDGAR") and contact information sufficient to notify a purchaser where a request for a Final Offering Circular can be sent and received in response.

(3) *Continuous or delayed offerings.* (i) Continuous or delayed offerings may be made under this Regulation A, so long as the offering statement pertains only to:

(A) Securities that are to be offered or sold solely by or on behalf of a person or persons other than the issuer, a subsidiary of the issuer, or a person of which the issuer is a subsidiary;

(B) Securities that are to be offered and sold pursuant to a dividend or interest reinvestment plan or an employee benefit plan of the issuer;

(C) Securities that are to be issued upon the exercise of outstanding options, warrants, or rights;

(D) Securities that are to be issued upon conversion of other outstanding securities;

(E) Securities that are pledged as collateral; or

703

Add. 14

§ 230.252                                                    17 CFR Ch. II (4–1–21 Edition)

(F) Securities the offering of which will be commenced within two calendar days after the qualification date, will be made on a continuous basis, may continue for a period in excess of 30 calendar days from the date of initial qualification, and will be offered in an amount that, at the time the offering statement is qualified, is reasonably expected to be offered and sold within two years from the initial qualification date. These securities may be offered and sold only if not more than three years have elapsed since the initial qualification date of the offering statement under which they are being offered and sold; provided, however, that if a new offering statement has been filed pursuant to this paragraph (d)(3)(i)(F), securities covered by the prior offering statement may continue to be offered and sold until the earlier of the qualification date of the new offering statement or 180 calendar days after the third anniversary of the initial qualification date of the prior offering statement. Before the end of such three-year period, an issuer may file a new offering statement covering the securities. The new offering statement must include all the information that would be required at that time in an offering statement relating to all offerings that it covers. Before the qualification date of the new offering statement, the issuer may include as part of such new offering statement any unsold securities covered by the earlier offering statement by identifying on the cover page of the new offering circular, or the latest amendment, the amount of such unsold securities being included. The offering of securities on the earlier offering statement will be deemed terminated as of the date of qualification of the new offering statement. Securities may be sold pursuant to this paragraph (d)(3)(i)(F) only if the issuer is current in its annual and semiannual filings pursuant to Rule 257(b) (§ 230.257(b)), at the time of such sale.

(ii) At the market offerings, by or on behalf of the issuer or otherwise, are not permitted under this Regulation A. As used in this paragraph (d)(3)(ii), the term *at the market offering* means an offering of equity securities into an existing trading market for outstanding shares of the same class at other than a fixed price.

(e) *Confidential treatment.* A request for confidential treatment may be made under Rule 406 (§ 230.406) for information required to be filed, and Rule 83 (§ 200.83) for information not required to be filed.

(f) *Electronic filing.* Documents filed or otherwise provided to the Commission pursuant to this Regulation A must be submitted in electronic format by means of EDGAR in accordance with the EDGAR rules set forth in Regulation S–T (17 CFR part 232).

[80 FR 21895, Apr. 20, 2015, as amended at 84 FR 529, Jan. 31, 2019; 86 FR 3596, Jan. 14, 2021]

### § 230.252   Offering statement.

(a) *Documents to be included.* The offering statement consists of the contents required by Form 1–A (§ 239.90 of this chapter) and any other material information necessary to make the required statements, in light of the circumstances under which they are made, not misleading.

(b) *Paper, printing, language and pagination.* Except as otherwise specified in this rule, the requirements for offering statements are the same as those specified in Rule 403 (§ 230.403) for registration statements under the Act. No fee is payable to the Commission upon either the submission or filing of an offering statement on Form 1–A, or any amendment to an offering statement.

(c) *Signatures.* The issuer, its principal executive officer, principal financial officer, principal accounting officer, and a majority of the members of its board of directors or other governing body, must sign the offering statement in the manner prescribed by Form 1–A. If a signature is by a person on behalf of any other person, evidence of authority to sign must be filed, except where an executive officer signs for the issuer.

(d) *Non-public submission.* An issuer whose securities have not been previously sold pursuant to a qualified offering statement under this Regulation A or an effective registration statement under the Securities Act may submit a draft offering statement to the Commission for non-public review by the staff of the Commission before public filing, provided that the offering

704

Add. 15

**Securities and Exchange Commission** §230.253

statement shall not be qualified less than 21 calendar days after the public filing with the Commission of:

(1) The initial non-public submission;

(2) All non-public amendments; and

(3) All non-public correspondence submitted by or on behalf of the issuer to the Commission staff regarding such submissions (subject to any separately approved confidential treatment request under Rule 251(e) (§230.251(e)).

(e) *Qualification.* An offering statement and any amendment thereto can be qualified only at such date and time as the Commission may determine.

(f) *Amendments.* (1)(i) Amendments to an offering statement must be signed and filed with the Commission in the same manner as the initial filing. Amendments to an offering statement must be filed under cover of Form 1–A and must be numbered consecutively in the order in which filed.

(ii) Every amendment that includes amended audited financial statements must include the consent of the certifying accountant to the use of such accountant's certification in connection with the amended financial statements in the offering statement or offering circular and to being named as having audited such financial statements.

(iii) Amendments solely relating to Part III of Form 1–A must comply with the requirements of paragraph (f)(1)(i) of this section, except that such amendments may be limited to Part I of Form 1–A, an explanatory note, and all of the information required by Part III of Form 1–A.

(2) Post-qualification amendments must be filed in the following circumstances for ongoing offerings:

(i) At least every 12 months after the qualification date to include the financial statements that would be required by Form 1–A as of such date; or

(ii) To reflect any facts or events arising after the qualification date of the offering statement (or the most recent post-qualification amendment thereof) which, individually or in the aggregate, represent a fundamental change in the information set forth in the offering statement.

[80 FR 21895, Apr. 20, 2015]

§230.253 **Offering circular.**

(a) *Contents.* An offering circular must include the information required by Form 1–A for offering circulars.

(b) *Information that may be omitted.* Notwithstanding paragraph (a) of this section, a qualified offering circular may omit information with respect to the public offering price, underwriting syndicate (including any material relationships between the issuer or selling securityholders and the unnamed underwriters, brokers or dealers), underwriting discounts or commissions, discounts or commissions to dealers, amount of proceeds, conversion rates, call prices and other items dependent upon the offering price, delivery dates, and terms of the securities dependent upon the offering date; provided, that the following conditions are met:

(1) The securities to be qualified are offered for cash.

(2) The outside front cover page of the offering circular includes a bona fide estimate of the range of the maximum offering price and the maximum number of shares or other units of securities to be offered or a bona fide estimate of the principal amount of debt securities offered, subject to the following conditions:

(i) The range must not exceed $2 for offerings where the upper end of the range is $10 or less or 20% if the upper end of the price range is over $10; and

(ii) The upper end of the range must be used in determining the aggregate offering price under Rule 251(a) (§230.251(a)).

(3) The offering statement does not relate to securities to be offered by competitive bidding.

(4) The volume of securities (the number of equity securities or aggregate principal amount of debt securities) to be offered may not be omitted in reliance on this paragraph (b).

NOTE TO PARAGRAPH (b). A decrease in the volume of securities offered or a change in the bona fide estimate of the offering price range from that indicated in the offering circular filed as part of a qualified offering statement may be disclosed in the offering circular filed with the Commission pursuant to Rule 253(g) (§230.253(g)), so long as the decrease in the volume of securities offered or change in the price range would not materially change the disclosure contained in the

705

offering statement at qualification. Notwithstanding the foregoing, any decrease in the volume of securities offered and any deviation from the low or high end of the price range may be reflected in the offering circular supplement filed with the Commission pursuant to Rule 253(g)(1) or (3) (§ 230.253(g)(1) or (3)) if, in the aggregate, the decrease in volume and/or change in price represent no more than a 20% change from the maximum aggregate offering price calculable using the information in the qualified offering statement. In no circumstances may this paragraph be used to offer securities where the maximum aggregate offering price would result in the offering exceeding the limit set forth in Rule 251(a) (§ 230.251(a)) or if the change would result in a Tier 1 offering becoming a Tier 2 offering. An offering circular supplement may not be used to increase the volume of securities being offered. Additional securities may only be offered pursuant to a new offering statement or post-qualification amendment qualified by the Commission.

(c) *Filing of omitted information.* The information omitted from the offering circular in reliance upon paragraph (b) of this section must be contained in an offering circular filed with the Commission pursuant to paragraph (g) of this section; except that if such offering circular is not so filed by the later of 15 business days after the qualification date of the offering statement or 15 business days after the qualification of a post-qualification amendment thereto that contains an offering circular, the information omitted in reliance upon paragraph (b) of this section must be contained in a qualified post-qualification amendment to the offering statement.

(d) *Presentation of information.* (1) Information in the offering circular must be presented in a clear, concise and understandable manner and in a type size that is easily readable. Repetition of information should be avoided; cross-referencing of information within the document is permitted.

(2) Where an offering circular is distributed through an electronic medium, issuers may satisfy legibility requirements applicable to printed documents by presenting all required information in a format readily communicated to investors.

(e) *Date.* An offering circular must be dated approximately as of the date it was filed with the Commission.

(f) *Cover page legend.* The cover page of every offering circular must display the following statement highlighted by prominent type or in another manner:

The United States Securities and Exchange Commission does not pass upon the merits of or give its approval to any securities offered or the terms of the offering, nor does it pass upon the accuracy or completeness of any offering circular or other solicitation materials. These securities are offered pursuant to an exemption from registration with the Commission; however, the Commission has not made an independent determination that the securities offered are exempt from registration.

(g) *Offering circular supplements.* (1) An offering circular that discloses information previously omitted from the offering circular in reliance upon Rule 253(b) (§ 230.253(b)) must be filed with the Commission no later than two business days following the earlier of the date of determination of the offering price or the date such offering circular is first used after qualification in connection with a public offering or sale.

(2) An offering circular that reflects information other than that covered in paragraph (g)(1) of this section that constitutes a substantive change from or addition to the information set forth in the last offering circular filed with the Commission must be filed with the Commission no later than five business days after the date it is first used after qualification in connection with a public offering or sale. If an offering circular filed pursuant to this paragraph (g)(2) consists of an offering circular supplement attached to an offering circular that previously had been filed or was not required to be filed pursuant to paragraph (g) of this section because it did not contain substantive changes from an offering circular that previously was filed, only the offering circular supplement need be filed under paragraph (g) of this section, provided that the cover page of the offering circular supplement identifies the date(s) of the related offering circular and any offering circular supplements thereto that together constitute the offering circular with respect to the securities currently being offered or sold.

706

Add. 17



**Securities and Exchange Commission** § 230.255

(3) An offering circular that discloses information, facts or events covered in both paragraphs (g)(1) and (2) of this section must be filed with the Commission no later than two business days following the earlier of the date of the determination of the offering price or the date it is first used after qualification in connection with a public offering or sale.

(4) An offering circular required to be filed pursuant to paragraph (g) of this section that is not filed within the time frames specified in paragraphs (g)(1) through (3) of this section, as applicable, must be filed pursuant to this paragraph (g)(4) as soon as practicable after the discovery of such failure to file.

(5) Each offering circular filed under this section must contain in the upper right corner of the cover page the paragraphs of paragraphs (g)(1) through (4) of this section under which the filing is made, and the file number of the offering statement to which the offering circular relates.

[80 FR 21895, Apr. 20, 2015]

**§ 230.254  Preliminary offering circular.**

After the filing of an offering statement, but before its qualification, written offers of securities may be made if they meet the following requirements:

(a) *Outside front cover page.* The outside front cover page of the material bears the caption *Preliminary Offering Circular,* the date of issuance, and the following legend, which must be highlighted by prominent type or in another manner:

An offering statement pursuant to Regulation A relating to these securities has been filed with the Securities and Exchange Commission. Information contained in this Preliminary Offering Circular is subject to completion or amendment. These securities may not be sold nor may offers to buy be accepted before the offering statement filed with the Commission is qualified. This Preliminary Offering Circular shall not constitute an offer to sell or the solicitation of an offer to buy nor may there be any sales of these securities in any state in which such offer, solicitation or sale would be unlawful before registration or qualification under the laws of any such state. We

may elect to satisfy our obligation to deliver a Final Offering Circular by sending you a notice within two business days after the completion of our sale to you that contains the URL where the Final Offering Circular or the offering statement in which such Final Offering Circular was filed may be obtained.

(b) *Other contents.* The Preliminary Offering Circular contains substantially the information required to be in an offering circular by Form 1–A (§ 239.90 of this chapter), except that certain information may be omitted under Rule 253(b) (§ 230.253(b)) subject to the conditions set forth in such rule.

(c) *Filing.* The Preliminary Offering Circular is filed as a part of the offering statement.

[80 FR 21895, Apr. 20, 2015]

**§ 230.255  Solicitations of interest and other communications.**

(a) *Solicitation of interest.* At any time before the qualification of an offering statement, including before the non-public submission or public filing of such offering statement, an issuer or any person authorized to act on behalf of an issuer may communicate orally or in writing to determine whether there is any interest in a contemplated securities offering. Such communications are deemed to be an offer of a security for sale for purposes of the anti-fraud provisions of the federal securities laws. No solicitation or acceptance of money or other consideration, nor of any commitment, binding or otherwise, from any person is permitted until qualification of the offering statement.

(b) *Conditions.* The communications must:

(1) State that no money or other consideration is being solicited, and if sent in response, will not be accepted;

(2) State that no offer to buy the securities can be accepted and no part of the purchase price can be received until the offering statement is qualified, and any such offer may be withdrawn or revoked, without obligation or commitment of any kind, at any time before notice of its acceptance given after the qualification date;

(3) State that a person's indication of interest involves no obligation or commitment of any kind; and

707

(4) After the public filing of the offering statement:

(i) State from whom a copy of the most recent version of the Preliminary Offering Circular may be obtained, including a phone number and address of such person;

(ii) Provide the URL where such Preliminary Offering Circular, or the offering statement in which such Preliminary Offering Circular was filed, may be obtained; or

(iii) Include a complete copy of the Preliminary Offering Circular.

(c) *Indications of interest.* Any written communication under this rule may include a means by which a person may indicate to the issuer that such person is interested in a potential offering. This issuer may require the name, address, telephone number, and/or email address in any response form included pursuant to this paragraph (c).

(d) *Revised solicitations of interest.* If solicitation of interest materials are used after the public filing of the offering statement and such solicitation of interest materials contain information that is inaccurate or inadequate in any material respect, revised solicitation of interest materials must be redistributed in a substantially similar manner as such materials were originally distributed. Notwithstanding the foregoing in this paragraph (d), if the only information that is inaccurate or inadequate is contained in a Preliminary Offering Circular provided with the solicitation of interest materials pursuant to paragraphs (b)(4)(i) or (ii) of this section, no such redistribution is required in the following circumstances:

(1) in the case of paragraph (b)(4)(i) of this section, the revised Preliminary Offering Circular will be provided to any persons making new inquiries and will be recirculated to any persons making any previous inquiries; or

(2) in the case of paragraph (b)(4)(ii) of this section, the URL continues to link directly to the most recent Preliminary Offering Circular or to the offering statement in which such revised Preliminary Offering Circular was filed.

[80 FR 21895, Apr. 20, 2015, as amended at 86 FR 3596, Jan. 14, 2021]

**§ 230.256 Definition of "qualified purchaser".**

For purposes of Section 18(b)(3) of the Securities Act [15 U.S.C. 77r(b)(3)], a "qualified purchaser" means any person to whom securities are offered or sold pursuant to a Tier 2 offering of this Regulation A.

[80 FR 21895, Apr. 20, 2015]

**§ 230.257 Periodic and current reporting; exit report.**

(a) *Tier 1: Exit report.* Each issuer that has filed an offering statement for a Tier 1 offering that has been qualified pursuant to this Regulation A must file an exit report on Form 1–Z (§ 239.94 of this chapter) not later than 30 calendar days after the termination or completion of the offering.

(b) *Tier 2: Periodic and current reporting.* Each issuer that has filed an offering statement for a Tier 2 offering that has been qualified pursuant to this Regulation A must file with the Commission the following periodic and current reports:

(1) *Annual reports.* An annual report on Form 1–K (§ 239.91 of this chapter) for the fiscal year in which the offering statement became qualified and for any fiscal year thereafter, unless the issuer's obligation to file such annual report is suspended under paragraph (d) of this section. Annual reports must be filed within the period specified in Form 1–K.

(2) *Special financial report.* (i) A special financial report on Form 1–K or Form 1–SA if the offering statement did not contain the following:

(A) Audited financial statements for the issuer's most recent fiscal year (or for the life of the issuer if less than a full fiscal year) preceding the fiscal year in which the issuer's offering statement became qualified; or

(B) unaudited financial statements covering the first six months of the issuer's current fiscal year if the offering statement was qualified during the last six months of that fiscal year.

(ii) The special financial report described in paragraph (b)(2)(i)(A) of this section must be filed under cover of Form 1–K within 120 calendar days

708

**Securities and Exchange Commission** §230.257

after the qualification date of the offering statement and must include audited financial statements for such fiscal year or other period specified in that paragraph, as the case may be. The special financial report described in paragraph (b)(2)(i)(B) of this section must be filed under cover of Form 1–SA within 90 calendar days after the qualification date of the offering statement and must include the semiannual financial statements for the first six months of the issuer's fiscal year, which may be unaudited.

(iii) A special financial report must be signed in accordance with the requirements of the form on which it is filed.

(3) *Semiannual report.* A semiannual report on Form 1–SA (§239.92 of this chapter) within the period specified in Form 1–SA. Semiannual reports must cover the first six months of each fiscal year of the issuer, commencing with the first six months of the fiscal year immediately following the most recent fiscal year for which full financial statements were included in the offering statement, or, if the offering statement included financial statements for the first six months of the fiscal year following the most recent full fiscal year, for the first six months of the following fiscal year.

(4) *Current reports.* Current reports on Form 1–U (§239.93 of this chapter) with respect to the matters and within the period specified in that form, unless substantially the same information has been previously reported to the Commission by the issuer under cover of Form 1–K or Form 1–SA.

(5) *Reporting by successor issuers.* Where in connection with a succession by merger, consolidation, exchange of securities, acquisition of assets or otherwise, securities of any issuer that is not required to file reports pursuant to paragraph (b) of this section are issued to the holders of any class of securities of another issuer that is required to file such reports, the duty to file reports pursuant to paragraph (b) of this section shall be deemed to have been assumed by the issuer of the class of securities so issued. The successor issuer must, after the consummation of the succession, file reports in accordance with paragraph (b) of this section,

unless that issuer is exempt from filing such reports or the duty to file such reports is terminated or suspended under paragraph (d) of this section.

(6) *Exchange Act reporting requirements.* The duty to file reports under this rule shall be deemed to have been met if the issuer is subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act (15 U.S.C. 78m or 15 U.S.C. 78o) and, as of each Form 1–K and Form 1–SA due date, has filed all reports required to be filed by Section 13 or 15(d) of the Exchange Act (15 U.S.C. 78m or 15 U.S.C. 78o) during the 12 months (or such shorter period that the registrant was required to file such reports) preceding such due date.

(7) *Exemption for subsidiary issuers of guaranteed securities and subsidiary guarantors.* Any issuer of a guaranteed security, or guarantor of a security, that is permitted to omit financial statements by Item (b)(7)(i) of Part F/S of Form 1–A (referenced in §239.90), Item 7(g)(1) of Part II of Form 1–K (referenced in §239.91), and Item 3(e) of Form 1–SA (referenced in §239.92), is exempt from the requirements of this paragraph (b).

(c) *Amendments.* All amendments to the reports described in paragraphs (a) and (b) of this section must be filed under cover of the form amended, marked with the letter *A* to designate the document as an amendment, e.g., "1–K/A," and in compliance with pertinent requirements applicable to such reports. Amendments filed pursuant to this paragraph (c) must set forth the complete text of each item as amended, but need not include any items that were not amended. Amendments must be numbered sequentially and be filed separately for each report amended. Amendments must be signed on behalf of the issuer by a duly authorized representative of the issuer. An amendment to any report required to include certifications as specified in the applicable form must include new certifications by the appropriate persons.

(d) *Suspension of duty to file reports.*

(1) [Reserved]

(2) The duty to file reports under paragraph (b) of this section with respect to a class of securities held of record (as defined in Rule 12g5–1 (§240.12g5–1 of this chapter)) by less

709

than 300 persons, or less than 1,200 persons for a bank (as defined in Section 3(a)(6) of the Exchange Act (15 U.S.C. 78c(a)(6)), or a bank holding company (as defined in section 2 of the Bank Holding Company Act of 1956 (12 U.S.C. 1841)), shall be suspended for such class of securities immediately upon filing with the Commission an exit report on Form 1–Z (§ 239.94 of this chapter) if the issuer of such class has filed all reports due pursuant to this rule before the date of such Form 1–Z filing for the shorter of:

(i) The period since the issuer became subject to such reporting obligation; or

(ii) Its most recent three fiscal years and the portion of the current year preceding the date of filing Form 1–Z.

(3) For the purposes of paragraph (d)(2) of this section, the term *class* shall be construed to include all securities of an issuer that are of substantially similar character and the holders of which enjoy substantially similar rights and privileges. If the Form 1–Z is subsequently withdrawn or if it is denied because the issuer was ineligible to use the form, the issuer must, within 60 calendar days, file with the Commission all reports which would have been required if such exit report had not been filed. If the suspension resulted from the issuer's merger into, or consolidation with, another issuer or issuers, the notice must be filed by the successor issuer.

(4) The ability to suspend reporting, as described in paragraph (d)(2) of this section, is not available for any class of securities if:

(i) During that fiscal year a Tier 2 offering statement was qualified;

(ii) The issuer has not filed an annual report under this rule or the Exchange Act for the fiscal year in which a Tier 2 offering statement was qualified; or

(iii) Offers or sales of securities of that class are being made pursuant to a Tier 2 Regulation A offering.

(e) *Termination of duty to file reports.* If the duty to file reports is deemed to have been met pursuant to paragraph (b)(6) of this section and such status ends because the issuer terminates or suspends its duty to file reports under the Exchange Act, the issuer's obligation to file reports under paragraph (b) of this section shall:

(1) Automatically terminate if the issuer is eligible to suspend its duty to file reports under paragraphs (d)(2) and (3) of this section; or

(2) Recommence with the report covering the most recent financial period after that included in any effective registration statement or filed Exchange Act report.

[80 FR 21895, Apr. 20, 2015, as amended at 82 FR 45725, Oct. 2, 2017; 83 FR 47836, Sept. 21, 2018; 83 FR 52964, Oct. 19, 2018; 84 FR 529, Jan. 31, 2019; 85 FR 17751, Mar. 31, 2020; 85 FR 22004, Apr. 20, 2020]

### § 230.258 Suspension of the exemption.

(a) *Suspension.* The Commission may at any time enter an order temporarily suspending a Regulation A exemption if it has reason to believe that:

(1) No exemption is available or any of the terms, conditions or requirements of Regulation A have not been complied with;

(2) The offering statement, any sales or solicitation of interest material, or any report filed pursuant to Rule 257 (§ 230.257) contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading;

(3) The offering is being made or would be made in violation of section 17 of the Securities Act;

(4) An event has occurred after the filing of the offering statement that would have rendered the exemption hereunder unavailable if it had occurred before such filing;

(5) Any person specified in Rule 262(a) (§ 230.262(a)) has been indicted for any crime or offense of the character specified in Rule 262(a)(1) (§ 230.262(a)(1)), or any proceeding has been initiated for the purpose of enjoining any such person from engaging in or continuing any conduct or practice of the character specified in Rule 262(a)(2) (§ 230.262(a)(2)), or any proceeding has been initiated for the purposes of Rule 262(a)(3)–(8) (§ 230.262(a)(3) through (8)); or

(6) The issuer or any promoter, officer, director, or underwriter has failed

710



**Securities and Exchange Commission**　　　　　　**§ 230.260**

to cooperate, or has obstructed or refused to permit the making of an investigation by the Commission in connection with any offering made or proposed to be made in reliance on Regulation A.

(b) *Notice and hearing.* Upon the entry of an order under paragraph (a) of this section, the Commission will promptly give notice to the issuer, any underwriter, and any selling securityholder:

(1) That such order has been entered, together with a brief statement of the reasons for the entry of the order; and

(2) That the Commission, upon receipt of a written request within 30 calendar days after the entry of the order, will, within 20 calendar days after receiving the request, order a hearing at a place to be designated by the Commission.

(c) *Suspension order.* If no hearing is requested and none is ordered by the Commission, an order entered under paragraph (a) of this section shall become permanent on the 30th calendar day after its entry and shall remain in effect unless or until it is modified or vacated by the Commission. Where a hearing is requested or is ordered by the Commission, the Commission will, after notice of and opportunity for such hearing, either vacate the order or enter an order permanently suspending the exemption.

(d) *Permanent suspension.* The Commission may, at any time after notice of and opportunity for hearing, enter an order permanently suspending the exemption for any reason upon which it could have entered a temporary suspension order under paragraph (a) of this section. Any such order shall remain in effect until vacated by the Commission.

(e) *Notice procedures.* All notices required by this rule must be given by personal service, registered or certified mail to the addresses given by the issuer, any underwriter and any selling securityholder in the offering statement.

[80 FR 21895, Apr. 20, 2015]

**§ 230.259  Withdrawal or abandonment of offering statements.**

(a) *Withdrawal.* If none of the securities that are the subject of an offering statement has been sold and such offer-

ing statement is not the subject of a proceeding under Rule 258 (§ 230.258), the offering statement may be withdrawn with the Commission's consent. The application for withdrawal must state the reason the offering statement is to be withdrawn and must be signed by an authorized representative of the issuer. Any withdrawn document will remain in the Commission's files, as well as the related request for withdrawal.

(b) *Abandonment.* When an offering statement, or a post-qualification amendment to such statement, has been on file with the Commission for nine months without amendment and has not become qualified, the Commission may, in its discretion, declare the offering statement or post-qualification amendment abandoned. If the offering statement has been amended, or if the post-qualification amendment has been amended, the nine-month period shall be computed from the date of the latest amendment.

[80 FR 21895, Apr. 20, 2015, as amended at 86 FR 3596, Jan. 14, 2021]

**§ 230.260  Insignificant deviations from a term, condition or requirement of Regulation A.**

(a) *Failure to comply.* A failure to comply with a term, condition or requirement of Regulation A will not result in the loss of the exemption from the requirements of section 5 of the Securities Act for any offer or sale to a particular individual or entity, if the person relying on the exemption establishes that:

(1) The failure to comply did not pertain to a term, condition or requirement directly intended to protect that particular individual or entity;

(2) The failure to comply was insignificant with respect to the offering as a whole, provided that any failure to comply with Rule 251(a), (b), and (d)(1) and (3) (§ 230.251(a), (b), and (d)(1) and (3)) shall be deemed to be significant to the offering as a whole; and

(3) A good faith and reasonable attempt was made to comply with all applicable terms, conditions and requirements of Regulation A.

(b) *Action by Commission.* A transaction made in reliance upon Regulation A must comply with all applicable

711

§ 230.261                                    17 CFR Ch. II (4–1–21 Edition)

terms, conditions and requirements of the regulation. Where an exemption is established only through reliance upon paragraph (a) of this section, the failure to comply shall nonetheless be actionable by the Commission under section 20 of the Securities Act.

(c) *Suspension.* This provision provides no relief or protection from a proceeding under Rule 258 (§ 230.258).

[80 FR 21895, Apr. 20, 2015]

### § 230.261 Definitions.

As used in this Regulation A, all terms have the same meanings as in Rule 405 (§ 230.405), except that all references to *registrant* in those definitions shall refer to the issuer of the securities to be offered and sold under Regulation A. In addition, these terms have the following meanings:

(a) *Affiliated issuer.* An affiliate (as defined in Rule 501 (§ 230.501)) of the issuer that is issuing securities in the same offering.

(b) *Business day.* Any day except Saturdays, Sundays or United States federal holidays.

(c) *Eligible securities.* Equity securities, debt securities, and securities convertible or exchangeable to equity interests, including any guarantees of such securities, but not including asset-backed securities as such term is defined in Item 1101(c) of Regulation AB.

(d) *Final order.* A written directive or declaratory statement issued by a federal or state agency described in Rule 262(a)(3) (§ 230.262(a)(3)) under applicable statutory authority that provides for notice and an opportunity for hearing, which constitutes a final disposition or action by that federal or state agency.

(e) *Final offering circular.* The more recent of: the current offering circular contained in a qualified offering statement; and any offering circular filed pursuant to Rule 253(g) (§ 230.253(g)). If, however, the issuer is relying on Rule 253(b) ((§ 230.253(b)), the Final Offering Circular is the most recent of the offering circular filed pursuant to Rule 253(g)(1) or (3) (§ 230.253(g)(1) or (3)) and any subsequent offering circular filed pursuant to Rule 253(g) (§ 230.253(g)).

(f) *Offering statement.* An offering statement prepared pursuant to Regulation A.

(g) *Preliminary offering circular.* The offering circular described in Rule 254 (§ 230.254).

[80 FR 21895, Apr. 20, 2015]

### § 230.262 Disqualification provisions.

(a) *Disqualification events.* No exemption under §§ 230.251 through 230.263 (Regulation A) shall be available for a sale of securities if the issuer; any predecessor of the issuer; any affiliated issuer; any director, executive officer, other officer participating in the offering, general partner or managing member of the issuer; any beneficial owner of 20 percent or more of the issuer's outstanding voting equity securities, calculated on the basis of voting power; any promoter connected with the issuer in any capacity at the time of filing, any offer after qualification, or such sale; any person that has been or will be paid (directly or indirectly) remuneration for solicitation of purchasers in connection with such sale of securities; any general partner or managing member of any such solicitor; or any director, executive officer or other officer participating in the offering of any such solicitor or general partner or managing member of such solicitor:

(1) Has been convicted, within 10 years before the filing of the offering statement or such sale (or five years, in the case of issuers, their predecessors and affiliated issuers), of any felony or misdemeanor:

(i) In connection with the purchase or sale of any security;

(ii) Involving the making of any false filing with the Commission; or

(iii) Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser or paid solicitor of purchasers of securities;

(2) Is subject to any order, judgment or decree of any court of competent jurisdiction, entered within five years before the filing of the offering statement or such sale that, at the time of such filing or such sale, restrains or enjoins such person from engaging or continuing to engage in any conduct or practice:

712

Add. 23

**Securities and Exchange Commission** §230.262

(i) In connection with the purchase or sale of any security;

(ii) Involving the making of any false filing with the Commission; or

(iii) Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser or paid solicitor of purchasers of securities;

(3) Is subject to a final order (as defined in §230.261) of a State securities commission (or an agency or officer of a State performing like functions); a State authority that supervises or examines banks, savings associations, or credit unions; a State insurance commission (or an agency or officer of a State performing like functions); an appropriate Federal banking agency; the U.S. Commodity Futures Trading Commission; or the National Credit Union Administration that:

(i) At the time of the filing of the offering statement or such sale, bars the person from:

(A) Association with an entity regulated by such commission, authority, agency, or officer;

(B) Engaging in the business of securities, insurance or banking; or

(C) Engaging in savings association or credit union activities; or

(ii) Constitutes a final order based on a violation of any law or regulation that prohibits fraudulent, manipulative, or deceptive conduct entered within ten years before such filing of the offering statement or such sale;

(4) Is subject to an order of the Commission entered pursuant to section 15(b) or 15B(c) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(b) or 78*o*–4(c)) or section 203(e) or (f) of the Investment Advisers Act of 1940 (15 U.S.C. 80b–3(e) or (f)) that, at the time of the filing of the offering statement or such sale:

(i) Suspends or revokes such person's registration as a broker, dealer, municipal securities dealer or investment adviser;

(ii) Places limitations on the activities, functions or operations of such person; or

(iii) Bars such person from being associated with any entity or from participating in the offering of any penny stock;

(5) Is subject to any order of the Commission entered within five years before the filing of the offering statement or such sale that, at the time of such filing or sale, orders the person to cease and desist from committing or causing a violation or future violation of:

(i) Any scienter-based anti-fraud provision of the Federal securities laws, including without limitation section 17(a)(1) of the Securities Act of 1933 (15 U.S.C. 77q(a)(1)), section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)) and 17 CFR 240.10b–5, section 15(c)(1) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(c)(1)) and section 206(1) of the Investment Advisers Act of 1940 (15 U.S.C. 80b–6(1)), or any other rule or regulation thereunder; or

(ii) Section 5 of the Securities Act of 1933 (15 U.S.C. 77e).

(6) Is suspended or expelled from membership in, or suspended or barred from association with a member of, a registered national securities exchange or a registered national or affiliated securities association for any act or omission to act constituting conduct inconsistent with just and equitable principles of trade;

(7) Has filed (as a registrant or issuer), or was or was named as an underwriter in, any registration statement or offering statement filed with the Commission that, within five years before the filing of the offering statement or such sale, was the subject of a refusal order, stop order, or order suspending the Regulation A exemption, or is, at the time of such filing or such sale, the subject of an investigation or proceeding to determine whether a stop order or suspension order should be issued; or

(8) Is subject to a United States Postal Service false representation order entered within five years before the filing of the offering statement or such sale, or is, at the time of such filing or such sale, subject to a temporary restraining order or preliminary injunction with respect to conduct alleged by the United States Postal Service to constitute a scheme or device for obtaining money or property through the mail by means of false representations.

713

Add. 24

*Instruction to paragraph (a):* With respect to any beneficial owner of 20 percent or more of the issuer's outstanding voting equity securities, calculated on the basis of voting power, the issuer is required to determine whether a disqualifying event has occurred only as of the time of filing of the offering statement and not from the time of such sale.

(b) *Transition, waivers, reasonable care exception.* Paragraph (a) of this section shall not apply:

(1) With respect to any order under § 230.262(a)(3) or (5) that occurred or was issued before June 19, 2015;

(2) Upon a showing of good cause and without prejudice to any other action by the Commission, if the Commission determines that it is not necessary under the circumstances that an exemption be denied;

(3) If, before the filing of the offering statement or the relevant sale, the court or regulatory authority that entered the relevant order, judgment or decree advises in writing (whether contained in the relevant judgment, order or decree or separately to the Commission or its staff) that disqualification under paragraph (a) of this section should not arise as a consequence of such order, judgment or decree; or

(4) If the issuer establishes that it did not know and, in the exercise of reasonable care, could not have known that a disqualification existed under paragraph (a) of this section.

NOTE TO PARAGRAPH (b)(4). An issuer will not be able to establish that it has exercised reasonable care unless it has made, in light of the circumstances, factual inquiry into whether any disqualifications exist. The nature and scope of the factual inquiry will vary based on the facts and circumstances concerning, among other things, the issuer and the other offering participants.

(c) *Affiliated issuers.* For purposes of paragraph (a) of this section, events relating to any affiliated issuer that occurred before the affiliation arose will be not considered disqualifying if the affiliated entity is not:

(1) In control of the issuer; or

(2) Under common control with the issuer by a third party that was in control of the affiliated entity at the time of such events.

(d) *Disclosure of prior "bad actor" events.* The issuer must include in the offering circular a description of any matters that would have triggered disqualification under paragraphs (a)(3) and (5) of this section but occurred before June 19, 2015. The failure to provide such information shall not prevent an issuer from relying on Regulation A if the issuer establishes that it did not know and, in the exercise of reasonable care, could not have known of the existence of the undisclosed matter or matters.

[80 FR 21895, Apr. 20, 2015, as amended at 86 FR 3597, Jan. 14, 2021]

**§ 230.263   Consent to service of process.**

(a) If the issuer is not organized under the laws of any of the states or territories of the United States of America, it shall furnish to the Commission a written irrevocable consent and power of attorney on Form F–X (§ 239.42 of this chapter) at the time of filing the offering statement required by Rule 252 (§ 230.252).

(b) Any change to the name or address of the agent for service of the issuer shall be communicated promptly to the Commission through amendment of the requisite form and referencing the file number of the relevant offering statement.

[80 FR 21895, Apr. 20, 2015]

**§§ 230.300–230.346   [Reserved]**

ATTENTION ELECTRONIC FILERS

THIS REGULATION SHOULD BE READ IN CONJUNCTION WITH REGULATION S-T (PART 232 OF THIS CHAPTER), WHICH GOVERNS THE PREPARATION AND SUBMISSION OF DOCUMENTS IN ELECTRONIC FORMAT. MANY PROVISIONS RELATING TO THE PREPARATION AND SUBMISSION OF DOCUMENTS IN PAPER FORMAT CONTAINED IN THIS REGULATION ARE SUPERSEDED BY THE PROVISIONS OF REGULATION S-T FOR DOCUMENTS REQUIRED TO BE FILED IN ELECTRONIC FORMAT.

REGULATION C—REGISTRATION

NOTE: In §§ 230.400 to 230.499, the numbers to the right of the decimal point correspond with the respective rule number in Regulation C, under the Securities Act of 1933.

714

Add. 25

# SEC Rules of Practice (2021)

**Securities and Exchange Commission** § 201.100

as promptly as possible. Whether or not the Commission's position was substantially justified shall be determined on the basis of the administrative record, as a whole, which is made in the adversary adjudication for which fees and other expenses are sought.

(b) A request for further proceedings under this section shall specifically identify the information sought or the disputed issues and shall explain why the additional proceedings are necessary to resolve the issues.

[47 FR 610, Jan. 6, 1982, as amended at 54 FR 53052, Dec. 27, 1989; 70 FR 72569, Dec. 5, 2005]

### § 201.56 Decision.

The administrative law judge shall issue an initial decision on the application promptly after completion of proceedings on the application. The decision shall include written findings and conclusions on the applicant's eligibility and status as a prevailing party, and an explanation of the reasons for any difference between the amount requested and the amount awarded. The decision shall also include, if at issue, findings on whether the Commission's position was substantially justified, whether the applicant unduly protracted the proceedings, or whether special circumstances make an award unjust.

### § 201.57 Commission review.

In accordance with the procedures set forth in 17 CFR 201.410 and 201.411, either the applicant or counsel for the Office or Division of the Commission may seek review of the initial decision on the fee application, or the Commission may decide to review the decision on its own initiative. If neither the applicant nor counsel for the Division or Office of the Commission seeks review and the Commission does not take review on its own initiative, the initial decision on the application shall become a final decision of the Commission 30 days after it is issued. Whether to review a decision is a matter within the discretion of the Commission. If review is taken, the Commission will issue a final decision on the application or remand the application to the

administrative law judge for further proceedings.

[47 FR 610, Jan. 6, 1982, as amended at 60 FR 32795, June 23, 1995]

### § 201.58 Judicial review.

Judicial review of final Commission decisions on awards may be sought as provided in 5 U.S.C. 504(c)(2).

### § 201.59 Payment of award.

An applicant seeking payment of an award shall submit to the Chief Financial Officer of the Commission a copy of the Commission's final decision granting the award, accompanied by a sworn statement that the applicant will not seek review of the decision in the United States courts. The Commission will pay the amount awarded to the applicant as authorized by law, unless judicial review of the award has been sought by the applicant.

[54 FR 53052, Dec. 27, 1989, as amended at 76 FR 60372, Sept. 29, 2011]

### § 201.60 [Reserved]

## Subpart C [Reserved]

## Subpart D—Rules of Practice

AUTHORITY: 15 U.S.C. 77f, 77g, 77h, 77h–1, 77j, 77s, 77u, 78c(b), 78d–1, 78d–2, 78l, 78m, 78n, 78o(d), 78o–3, 78s, 78u–2, 78u–3, 78v, 78w, 77sss, 77ttt, 80a–8, 80a–9, 80a–37, 80a–38, 80a–39, 80a–40, 80a–41, 80a–44, 80b–3, 80b–9, 80b–11, 80b–12, 7202, 7215, and 7217.

SOURCE: 60 FR 32796, June 23, 1995, unless otherwise noted.

GENERAL RULES

### § 201.100 Scope of the rules of practice.

(a) Unless provided otherwise, these Rules of Practice govern proceedings before the Commission under the statutes that it administers.

(b) These rules do not apply to:

(1) Investigations, except where made specifically applicable by the Rules Relating to Investigations, part 203 of this chapter; or

(2) Actions taken by the duty officer pursuant to delegated authority under 17 CFR 200.43.

(3) Initiation of proceedings for SRO proposed rule changes under 17 CFR

129

Add. 26

201.700–701, except where made specifically applicable therein.

(c) The Commission, upon its determination that to do so would serve the interests of justice and not result in prejudice to the parties to the proceeding, may by order direct, in a particular proceeding, that an alternative procedure shall apply or that compliance with an otherwise applicable rule is unnecessary.

[60 FR 32796, June 23, 1995; 60 FR 46499, Sept. 7, 1995, as amended at 69 FR 13175, Mar. 19, 2004; 76 FR 4070, Jan. 24, 2011]

### § 201.101  Definitions.

(a) For purposes of these Rules of Practice, unless explicitly stated to the contrary:

(1) *Commission* means the United States Securities and Exchange Commission, or a panel of Commissioners constituting a quorum of the Commission, or a single Commissioner acting as duty officer pursuant to 17 CFR 200.43;

(2) *Counsel* means any attorney representing a party or any other person representing a party pursuant to § 201.102(b);

(3) *Disciplinary proceeding* means an action pursuant to § 201.102(e);

(4) *Enforcement proceeding* means an action, initiated by an order instituting proceedings, held for the purpose of determining whether or not a person is about to violate, has violated, has caused a violation of, or has aided or abetted a violation of any statute or rule administered by the Commission, or whether to impose a sanction as defined in Section 551(10) of the Administrative Procedure Act, 5 U.S.C. 551(10);

(5) *Hearing officer* means an administrative law judge, a panel of Commissioners constituting less than a quorum of the Commission, an individual Commissioner, or any other person duly authorized to preside at a hearing;

(6) *Interested division* means a division or an office assigned primary responsibility by the Commission to participate in a particular proceeding;

(7) *Order instituting proceedings* means an order issued by the Commission commencing a proceeding or an order issued by the Commission to hold a hearing;

(8) *Party* means the interested division, any person named as a respondent in an order instituting proceedings, any applicant named in the caption of any order, persons entitled to notice in a stop order proceeding as set forth in § 201.200(a)(2) or any person seeking Commission review of a decision;

(9) *Proceeding* means any agency process initiated:

(i) By an order instituting proceedings; or

(ii) By the filing, pursuant to § 201.410, of a petition for review of an initial decision by a hearing officer; or

(iii) By the filing, pursuant to § 201.420, of an application for review of a self-regulatory organization determination; or

(iv) By the filing, pursuant to § 201.430, of a notice of intention to file a petition for review of a determination made pursuant to delegated authority; or

(v) By the filing, pursuant to § 201.440, of an application for review of a determination by the Public Company Accounting Oversight Board; or

(vi) By the filing, pursuant to § 242.601 of this chapter, of an application for review of an action or failure to act in connection with the implementation or operation of any effective transaction reporting plan; or

(vii) By the filing, pursuant to § 242.608 of this chapter, of an application for review of an action taken or failure to act in connection with the implementation or operation of any effective national market system plan; or

(viii) By the filing, pursuant to Section 11A(b)(5) of the Securities Exchange Act of 1934, of an application for review of a determination of a registered securities information processor;

(10) *Secretary* means the Secretary of the Commission;

(11) *Temporary sanction* means a temporary cease-and-desist order or a temporary suspension of the registration of a broker, dealer, municipal securities dealer, government securities broker, government securities dealer, or transfer agent pending final determination whether the registration shall be revoked; and

130